IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE ART & DRAMA THERAPY INSTITUTE, INC.<br>327 S Street, N.E.<br>Washington, D.C. 20002<br><br>and<br><br>BEYOND MASK, INC.<br>336 Randolph Place N.E.<br>Washington, D.C. 20002<br><br>Plaintiffs,<br><br>v.<br><br>THE MAY PARTNERSHIP,<br>Serve: Walter Prichard<br>21710 Peach Tree Road<br>Dickerson, Maryland 20842<br><br>WALTER PRICHARD,<br>21710 Peach Tree Road<br>Dickerson, Maryland 20842<br><br>DAVID EHRENFRIED,<br>16300 Oxford Court<br>Bowie, Maryland 20715<br><br>LORETO CAPOCCIA,<br>9 137th Street<br>Ocean City, Maryland 21842<br><br>KEITH PRICHARD,<br>12791 Carronade Court<br>Dunkirk, Maryland 20754<br><br>MICHAEL POLITS,<br>8482 Hayshed Lane<br>Columbia, Maryland 21045<br><br>GREGORY PRICHARD,<br>15004 Jarski Court<br>Centerville, Virginia 20120 | Civil Action No. _____ |

```
WILLIAM O'CONNELL,                        )
     4113 Lee Highway                     )
     Arlington, Virginia  22207           )
                                          )
                                          )
JOSEPH J. NATOLI,                         )
     2311 Sawdust Road                    )
     Vienna, Virginia  22181              )
                                          )
                                          )
ALEXANDRIA METAL FINISHERS, INC.,         )
     Serve:  William B. O'Connell         )
     4113 Lee Highway                     )
     Arlington, Virginia  22207           )
                                          )
                                          )
     and                                  )
                                          )
TIMSCO, INC.,                             )
     Serve:  Keith T. Prichard            )
     16431 Lea Drive                      )
     Mitchellville, Maryland 20716        )
                                          )
     Defendants.                          )
_____)
```

## COMPLAINT

Plaintiffs The Art & Drama Therapy Institute, Inc. ("ADTI") and Beyond Mask, Inc. ("BMI") (collectively, "Plaintiffs"), by and through counsel, bring this Complaint for declaratory relief against Defendants the May Partnership, Walter Prichard, David Ehrenfried, Loreto Capoccia, Keith Prichard, Michael Polits, Gregory Prichard, William O'Connell, Joseph J. Natoli, Alexander Metal Finishers, Inc. and Timsco, Inc, pursuant to 28 U.S.C. 2201(a), and in support thereof state as follows:

## PARTIES

1.  Plaintiff ADTI is a corporation organized and existing under the laws of Delaware with its principal place of business in the District of Columbia.

2

2. Plaintiff BMI is a corporation organized and existing under the laws of Delaware with its principal place of business in the District of Columbia.

3. Defendant The May Partnership ("May Partnership") is a general partnership organized and existing under the laws of Virginia with its principal place of business in Maryland. The May Partnership owns real estate located in the District of Columbia which is the subject of this litigation.

4. Defendant Walter M. Prichard is the Managing General Partner of the May Partnership and a resident of Maryland.

5. Defendant David Ehrenfried is a general partner of the May Partnership and a resident of Maryland.

6. Upon information and belief, Defendant Loreto Capoccia is a general partner of the May Partnership and a resident of Maryland.

7. Upon information and belief, Defendant Keith Prichard is a general partner of the May Partnership and a resident of Maryland.

8. Upon information and belief, Defendant Michael Polits is a general partner of the May Partnership and a resident of Maryland.

9. Upon information and belief, Defendant Gregory Prichard is a general partner of the May Partnership and a resident of Virginia.

10. Upon information and belief, Defendant William O'Connell is a general partner of the May Partnership and a resident of Virginia.

11. Upon information and belief, Defendant Joseph J. Natoli is a general partner of the May Partnership and a resident of Virginia.

12. Upon information and belief, Defendant Alexandria Metal Finishings, Inc. is a general partner of the May Partnership and a Virginia corporation with its principal place of business in Virginia.

13. Upon information and belief, Defendant Timsco, Inc. is a general partner of the May Partnership and a Maryland corporation with its principal place of business in Maryland.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) as the parties on either side of the lawsuit are citizens of different states, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. The parties are completely diverse as Plaintiffs are Delaware corporations with their principal places of business in the District of Columbia, Defendant May Partnership is a Virginia general partnership with it principal place of business in Maryland. The general partners of the May Partnership are citizens of Maryland and Virginia.

15. Venue is appropriate in this judicial district under 28 U.S.C. § 1391(a) because the property which is the subject of this action is situated in the District of Columbia.

## FACTS COMMON TO ALL COUNTS

16. ADTI provides a medically-supervised, therapeutic day treatment center for persons with mental retardation and developmental disabilities. ADTI's facilities are located at 327 S Street N.E. and 336 Randolph Place N.E. in Washington, D.C. Dr. Margaret M. Dickinson (hereinafter "Dr. Do") serves as the President and CEO of ADTI. Dr. Sirkku M. Sky Hiltunen (hereinafter "Dr. Sky") serves as ADTI's Executive Vice President.

17. BMI provides financial management for companies serving persons with mental retardation as well as training in the fields of mental retardation, behavior management, creative

arts therapies, and the creative arts. BMI further specializes in the creation and production of visual and inspirational art products available for purchase. BMI's facilities are located in a space at 336 Randolph Place N.E. in Washington, D.C. Dr. Sky serves as the President of BMI, and Dr. Do serves as BMI's Vice President.

18. On or about July 12, 1996, ADTI entered into two Commercial Lease Agreements with the May Partnership to rent premises located at 327 S Street N.E. and 336 Randolph Place N.E. in Washington, D.C. for terms of seven (7) years ("ADTI Lease Agreements"). Each agreement provides that the monthly rental payments would increase annually at a rate of 3% per year plus 50% of the CPI increase over 3%.

19. Each of the ADTI Lease Agreements includes a "Renewal Option" which permits ADTI to renew the lease for additional seven (7) year terms by giving written notice at least ninety (90) days in advance of the expiration of the then-current lease term. Each Renewal Option explicitly provides that the new lease term shall be under the same terms and conditions as set forth in the original lease agreement, including the Renewal Option. The Renewal Option further provides that rental payments under a subsequent term will increase at the same rate provided pursuant to the original agreements.

20. Over the last 15 years, ADTI has improved the premises leased from the May Partnership to create a unique environment in which its special-needs clients can flourish, and has developed nationally recognized programs for adults with mental retardation, developmental and multiple disabilities. ADTI has devoted a great deal of time and money making improvements to the premises in reliance on repeated assurances from Walter Prichard, the Managing General Partner of the May Partnership that ADTI can continue to lease the premises

for as long as ADTI has a need for them, and in reliance on the renewal rights granted in the ADTI Lease Agreements.

21.  On or about December 6, 1999, BMI and the May Partnership entered into a written agreement whereby the parties agreed that BMI would occupy a newly renovated space at 336 Randolph Place N.E. (the "BMI Lease Agreement"). BMI and the May Partnership agreed to a flat rental rate of $1,350 per month for a total annual rent of $16,200. The BMI Lease Agreement did not provide for annual rent increases.

22.  Until 2003, ADTI and BMI paid rent in accordance with the terms of the ADTI and BMI Lease Agreements, including the annual rent increases provided for in the ADTI Lease Agreements.

23.  In 2003, as they were contemplating the renewal of the ADTI and BMI Lease Agreements, Drs. Do and Sky told Walter Prichard that it would be financially difficult for ADTI and BMI to afford the ongoing annual rent increases because ADTI was not receiving any cost-of-living increases from the federal government with respect to Medicaid reimbursements. Walter Prichard voluntarily agreed that the May Partnership would waive any scheduled rent increases until further notice and ADTI and BMI renewed their Lease Agreements in reliance on that waiver.

24.  Therefore, on or about March 4, 2003, Dr. Sky executed a written notice on behalf of ADTI indicating its intent to exercise the Renewal Option in the ADTI Lease Agreements, thereby extending the lease term to July 2010. The written notice further provided that BMI would renew its lease under the same terms and conditions as the ADTI Lease Agreements, thereby also extending BMI's lease term to July 2010. The May Partnership executed the written statement, acknowledging ADTI's lease renewal and accepting the renewal of the BMI space

under the same terms and conditions as the ADTI Lease Agreements. Thus, the lease of all spaces occupied by ADTI and BMI is currently governed by the same terms and conditions (including the Renewal Option), and all such spaces are subject to the same lease term.

25.     As of July 2003, the effective date of the ADTI and BMI lease renewals pursuant to the March 4, 2003 exercise of the Renewal Option, ADTI was paying $20,545 per month in rent and BMI was paying $1,350 per month in rent. ADTI and BMI have continued to pay rent at these monthly rates since July 2003. In accordance with the May Partnership's waiver of its right to implement rent increases until further notice, the May Partnership never requested the payment of any additional rent nor has it sought to implement any annual rent increases. Instead, from August 2003 until July 2007, the May Partnership has accepted the rental payments made by ADTI and BMI as payment in full.

26.     On or about June 6, 2007, ADTI sent a letter to the May Partnership indicating its intent to again exercise the Renewal Option and extend the ADTI Lease Agreements an additional seven (7) years upon the current term's expiration in 2010, thus extending the ADTI Lease Agreement to July 2017.

27.     On or about July 11, 2007, counsel for the May Partnership sent a letter to counsel for ADTI stating that ADTI's exercise of the Renewal Option in its June 6, 2007, letter was not permitted pursuant to the terms of the ADTI Lease Agreements. The May Partnership therefore refused to recognize ADTI's right to further exercise the Renewal Option.

28.     On or about July 11, 2007, Walter Prichard, on behalf of the May Partnership also sent a letter to ADTI and BMI seeking to retroactively increase the rent under the ADTI and BMI Lease Agreements and demanding that ADTI and BMI pay almost $90,000 in "back rent" on or before August 13, 2007. The letter demanded that ADTI and BMI assume responsibility

for payment of all of the rent increases which would have occurred pursuant to the lease agreements, were it not for the May Partnership's agreement to waive its right to implement those increases, since 2003 with respect to ADTI and since 2001 with respect to BMI. The letter further demanded that ADTI and BMI pay $76,195.68 and $12,903.72, respectively, in "back rent" or face termination of the Lease Agreements. Finally, the May Partnership demanded that effective August 1, 2007, rent be paid at a rate of $23,817.29 for the spaces leased by ADTI and $1,660.32 for the space leased by BMI.

29. On August 6, 2007, ADTI and BMI forwarded payment of their August 2007 rent obligations, calculating a 3% increase over the rate that each had paid since such increases were first waived in 2003. ADTI and BMI enclosed the payments with a letter explaining their position that the May Partnership had waived annual rent increases beginning 2003, and that BMI was not subject to rent increases until its lease incorporated the terms of the ADTI Lease Agreements in 2003. Therefore, ADTI paid the May Partnership $21,161.35, a 3% increase over the $20,545.00 monthly rent previously paid. BMI paid the May Partnership $1,390.50, a 3% increases over the $1,350.00 monthly rent previously paid.

## COUNT I
(Declaratory Relief – Estoppel)

30. ADTI and BMI incorporate and reallege the allegations set forth in Paragraphs 1 through 29 as though fully set forth herein.

31. In 2003, as they were contemplating the renewal of the ADTI and BMI Lease Agreements, Drs. Do and Sky told Walter Prichard that it would be financially difficult for ADTI to afford the ongoing annual rent increase because ADTI was not receiving any cost-of-living increases from the federal government with respect to its Medicaid reimbursements. Walter Prichard, on behalf of the May Partnership, voluntarily agreed that the May Partnership would

8

waive any scheduled rent increases until further notice and ADTI and BMI renewed their Lease Agreements in 2003 in reliance on that waiver.

32. The May Partnership's express agreement not to implement rent increases until further notice and the May Partnership's failure to seek to implement any rent increase until July 2007 led ADTI and BMI to reasonably believe that their rent would not be increased until the May Partnership otherwise notified ADTI and BMI of its desire to begin increasing the annual rent increases.

33. ADTI and BMI reasonably relied to their detriment on the May Partnership's agreement to waive the annual increases until further notice when they renewed their Lease Agreements in 2003 to extend until 2010, and again when ADTI renewed its Lease Agreements to extend from 2010 to 2017. ADTI and BMI have continued to pay rent --for four years, from 2003 until 2007-- at the same rate they paid when the May Partnership agreed not to implement rent increases. The May Partnership never complained about the adequacy of the rent nor did it seek to implement any annual increases during those four years. ADTI and BMI further reasonably relied to their detriment on the May Partnerships waiver of the right to implement rent increases when they directed funds which could have been applied to annual rent increases to pay for improvements to the premises and to otherwise improve and promote the programs they offer to disadvantaged citizens of the District of Columbia.

34. On or about July 11, 2007, Walter Prichard, on behalf of the May Partnership sent a letter to ADTI and BMI demanding that ADTI and BMI pay almost $90,000 in "back rent" on or before August 13, 2007 or face termination of the Lease Agreements.

35. There is an actual controversy because the parties disagree regarding the May Partnership's right to seek payment of the "back rent" attributable to the annual rent increases

which the May Partnership agreed to waive until further notice. Such notice was not given until July 2007, effective August 1, 2007.

**Wherefore**, ADTI and BMI respectfully request entry of a Judgment in Plaintiffs favor declaring that the May Partnership is estopped from seeking payment from ADTI and BMI for the amounts alleged to be due for annual increases which would have been effective before August 1, 2007.

## COUNT II
(Declaratory Relief – Waiver)

36. ADTI and BMI incorporate and reallege the allegations set forth in Paragraphs 1 through 35 as though fully set forth herein.

37. The May Partnership voluntarily agreed to waive annual rent increases until further notice with full knowledge of the May Partnership's right to implement such increases under the Lease Agreements. Therefore, the May Partnership, through words, conduct, and silence, intentionally, voluntarily, and with knowledge of all the relevant facts, gave up its right to implement annual rent increases from 2003 to August 1, 2007.

38. On or about July 11, 2007, the May Partnership sent a letter to ADTI and BMI demanding that ADTI and BMI pay almost $90,000 in "back rent" on or before August 13, 2007 or face termination of the Lease Agreements.

39. There is an actual controversy because the parties disagree regarding the May Partnership's right to seek payment of the "back rent" attributable to the annual increases which the May Partnership agreed to waive until further notice. Such notice was not given until July 2007, effective August 1, 2007.

**Wherefore**, ADTI and BMI respectfully request entry of a Judgment in Plaintiffs favor declaring that the May Partnership waived its right to seek payment from ADTI and BMI for the

amounts alleged to be due for annual increases which would have been effective before August 1, 2007.

## COUNT III
(Declaratory Relief – Estoppel)

40. ADTI and BMI incorporate and reallege the allegations set forth in Paragraphs 1 through 39 as though fully set forth herein.

41. The May Partnership's express agreement not to implement any rent increases until further notice and the May Partnership's failure to seek to implement any rent increases until July 2007 led ADTI and BMI to reasonably believe that annual rent increases would not be implemented until the May Partnership otherwise notified ADTI and BMI of its desire to implement an annual rent increase. Such notice was not given until July 2007, effective August 1, 2007.

42. ADTI and BMI reasonably relied to their detriment on the May Partnership's agreement to waive the right to implement annual increases until further notice when they renewed their Lease Agreements in 2003 to extend until 2010, and again when ADTI renewed its Lease Agreements to extend from 2010 to 2017. ADTI and BMI continued to pay rent at the 2003 level for the next four years. The May Partnership never complained about the adequacy of the rent nor did it seek to implement the annual increases during those four years. ADTI and BMI further relied to their detriment on the May Partnership's agreement not to implement any annual rent increases until further notice when they directed funds which could have been applied to annual rent increases to pay for improvements to the premises and to otherwise improve and promote the programs they provide to disadvantaged citizens of the District of Columbia.

43. On or about July 11, 2007, the May Partnership sent a letter to ADTI and BMI seeking to retroactively increase the rent under the Lease Agreements. The letter demanded that ADTI and BMI assume responsibility for payment of all of the rent increases which the May Partnership alleges would have occurred pursuant to the Lease Agreements, since 2003 with respect to ADTI and since 2001 with respect to BMI, were it not for the May Partnership's agreement to waive its right to implement those increases. The May Partnership demanded that from August 1, 2007 onward, ADTI pay monthly rent in the amount of $23,817.29, which represents an almost 16% increase over the amount previously paid by ADTI. The May Partnership demanded that from August 1, 2007 onward BMI pay monthly rent in the amount of $1,660.32, which represents an increase of almost 23% over the amount previously paid by BMI. The May Partnership sought to implement these 16% and 23% rent increases even though the ADTI and BMI Leases only permit a 3% rent increase.

44. On August 6, 2007, ADTI and BMI forwarded payment of their August 2007 rent obligations, calculating 3% increases over the rate that each had paid since such increases were waived in 2003. ADTI and BMI enclosed the payments with a letter explaining their position that the May Partnership had waived annual rent increases from 2003 until August 2007, and that BMI was not subject to rent increases until its lease incorporated the terms of the ADTI Lease Agreements effective in July 2003. As the May Partnership did not seek to implement the annual rent increases again until August 1, 2007, ADTI and BMI explained their position that the May Partnership was only entitled to a 3% increase pursuant to the ADTI and BMI Lease Agreements. Therefore, ADTI paid the May Partnership $21,161.35, a 3% increase over the $20,545.00 previously paid. BMI paid the May Partnership $1,390.50, a 3% increase over the $1,350.00 previously paid.

45. There is an actual controversy because the parties disagree regarding the May Partnership's right to retroactively implement the annual increases which the May Partnership agreed to waive until further notice.

**Wherefore**, ADTI and BMI respectfully request entry of a Judgment in Plaintiffs' favor declaring that the May Partnership is estopped from retroactively implementing rent increases which would have occurred prior to August 1, 2007 pursuant to the Lease Agreements in calculating payments due from August 1, 2007 forward, and for entry of a judgment declaring that, for the period commencing August 1, 2007 onward, the monthly rental obligations of ADTI and BMI are $21,161.35 and $1,390.50, respectively, subject to the right of the May Partnership to increase the rent again on August 1, 2008 in accordance with the lease terms.

## COUNT IV
(Declaratory Relief – Waiver)

46. ADTI and BMI incorporate and reallege the allegations set forth in Paragraphs 1 through 45 as though fully set forth herein.

47. The May Partnership voluntarily agreed to waive annual rent increases until further notice with full knowledge of the May Partnership's right to such increases under the ADTI and BMI Lease Agreements. Therefore, the May Partnership, through words, conduct, and silence, intentionally, voluntarily, and with knowledge of all the relevant facts, gave up its right to implement the annually scheduled rent increases from 2003 to August 1, 2007.

48. There is an actual controversy because the parties disagree regarding the May Partnership's right to retroactively apply the annual increases which the May Partnership agreed to waive until further notice.

**Wherefore**, ADTI and BMI respectfully request entry of a Judgment in Plaintiffs' favor declaring that the May Partnership waived its right to retroactively implement rent increases

which would have occurred prior to August 1, 2007 pursuant to the Lease Agreements in calculating payments due from August 1, 2007 forward, and for entry of a judgment declaring that, for the period commencing August 1, 2007 onward, the monthly rental obligations of ADTI and BMI are $21,161.35 and $1,390.50, respectively, subject to the right of the May Partnership to increase the rent again on August 1, 2008 in accordance with the lease terms.

## COUNT V
(Declaratory Relief – Right to Renewal)

49.     ADTI and BMI incorporate and reallege the allegations set forth in Paragraphs 1 through 48 as though fully set forth herein.

50.     The ADTI and BMI Lease Agreements provide for a term of seven (7) years, with a Renewal Option permitting ADTI and BMI to renew the lease for additional seven (7) year terms by giving written notice at least ninety (90) days in advance of the expiration of the then-current lease term.  The Renewal Option explicitly provides that the new lease term shall be under the same terms and conditions as set forth in the original lease agreement, including the Renewal Option.  The Renewal Option further provides that rental payments under a subsequent term will increase at the same rate provided pursuant to the original agreements.

51.     Over the last 15 years, ADTI has improved the premises leased from the May Partnership to create a unique environment in which its special-needs clients can flourish, and has developed nationally recognized programs for adults with mental retardation, developmental and multiple disabilities.  ADTI has devoted a great deal of time and money making improvements to the premises in reliance on repeated assurances from the May Partnership that ADTI and BMI can continue to lease the premises for as long as ADTI and BMI have a need for them, and in reliance on the renewal rights granted in the ADTI and BMI Lease Agreements.

52. On or about March 4, 2003, ADTI executed a written notice indicating its intent to exercise the Renewal Option in the ADTI Lease Agreements, extending the lease term to July 2010. The May Partnership executed the written statement, acknowledging ADTI's lease renewal. By that same document, the May Partnership and BMI agreed that BMI's lease would also be extended through July 2010, and that BMI's lease would be governed by the same terms as the ADTI Leases, including the Renewal Option.

53. On or about June 6, 2007, ADTI sent a letter to the May Partnership stating its intent to again exercise the Renewal Option and extend the ADTI Lease Agreements an additional seven (7) years upon the current term's expiration of 2010, thus extending the ADTI Lease Agreement to 2017.

54. There is an actual controversy because the parties disagree regarding ADTI's and BMI's right to exercise the Renewal Option for subsequent terms once the term ending 2010 expires. Despite ADTI's attempt to exercise its renewal rights and extend the term beyond 2010, the May Partnership has refused to recognize ADTI's right to further exercise the Renewal Option.

**Wherefore**, ADTI and BMI respectfully request entry of a Judgment in their favor declaring that: (i) pursuant to the Renewal Option of the ADTI Lease Agreements, ADTI has properly renewed the ADTI Lease Agreements for an additional term beginning in 2010 and ending in July 2017; (ii) BMI is entitled to renew the BMI Lease Agreement beyond July 2010 for an additional seven year term, through and including July 2010, by providing at least ninety (90) days notice to the May Partnership or any successor to the May Partnership; and (iii) pursuant to the terms of the ADTI and BMI Leases, upon each renewal of the leases, the tenant

has a right to exercise an additional Renewal Option by providing at least ninety (90) days notice to the May Partnership or any successor to the May Partnership.

Dated: August 13, 2007                                        Respectfully submitted,

*/s/ Stephen A. Bogorad*
Stephen A. Bogorad
DC Bar # 375565
HOLLAND & KNIGHT LLP
2099 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
(202) 955-3000 - phone
(202) 955-5564 - fax

# 4707957_v3

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS
The Art & Drama Therapy Institute, Inc. and Beyond Mask, Inc.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  11001
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Stephen A. Bogorad, Holland & Knight LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC  20006

## DEFENDANTS
The May Partnership, et al.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  88888
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 2 U.S. Government Defendant
○ 3 Federal Question (U.S. Government Not a Party)
● 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ● 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ● 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**
☐ 410 Antitrust

○ **B. Personal Injury/Malpractice**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

● **E. General Civil (Other)**     OR     ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☒ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

|  ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⦿ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
28 U.S.C. Section 2201 Declaratory Judgment adjudicating rights of parties under commercial lease.

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ Declaratory Judgment   Check YES only if demanded in complaint
JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE August 13, 2007    SIGNATURE OF ATTORNEY OF RECORD  *Stephen A. Bogorad*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.