UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| The ART & DRAMA THERAPY INSTITUTE, INC et al. | ) ) ) | |
| Plaintiffs. | ) ) | Case 1:07cv-01456 Assigned to: Friedman, Paul L. |
| v. | ) ) | Assign Date 8/13/2007 Description: Civil General |
| THE MAY PARTNERSHIP et al. | ) ) ) | |
| Defendants. | ) | |

ANSWER AND GROUNDS OF DEFENSE AND COUNTERCLAIM
OF THE MAY PARTNERSHIP

COMES NOW, the defendant The May Partnership by counsel and in response to

the Complaint in this Action states as follows:

1.        Defendant is without sufficient information to admit or deny the allegations

in Paragraph One of the Complaint and demands strict proof thereof.

2.        Defendant is without sufficient information to admit or deny the allegations

in Paragraph Two of the Complaint and demands strict proof thereof.

3.        Admitted.

4.        Admitted.

5.        Admitted.

6.        Admitted.

7.        Admitted.

8.        Denied.

9.      Admitted.

10.     Denied. William O'Connell has never been a partner of the May Partnership.

11.     Denied. The late Joseph Natoli who died in 1998 is not a member of the partnership. Neither Mr. Natoli nor his estate has any interest in the May Partnership.

12.     Admitted.

13.     Admitted.

14.     Defendant is without sufficient information to admit or deny the allegations in Paragraph Fourteen of the Complaint and demands strict proof thereof.

15.     Defendant admits that the property which is the subject of this litigation is located in the District of Columbia. The remainder of the allegations in Paragraph Fifteen of the Complaint implicate matters of law and no answer is required.

16.     Defendant admits as to the first two sentences. Defendant is without sufficient information to admit or deny the allegations in the last two sentences of this paragraph and demands strict proof thereof.

17.     Defendant is without sufficient information to admit or deny the allegations in Paragraph Seventeen of the Complaint and demands strict proof thereof.

18.     Defendant admits to so much of Paragraph Eighteen of the Complaint as alleges that May Partnership rented spaces at 327 S and 336 Randolph Place for a term of seven years. With respect to the last sentence the Lease speaks for itself and no answer is required.

19.     With respect to the allegations in Paragraph 19 the Lease speaks for itself and no answer is required. Defendant specifically denies that renewal can occur more than once.

20.        Denied.

21.        Defendant admits so much as the paragraph as that there was a Written

Agreement between the May Partnership and BMI. With respect to all other allegations,

the Lease speaks for itself and no answer is required.

22.        Admitted.

23.        Denied.

24.        Denied.

25.        Denied.

26.        Denied.

27.        Admitted.

28.        Defendant admits that Walter Prichard sent a letter on behalf of the May

Partnership to ADTI and BMI. The letter speaks for itself. The remainder of the

paragraph is denied.

29.        Defendant admits so much of the allegation contained in Paragraph Twenty

Nine which alleges certain payments made by plaintiffs to May Partnership. The

remainder of the allegations made in said paragraph are denied.

30.        Defendant restates and incorporates his answers to the allegations set forth in

Paragraphs 1 through 29 as if set forth herein.

31.        Denied.

32.        Denied.

33.        Denied.

34.        Defendant admits that Walter Prichard sent a letter on behalf of the May

Partnership to ADTI and BMI. The letter speaks for itself.

35.     Defendant admits that there is an actual controversy between the parties. Defendant denies that the May Partnership is seeking the payment of any rent which it is not owed.

WHEREFORE, Defendant denies that the elements of estoppel exist under the law of the District of Columbia and prays that Count I of the Complaint be dismissed with prejudice.

36.     Defendant restates and incorporates his answers to the allegations set forth in Paragraphs 1 through 35 as if set forth herein.

37.     Denied.

38.     Admitted.

39.     Defendant admits that there is an actual controversy between the parties. Defendant denies that the May Partnership is seeking the payment of any rent which it is not owed.

WHEREFORE, Defendant denies that the elements of waiver exist under the law of the District of Columbia and prays that Count II of the Complaint be dismissed with prejudice.

40.     Defendant restates and incorporates his answers to the allegations set forth in Paragraphs 1 through 39 as if set forth herein.

41.     Denied.

42.     Denied.

43.     Defendant admits so much of Paragraph 43 which alleges that the May Partnership sent a letter to the plaintiffs. The letter speaks for itself.

44.    Defendant admits the allegations in the first two sentences of Paragraph Forty-Four. Defendant denies the remainder.

45.    Defendant admits that there is an actual controversy between the parties. Defendant denies that May Partnership sought to retroactively implement rent increases or waive such increases as were due under the Lease.

WHEREFORE, Defendant denies that the elements of estoppel exist under the law of the District of Columbia and prays that Count III of the Complaint be dismissed with prejudice and further denies that the actions taken by the May Partnership constitute retroactive implementation of rent increases.

46.    Defendant restates and incorporates his answers to the allegations set forth in Paragraphs 1 through 45 as if set forth herein.

47.    Denied.

48.    Defendant admits that there is an actual controversy between the parties. Defendant denies that May Partnership sought to retroactively implement rent increases or waive such increases as were due under the Lease.

WHEREFORE, Defendant denies that the elements of waiver exist under the law of the District of Columbia and prays that Count IV of the Complaint be dismissed with prejudice and further denies that the actions taken by the May Partnership constitute retroactive implementation of rent increases.

49.    Defendant restates and incorporates his answers to the allegations set forth in Paragraphs 1 through 48 as if set forth herein.

50.        With respect to the allegations in Paragraph Fifty of the Complaint, the Lease speaks for itself. Defendant expressly denies that the provision in the lease for "an option to renew" creates a perpetually renewing lease.

51.        Defendant is without sufficient information to either admit or deny the allegations contained in Paragraph Fifty One of the Complaint and demands strict proof thereof.

52.        Defendant admits that ADTI executed the document referenced in the first sentence of Paragraph Fifty-Two. Defendant admits that The May Partnership executed the document referenced in the second sentence of Paragraph Fifty-Two. The documents speak for themselves. Defendant denies the last sentence in Paragraph Fifty-Two.

53.        Defendant admits that the letter referred to in Paragraph Fifty-three was sent. Defendant denies that the letter had the legal effect claimed as the Lease had no more renewal rights.

54.        Defendant admits that there is an actual controversy between the parties. Defendant denies that there is any further right to renew the Lease.

 WHEREFORE, Defendant denies that there is any basis for the declaratory relief sought by the plaintiffs and prays that the Court dismiss Count V of the Complaint with prejudice.

AFFIRMATIVE DEFENSE

As his affirmative defenses, defendant states the following:

55.        The relief sought by the plaintiffs is barred by the statute of frauds.

56.        The relief sought by the plaintiffs is barred by laches.

ADDITIONAL GROUNDS OF DEFENSE

Without assuming any burden of production or proof that it would not otherwise be required to bear under applicable law, Defendant asserts the following defenses and reserves his right to raise additional defenses as appropriate:

57.    The plaintiffs have failed to state a claim upon which relief can be granted.

58.    The plaintiffs would be unjustly enriched should they receive the relief they seek.

COUNTERCLAIM

59.    Defendant and Counterclaim Plaintiff, the May Partnership, by counsel, brings this Complaint against Counterclaim Defendants The Art and Drama Therapy Institute, Inc and Beyond Mask Inc.

NATURE OF THE ACTION

60.    This is an action for back rent owed by both of the Plaintiffs and Counterclaim Defendants and for utility charges they were obliged to pay under their leases with The May Partnership.

PARTIES

61.    The May Partnership is a partnership formed under the laws of Virginia.

62.    On information and belief, Counterclaim Defendant The Art and Drama Therapy Institute, Inc. ("ADTI") is a corporation organized and existing under the laws of Delaware with its principal office in the District of Columbia.

63.    On information and belief, Counterclaim Defendant Beyond Mask, Inc. ("BMI") is a corporation organized and existing under the laws of Delaware with its principal office in the District of Columbia.

JURISDICTION AND VENUE

64.        This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) as

the parties on either side of the lawsuit are citizens of different states, and the matter in

controversy exceeds the sum or value of $75,000, exclusive of interest and costs. The

parties are completely diverse as Plaintiffs and Counterclaim Defendants are Delaware

corporations with their principal places of business in the District of Columbia, Defendant

and Counterclaim Plaintiff May Partnership is a Virginia general partnership with it

principal place of business in Maryland. The general partners of the May Partnership are

citizens of Maryland and Virginia.

65.        The Court also has supplemental jurisdiction as to any non-federal claim

presented herein pursuant to 28 U.S.C. § 1367 as such claim is part of the same case or

controversy.

66.        Venue is appropriate in this judicial district under 28 U.S.C. § 1391(a)

because the property which is the subject of this action is situated in the District of

Columbia.

BACKGROUND

67.        The May Partnership owns two buildings in the District of Columbia, one at

325 S Street, N.E. and one at 336 Randolph Place, N.E.

68.        On or about July 12, 1996, the May Partnership entered into a lease with

Counterclaim Defendant The Art and Drama Therapy Institute, Inc. ("ADTI") for the

premises at 325 S. Street , N.E.(The "S Street Lease). A copy of the S Street Lease is set

forth as Exhibit A hereto.

69.     The S Street Lease provided for an initial monthly rental of Six Thousand

Dollars ($6,000.00) per month and further provided that the rent would increase on an

annual basis by three percent (3%), plus one half of any increase in the Consumer Price

Index about three percent.

70.     On or about July 12, 1996, the May Partnership entered into a lease with

Counterclaim Defendant The Art and Drama Therapy Institute, Inc. ("ADTI") for the

premises at 336 Randolph Place, N.E. (The "Randolph Lease"). A copy of the Randolph

Lease is set forth as Exhibit B hereto.

71.     The Randolph Lease provided for an initial monthly rental of Ten Thousand

Three Hundred Nineteen Dollars ($10,319.00) per month and further provided that the

rent would increase on an annual basis by three percent (3%), plus one half of any

increase in the Consumer Price Index about three percent.

COUNT I
BACK RENT ADTI

72.     The May Partnership incorporates and realleges the allegations set forth in

Paragraphs 59 through 64 as if set forth herein.

73.     The two leases between The May Partnership and ADTI provide for annual

rent increases of three percent (3%) plus one-half of any increase in the Consumer Price

Index above Three percent.

74.     Beginning in August 2003, ADTI   beginning proffering monthly rental

payments that did not include the 2003 cost increase or any subsequent annual rent

increase.

75.       At no time did The May Partnership, or any agent of The May Partnership, accept these rent payments as full payment of the rent owed or waive its right to full payment.

76.       At no time did The May Partnership, or any agent of The May Partnership, state that The May Partnership would forgo its rights under the Leases to full payment of the rent, including the annual rent increases.

77.       At no time did The May Partnership, or any agent of The May Partnership, waive the right of The May Partnership to full payment of the rent, including the annual rent increases.

78.       For the 2003  rental year (August 1, 2003 through July 31, 2004), ADTI paid $20,545.00 per month;

79.       The monthly rent due pursuant to the lease during the 2003 rental year was $21,161.35.

80.       The shortfall for the 2003 rental year was $7,391.52.

81.       For the 2004 rental year (August 1, 2004 – July 31, 2005), ADTI paid $20,540.00 per month.

82.       The monthly rent due pursuant to the lease during the 2004 rental year was $21,796.19.

83.       The shortfall for the 2004 rental year was $15.009.60.

84.       For the 2005 rental year (August 1, 2005 –July 31, 2005). ADTI paid $20,540.00 per month.

85.       The monthly rent due for the 2005 rental year was $22,450.08

86.       The shortfall for the 2005 rental year was $22,856.28.

87.         For the 2006 rental year (August 1, 2006 – July 31, 2007), ADTI paid $20,540.00 per month.

88.         The monthly rent due pursuant to the lease for the 2006 lease year was $ 23,123.58.

89.         The shortfall for the 2005 rental year was $30,938.28.

90.         The total shortfall of the ADTI leases is $76,195.68.

91.         The May Partnership has made demand of this amount by letter dated July 11, 2007. A copy of the letter is set forth as Exhibit C.

WHEREFORE, the May Partnership respectfully requests entry of a judgment against ADTI in the amount of $76,195.68.

## COUNT II
## UTILITIES ADTI

92.         The May Partnership incorporates and realleges the allegations set forth in Paragraphs 59 through 86 as if set forth herein.

93.         Pursuant to the leases between The May Partnership and ADTI for the S Street and Randolph Place properties, ADTI was responsible for all utility charges.

94.         ADTI has not paid all utility charges.

95.         The current amount owed on utilities is not known to The May Partnership.

WHEREFORE The May Partnership respectfully requests entry of judgment against ADTI for unpaid utility charges in an amount to be proved at trial.

## COUNT III
## BACK RENT BMI

96.         The May Partnership incorporates and realleges the allegations set forth in Paragraphs 59 through 64 as if set forth herein.

97.        In December 1999, Beyond Mask, Inc. ("BMI") agreed with the May

Partnership to rent certain newly renovated space on the second floor of the premises at

336 Randolph Place N.E. beginning on January 1, 2000.   The parties agreed that the

initial monthly rental would be $1,350.00. Exhibit D

98.        The parties did not sign a lease agreement at the time that BMI began

occupancy of the second floor space.

99.        BMI occupied the space without a written lease until May 9, 2007.

100.       During this period, BMI paid $1,350.00 per month.

101.       It was the understanding of The May Partnership and BMI that the lease

would include a same rent escalator as was contained in the ADTI lease.

102.       Using the rent escalation provision agreed to by the parties, the monthly rental

owed by BMI was the following:

| | |
|---|---|
| 2001 | $1,390.50 |
| 2002 | $1,432.21 |
| 2003 | $1,475.18 |
| 2004 | $1,519.43 |
| 2005 | $1,565.01 |
| 2006 | $1,611.96 |
| 2007 | $1,660.00 |

103.       BMI did not pay any annual rent increase.

104.       At no time did The May Partnership, or any agent of The May Partnership,

accept these rent payments as full payment of the rent owed or waive its right to full

payment.

105.     At no time did The May Partnership, or any agent of The May Partnership, state that The May Partnership would forgo its rights under the Leases to full payment of the rent, including the annual rent increases.

106.     At no time did The May Partnership, or any agent of The May Partnership, waive the right of The May Partnership to full payment of the rent, including the annual rent increases.

107.     The rent shortfall during the period January 1, 2000 through July 31, 2007 is as follows:

| | |
|---|---|
| 2001 | $  486.00 |
| 2002 | $  986.92 |
| 2003 | $1,502.16 |
| 2004 | $2,033.16 |
| 2005 | $2,580.12 |
| 2006 | $3,143.52 |
| 2007 | $2,172.72 |

108.     The total rent shortfall on the BMI space is $12,903.72.

109.     The May Partnership has made demand of this amount by letter dated July 11, 2007. A copy of the letter is set forth as Exhibit C.

WHEREFORE the May Partnership respectfully requests entry of a judgment against BMI in the amount of $12,903.72

COUNT IV
QUANTUM MERUIT BMI

110.     The May Partnership incorporates and realleges the allegations set forth in Paragraphs 59 through 101 as if set forth herein

111.    During the period from January 1, 2000 through May 9, 2007, BMI occupied and made use of certain property owned by The May Partnership at 336 Randolph Place N.E.

112.    During the period from January 1, 2000 through May 9, 2007, BMI acknowledge that it was a tenant of The May Partnership and made certain payments for its occupancy of the premises.

113.    The payments made by BMI were less than the value of the services, including occupancy.

WHEREFORE the May Partnership respectfully requests entry of a judgment against BMI for quantum meruit in an amount to be proved at trial.

COUNT V<br>UTILITIES BMI

114.    The May Partnership incorporates and realleges the allegations set forth in Paragraphs 59 through 86 as if set forth herein.

115.    Pursuant to the leases between The May Partnership and BMI, BMI was responsible for all utility charges.

116.    BMI has not paid all utility charges.

117.    The current amount owed on utilities is not known to The May Partnership.

WHEREFORE The May Partnership respectfully requests entry of judgment against BMI for unpaid utility charges in an amount to be proved at trial.

Dated: September 12, 2007            THE MAY PARTNERSHIP
                                     By Counsel


                        _____/s/_____
                        David Charles Masselli
                        D.C. Bar No. 198276
                        David Charles Masselli PC
                        4113 Lee Highway
                        Arlington, VA 22207-3156
                        (703) 741-0402
                        Fax: (703) 741-0979
                        dm@mllaw.com


                  CERTIFICATE OF SERVICE

        I, David Charles Masselli, hereby certify that I caused the foregoing to be served
by the Court's electronic case management system on September 12, 2007 and by U.S.
Mail, first class and prepaid, upon counsel for the plaintiffs at the address set forth below:

                  Steven A Bogorad
                  HOLLAND AND KNIGHT
                  2099 Pennsylvania Avenue, N.W.
                  Washington DC 20006


                  _____/s/_____
                        David Charles Masselli


                                     15

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

The ART & DRAMA THERAPY          )
INSTITUTE,  INC et al.                    )
                                                      )
                  Plaintiffs.              )        Case 1:07cv-01456
                                                      )        Assigned to: Friedman, Paul L.
v.                                                    )        Assign Date 8/13/2007
                                                      )        Description: Civil General
THE MAY PARTNERSHIP            )
et al.                                              )
                                                      )
                  Defendants.            )


ANSWER AND GROUNDS OF DEFENSE AND COUNTERCLAIM
OF THE MAY PARTNERSHIP


**<u>LIST OF EXHIBITS</u>**

A.        Lease for 325  S Street, N.E., Washington DC

B.        Lease for 336 Randolph Place, N.E., Washington DC

C.        Letter dated July 11, 2007 from Walter Prichard, Managing Partner, The May
Partnership, to  The Art & Drama Therapy Institute, Inc. and Beyond Mask, Inc.

D.        Letter dated December 6, 1999 from Dr. Sirkku Sky Hiltunen to Walter Prichard

# COMMERCIAL LEASE AGREEMENT

**THIS AGREEMENT**, made and executed this ___12___ day of ___JULY___, 19_96_, by and between
The New Partnership _____ hereinafter called the Landlord, and
THE ATTIC'S DANCE THERAPY TRUST (TATT) _____ hereinafter called the Tenant.

**WITNESSETH**, that Landlord has agreed to, and does hereby, lease unto Tenant the premises known as ___325 S. Street NE___
___a portion of the attached drawing as expansion tenant space_____
for the term of ___5___ years _____ commencing on the ___12___ day of ___JULY___
and fully ending at Midnight on the ___11th___ day of ___JULY 2001___ at and for the total rental of ___$504,000___
_____ payable in monthly installments of ___$6,000.00___, the first installment payable on ___12 JULY 1996___
and the remaining installments payable in advance on the ___1st___ day of each ensuing month beginning ___AUG 1, 1996___
to _____

TENANT takes and holds the said premises as Tenant for the term and subject to the conditions as herein provided, at the rent payable as aforesaid, and the said Tenant will, without previous demand, pay the rent specified at the time, place and in the manner herein provided.

**1. POSSESSION.** Tenant will, and does hereby, take and hold said premises as a Tenant for the term above named; but the same is subject to delivery of possession by any occupant, and in the case of newly constructed or repaired premises, is subject to completion of construction or repairs. Should tender of possession of premises be later or earlier than the beginning date named above, then in that event, rent payable hereunder shall be adjusted to the date of occupancy, provided however, that in the event possession is not delivered within sixty (60) days of commencement date as called for herein, then in such event Tenant shall have the right to cancel this agreement by giving Landlord written notice thereof, and this agreement shall be considered null and void.

**2. RENT PAYMENTS.** Tenant will pay said rent in advance, without demand or deduction, on the ___1st___ day of each month at ___5300 Beech Place, Temple Hills, MD 20748___ or such other place as Landlord may designate in writing. The rent shall, at the end of each lease year, be increased in direct proportion to any increase in the Consumer Price Index (All Items Index), as published by the United States Department of Labor, using the index during the first month of occupancy as the base month as it relates to the first month of each succeeding year of the lease. See Addendum #1

**3. UTILITY CHARGES.** Tenant will pay all utility charges including, without limitation, water, rent, sewer charges, oil, telephone, gas, and electric bills, if any, and other charges provided for herein as the same become due.

**4. USE OF PREMISES.** Tenant will use said premises actively and continuously for the full term hereof for ___Therapeutic___
___training of person with or without disabilities, theater performances, art exhibits and other related activities.___
**AND FOR NO OTHER** purpose whatsoever.

**5. DISORDERLY OR UNLAWFUL USE.** Tenant will not use, nor permit said premises or any part thereof to be used, for any disorderly or unlawful purpose.

**6. TRANSFER, ASSIGN OR SUBLET.** Tenant will not transfer or assign this lease, nor let nor sublet the whole or any part of said premises without the prior written consent of the Landlord, which consent will not be unreasonably withheld.

**7. CARE OF PREMISES AND SURRENDER.** Tenant will keep said premises in good order and condition, and surrender same at the expiration of the term herein in the same order in which premises was received, usual wear and tear, and damage by fire, storm and public enemies only excepted. Upon surrender of the premises, Tenant shall have removed all rubbish, advertisements and signs from interior, exterior and show windows thereof, and on failure to do so authorizes Landlord to forthwith remove the same at Tenant's expense.

**8. SIDEWALK MAINTENANCE.** Tenant will keep the sidewalks immediately abutting said premises free from obstructions of all nature, properly swept and snow and ice removed therefrom.

**9. TENANT PERSONAL PROPERTY and LIABILITY INSURANCE.** All Tenant's personal property in said premises shall be and remain at his sole risk, and the Landlord shall not be liable for any damage to, or loss of such personal property arising from any acts of negligence of any other persons, nor from the leaking of the roof, or from the bursting, leaking or overflowing of water, sewer or steam pipes, or from heating or plumbing fixtures, or from the handling of electric wires or fixtures, or from any other cause whatsoever, nor shall the Landlord be liable for any injury to the person or the Tenant or other persons in or about the premises, the Tenant expressly agreeing to save the Landlord harmless in all such cases and to carry Public Liability Insurance in a company and in an amount not less than the following limits: Bodily injury _____ $300,000 _____
Property damage ___ $100,000 ___

**10. REPAIR OF PREMISES and LANDLORD ACCESS.** Tenant will make, at Tenant's own expense, any and all repairs to the premises hereby leased during the term of the lease except Landlord shall, without expense to Tenant, maintain and make all necessary repairs to the foundations, load bearing walls, roof, gutters, downspouts, water mains, gas and sewage lines, sidewalks, private roadways, parking areas, and loading docks, if any, on or appurtenant to the leased premises unless the said repairs are the results of negligence of Tenant or his agents. Tenant will allow Landlord or his Agent access to said premises at any and all reasonable time for the purpose of inspection, or in the event of fire or other property damage, or for the purpose of making any repairs Landlord considers necessary or desirable, and will permit Landlord's Agent to place a sign on the premises during the last three (3) months of this lease offering the property for sale or lease.

**11. HEAT, HOT WATER, AIR CONDITIONING AND ALTERATIONS.** Tenant will furnish heat, hot water and air conditioning, if desired, at Tenant's cost and expense during the term of this agreement or any renewals or extensions thereof, make all repairs and improvements to the interior of said premises as the same become necessary or are required, including air conditioning system, heating plant, pipes, radiators, ducts or plumbing fixtures. Tenant will repair or replace any other damage caused to the demised premises by Tenant negligence, or the negligence of Tenant's servants or employees, or any damage to the premises or the fixtures therein caused by improper use or caused by failing to give them the proper service. Tenant may, at his own expense, either at the commencement of or during the term of this lease, make such alterations in and/or additions to the leased premises including, without prejudice to the generality of the foregoing alterations in the water, gas, and electric wiring systems, as may be necessary to fit the same for Tenant's business, upon first obtaining the written approval of Landlord as to the materials to be used

EXHIBIT

and the manner of making such alteration ___ ]/or additions, which approval will not be un___ ___nably withheld. Tenant may also, at Tenant's own expense, install such counters, racks, shelving, fixtures, machinery, equipment, upon or about the leased premises as Tenant may consider necessary to the conduct of Tenant's business. At any time prior to the expiration or earlier termination of this lease, Tenant may remove any of all such alterations, additions or installations in such a manner as will not substantially injure the leased premises. At the termination of this lease, Tenant shall restore the premises, to the same condition as existed prior to the making of such alteration, addition or installation, ordinary wear and tear, damage or destruction by fire, flood, storm, civil commotion or other unavoidable cause excepted. All alterations, additions or installations not so removed by Tenant shall become the property of Landlord without liability on Landlord's part to pay for the same.

**12. FIRE and PLATE GLASS INSURANCE.** Tenant will not permit or do anything which would increase the rate of fire insurance upon said premises, and should said rate be increased by reason of Tenant's use of said premises, Tenant will pay as additional rent to Landlord the difference in the fire insurance premiums over and above those in effect prior to the time Tenant's use caused the rate to be increased, when and as the same become due and payable. In the event Tenant's fire insurance policy is cancelled, or in the event Tenant is notified of impending cancellation, due to an act of commission or omission on the part of the Tenant, Tenant shall be given written notice by Landlord, his rental agent or insurance agent, that said fire insurance policy has been cancelled and Tenant will immediately correct or remedy the cause for said cancellation; and in the event of failure of Tenant to correct or remedy said cause within five (5) days, Landlord shall have the right at his option to declare this lease fully cancelled and void. Tenant will, during the full term of this agreement or any renewal or extension thereof, carry in a standard company full coverage insurance on all plate glass in said premises and cause same to be replaced if chipped, cracked or broken, said insurance policy or certificate from Tenant's insurance company to be deposited with Landlord or his Agent; and such policy shall provide that it shall not be cancelled for any reason unless and until Landlord or his Agent is given fifteen (15) days' notice in writing by the insurance company.

**13. SIGNS.** Tenant will not erect nor place any signs upon the windows, doors or outside walls of said premises or make any alterations or additions to the demised premises without the prior written consent of the Landlord, which consent will not be unreasonably withheld.

**14. COMPLIANCE WITH GOVERNMENTAL AUTHORITY.** Tenant will, at Tenant's cost, promptly comply with and carry out all orders, requirements, or conditions now or hereafter imposed upon Tenant by the Ordinance, Laws and/or Regulations of the Federal Government, Municipality (incorporated or unincorporated) or County, in which said premises are located, or by any of its various departments whether required of Landlord or otherwise, to be done or performed during the term of this agreement, insofar as they are occasioned by or required in the conduct of the business of Tenant, or in the Tenant's use and occupancy of said premises for the purpose permitted.

**15. EMINENT DOMAIN and CONDEMNATION.** In the event eminent domain proceedings shall be instituted against the leased premises, Tenant will make no claim for compensation in the proceedings, and agrees that Tenant's lease shall terminate when title to the leased premises is taken by the condemning authority, provided the rental is abated from such date. If the whole or any part of the leased premises shall be taken by any competent public authority under the power of eminent domain, then the term of this lease shall cease as to the part so taken from the date that possession of that part shall be acquired for any public purpose and the rent shall be paid up to that date. If the whole or any such portion of the leased premises is taken so as to reasonably destroy the usefulness of the premises for the purpose for which the same were leased, then the Tenant shall have the right to terminate this lease within ___ ___ days after possession is taken for such public purpose. In the event, however, that only a portion of the premises is taken and the portion so taken does not reasonably destroy the usefulness of the premises for the purpose for which the same were leased, or if the Tenant shall not elect to terminate this lease if the usefulness of the premises is reasonably destroyed as stated in the preceding sentence, then the rent shall be reduced in proportion to the area of the premises taken in relation to the total area of the premises leased. The taking of a 20% or less of parking spaces shall not be considered as any taking of the "leased premises" referred to in this paragraph. Any dispute resulting from the determination of the fair reduction in rental shall be settled by arbitration under the rules of the American Arbitration Association. All proceeds from any condemnation shall belong to and be the property of the Landlord.

**16. LEASE SUBORDINATION.** This lease is subject and subordinate to the lien of any mortgage, or deed of trust encumbrance or encumbrances now or at any time hereafter placed upon the said premises, and the Tenant does hereby agree to execute, acknowledge and record any and all instruments to effect such subordination which the Landlord may request or require. Tenant irrevocably appoints Landlord, his successors and assigns, as and for his attorney-in-fact to execute any such instruments for and on his behalf.

**17. TENANT OBLIGATIONS.** Should Tenant fail to perform any of the duties hereunder, Landlord may cause the same to be performed and paid for, Payment of such sums, or expenses of prosecuting or defending any matter or action, by reason of Tenant default in any wise, shall be deemed additional rent and due from Tenant to Landlord on the first day of the month following billing for said charges incurred.

**18. LEGAL PROCEEDINGS.** In the event legal proceedings are instituted against Tenant by the Landlord, either for payment of rent or for possession, then Tenant agrees to pay all court costs instant to such proceedings, together with a reasonable attorney's fee and both parties hereby agree to waive the right of trial by jury.

**19. NOTICE TO QUIT.** If Tenant shall fail to pay said rent in advance as aforesaid, although there should have been no legal or formal demand made, or break or violate any of the within covenants, conditions or agreements, then and in any of said events, this lease and all things herein contained shall, at the option of the Landlord cease and determine and shall operate as a Notice to Quit, the thirty (30) days' written Notice to Quit being hereby expressly waived, and Landlord may proceed to recover possession of said premises under and by virtue of the provisions of the Code of Law for the District of Columbia, State of Maryland, State of Virginia, in whichever one of the three immediately preceding named jurisdictions the demised premises may be located, or by such legal process as may at the time be in operation and force in like cases relating to proceedings between Landlords and Tenants. In the event that the Landlord shall resume possession of the premises, Landlord may release the same, at the best rent that can be obtained, for the remainder of the term, for the account of the Tenant, who shall make good any deficiency. Such rent applied first to payment of Landlord's expenses incurred in recovering possession of said premises and reletting same, second to costs and expenses incurred by Landlord in making necessary repairs or incurring any default on the part of the Tenant in any covenant or condition herein, and lastly to any rent due hereunder.

**20. WAIVER OF COVENANT, IF PROCEEDINGS,** shall at any time be instituted as aforesaid and compromise or settlement shall be effected either before or after judgement whereby Tenant shall be permitted to retain possession of said premises then such proceedings shall not constitute a waiver of any covenant, condition or agreement contained herein or of any subsequent breach of this agreement.

**21. BANKRUPTCY and ASSIGNMENT. IT IS FURTHER UNDERSTOOD AND AGREED,** that in the event Tenant is adjudicated a bankrupt or makes an assignment for the benefit of Tenant's creditors, this agreement shall, at the option of Landlord, cease and determine and said premises shall be surrendered to Landlord, who hereby reserves the right, in either of said events, to forthwith re-enter and repossess said premises.

**22. FIRE AND CASUALTY DAMAGE. IT IS FURTHER UNDERSTOOD AND AGREED,** that if said premises, or any part thereof, shall at any time be destroyed by fire (or other unavoidable casualty) as to be unfit for occupancy or use, then the rents herein reserved, or a fair and just proportion thereof, according to the area of the leased premises which is unusable by Tenant, and the nature and extent of the damage sustained, shall, until the said premises shall have been rebuilt or restored and made fit

not involving the repair or reconstr... of a substantial portion thereof, the Landl... shall promptly restore same to such condition... of Landlord hereunder shall be limited to the basic building and interior work originally installed by Landlord. Landlord shall commence such repairs or restoration with reasonable diligence after notice thereof and after a reasonable period of time for Landlord to adjust Landlord's insurance claims, and shall prosecute same in an expeditious manner.

**23. EXPIRATION OF LEASE AND IN TIIAT EVENT** the Tenant shall elect and be suffered to remain in possession of the said premises at the expiration of the term hereby created, said Tenant shall, by virtue of this agreement, become a Tenant by the month, and said monthly tenancy shall be subject to all the conditions and covenants of said lease as though the same had been a monthly, instead of a tenancy as provided herein, and shall give to the Landlord at least thirty (30) days' notice of any intention to remove from said premises, and shall be entitled to a like notice from Landlord in the event Landlord desires possession of said premises; provided, however, that said Tenant by the month shall not be entitled to any notice in event the said rent is not paid in advance without demand, the usual thirty (30) days' written notice being hereby expressly waived.

**24. WAIVER OR BREACH OF COVENANT. IT IS FURTHER UNDERSTOOD AND AGREED,** that the covenants, conditions and agreements contained in the within lease to be performed by the respective parties, are binding on, and may be legally enforced by, the said parties, their heirs, executors, administrators, successors and assigns, respectively, and that no waiver of any breach of any covenant hereof shall be construed to be a waiver of the covenant itself or of any subsequent breach thereof, or of this agreement.

**25. BROKER'S COMMISSION.** The Landlord in appointing _____ N/A _____ as rental agent herein, does so for and in consideration of its services in securing the Tenant hereunder and in negotiation of this agreement, and agrees to pay said Agent a commission of ____ % of all rents paid during the full term of this agreement and any renewal or extension hereof even though the premises hereby demised shall be sold during the term of this lease, or any extension or renewal thereof.

**26. HOLD AGENT HARMLESS.** It is understood and agreed that said Agent shall have no responsibility for the condition of the demised premises for the performance of the Lease Agreement or any Agreement by the Landlord and Tenant, and both parties agree to protect and save harmless said agent from any and all claims for injury to person or personal property by reason of any accident or happening in, upon or about the demised premises.

**27. TAXES.** Tenant shall pay to Landlord, as additional rent, _____ the real estate taxes payable by Landlord over and above those payable for the tax period ending _____ A tax bill shall be sufficient evidence of the amount of taxes so imposed, and shall include any increases, whether it be an increase in the rate, or a new tax and/or reassessment of the property or for any other reason. Such amount shall be paid within ten (10) days after it shall have been demanded by Landlord, and it shall be collectable as part of the rental. In the event the tax bill includes the adjacent facility, then the tax shall be prorated, with Tenant being responsible for his prorata share of such bill. Landlord shall compute same and forward along to Tenant with a copy of the total tax bill.

**28. SECURITY DEPOSIT.** The sum of _____ Waived _____ shall be paid by Tenant at time of execution of this lease as a security deposit.

**29. RENEWAL OPTION.** Tenant shall have the right to extend this lease for an additional period of _____ years at the end of the lease term, by giving written notice at least _____ 90 days _____ in advance of the end of the original lease term, of Tenant's intention to so renew, which shall be under the same terms and conditions as set forth in the original lease agreement; provided however, rental hereunder shall be increased in accordance with ~~such terms~~ prevailing market rates:

**30. LANDLORD'S RIGHT TO CURE TENANT'S DEFAULTS.** Should the Tenant default in performance of any of the terms, covenants or agreements herein provided including but without limitation to payment of real estate taxes, insurance premiums, utilities charges, failure to discharge forthwith a mechanics' lien filed by contractors of Tenant, repairs to the premises or in any other respect whatsoever, or should Landlord incur any charge, expense or attorney's fees as a result of the breach by Tenant of any of the terms of this lease, Landlord shall have the right to cure any such default(s) or incur any such expense and shall charge said expenditures made by it as additional rent, and Tenant agrees to forthwith pay such additional rent to Landlord. Should Tenant fail to pay such sums forthwith after demand therefor, Landlord shall be entitled to all of the remedies herein provided with respect to the collection of such charges as in the case of nonpayment of rent.

**31. CAPTIONS.** The captions appearing in this lease are inserted only as a matter of convenience and in no way define, limit, construe or describe the scope or intent of any paragraph or section of this lease nor in anyway affect this lease.

**32. FINAL AGREEMENT.** THIS LEASE contains the entire and final agreement by and between the parties hereto, and they shall not be bound by any statements, conditions, representations, inducements, or warranties, oral or written, not herein contained.

**33. PROPERTY DATA and ADDRESS OF PARTIES.** The following are attached hereto and made a part hereof:
_____ PLANS AND SPECIFICATIONS _____ SITE PLAN __X__ FLOOR PLAN _____ RECORD PLAT _____ OTHER

All notices required to be given shall be in writing and mailed or delivered to the following addresses:

TO LANDLORD:   The May Partnership
5300 Beech Place
Temple Hills, MD 20748

TO TENANT:   ADTI
325 S Street NE
Washington, DC

IN WITNESS WHEREOF the said parties have hereunto signed their names and affixed their seals.

_____
Witness

_____
Witness

_____
Witness

_____
Landlord

_____
Tenant



KEY PLAN

$1" = 30'-0"$

Part of Lease Executed 12 July 1996

ADTI + MAY PARTNERSIN



KEY PLAN
1"=30'-0"

THE MAY PARTNERSHIP
PHOENIX PROGRAM
ADDENDUM TO LEASE THE MAY PARTNERSHIP
THE ART & DRAMA THERAPY INSTITUTE

CPI Increase

Lease:  The May Partnership and The Art & Drama Therapy Institute . *See note below :*

| | | |
|---|---|---|
| 1st year | $10,319.00/month | — 7/14/96 — 7/11/97 |
| 2nd year | 10,628.00/month | 7/12/99 - 9 |
| 3rd year | 10,947.00/month | 7/13/98 |
| 4th year | 11,275.00/month | 99 |
| 5th year | 11,613.00/month | |
| 6th year | 11,961.00/month | etc |
| 7th year | 12,320.00/month | |

*Fixed price increase of 3% per year with the provision that if the CPI increase over 3% per year, ADTI will pay only 50% of the increase over 3%.*

# COMMERCIAL LEASE AGREEMENT

THIS AGREEMENT, made and executed this ___ day of _____ 19___, by and between _____ hereinafter called the Landlord, and _____ hereinafter called the Tenant.

WITNESSETH, that Landlord has agreed to, and does hereby, lease unto Tenant the premises known as _____ (refer to attached floor plan) (approximately 15,800 square feet)

for the term of ___ years (refer to addendum #___) commencing on the ___ day of _____ and fully ending at Midnight on the ___ day of _____ and for the total rental of $_____ payable in monthly installments of $10,319.70 the first installment payable on ___ and the remaining installments payable in advance on the ___ day of each ensuing month beginning _____ to _____ December 31, 1997 (see addendum schedule)

TENANT takes and holds the said premises as Tenant for the term and subject to the conditions as herein provided, at the rent payable as aforesaid, and the said Tenant will, without previous demand, pay the rent specified at the time, place and in the manner herein provided.

**1. POSSESSION.** Tenant will, and does hereby, take and hold said premises as a Tenant for the term above named; but the same is subject to delivery of possession by any occupant, and to the _____. Should tender of possession of premises be later or earlier than the beginning date named above, then in that event, rent payable hereunder shall be adjusted to the date of occupancy, provided however, that in the event possession is not delivered within sixty (60) days of commencement date as called for herein, then in such event Tenant shall have the right to cancel this agreement by giving Landlord written notice thereof, and this agreement shall be considered null and void.

**2. RENT PAYMENTS.** Tenant will pay said rent in advance, without demand or deduction, on the 1ST day of each month at ___ 5300 Beach Place, Tampa, FL, 33614, MS 20726 _____ or such other place as Landlord may designate in writing. _____ (refer to rent schedule in addendum)

**3. UTILITY CHARGES.** Tenant will pay all utility charges including, without limitation, water and sewer charges, oil, telephone, gas, and electric bills, if any, and other charges provided for herein as the same become due.

**4. USE OF PREMISES.** Tenant will use said premises actively and continuously for the full term hereof for _____ training of persons with disabilities, theater performances, art exhibits and other related activities, AND FOR NO OTHER purpose whatsoever.

**5. DISORDERLY OR UNLAWFUL USE.** Tenant will not use, nor permit said premises or any part thereof to be used, for any disorderly or unlawful purpose.

**6. TRANSFER, ASSIGN OR SUBLET.** Tenant will not transfer or assign this lease, nor let nor sublet the whole or any part of said premises without the prior written consent of the Landlord, which consent will not be unreasonably withheld.

**7. CARE OF PREMISES AND SURRENDER.** Tenant will keep said premises in good order and condition, and surrender same at the expiration of the term herein in the same order in which premises was received, usual wear and tear and damage by fire, storm and public enemies only excepted. Upon surrender of the premises, Tenant shall have removed all rubbish, advertisements and signs from interior, exterior and show windows thereof, and on failure to do so authorizes Landlord to forthwith remove the same at Tenant's expense.

**8. SIDEWALK MAINTENANCE.** Tenant will keep the sidewalks immediately abutting said premises free from obstructions of all nature, properly swept and snow and ice removed therefrom.

**9. TENANT PERSONAL PROPERTY and LIABILITY INSURANCE.** All Tenant's personal property in said premises shall be and remain at his sole risk, and the Landlord shall not be liable for any damage to, or loss of such personal property arising from any acts of negligence of any other persons, nor from the leaking of the roof, or from the bursting, leaking or overflowing of water, sewer or steam pipes, or from heating or plumbing fixtures, or from the handling of electric wires or fixtures, or from any other cause whatsoever, nor shall the Landlord be liable for any injury to the person or the Tenant or other persons in or about the premises, the Tenant expressly agreeing to save the Landlord harmless in all such cases and to carry Public Liability Insurance in a company and in an amount not less than the following limits: Bodily injury ___ $300,000.00 ___ Property damage ___ $100,000.00 ___

**10. REPAIR OF PREMISES and LANDLORD ACCESS.** Tenant will make, at Tenant's own expense, any and all repairs to the premises hereby leased during the term of the lease except Landlord shall, without expense to Tenant, maintain and make all necessary repairs to the foundations, load bearing walls, roof, gutters, downspouts, water mains, gas and sewage lines, sidewalks, private roadways, parking areas, and loading docks, if any, on or appurtenant to the leased premises unless the said repairs are the results of negligence of Tenant or his agents. Tenant will allow Landlord or his Agent access to said premises at any and all reasonable time for the purpose of inspection, or in the event of fire or other property damage, or for the purpose of making any repairs Landlord considers necessary or desirable, and will permit Landlord's Agent to place a sign on the premises during the last three (3) months of this lease offering the property for sale or lease.

**11. HEAT, HOT WATER, AIR CONDITIONING AND ALTERATIONS.** Tenant will furnish heat, hot water and air conditioning, if desired, at Tenant's cost and expense during the term of this agreement or any renewals or extensions thereof, make all repairs and improvements to the interior of said premises as the same become necessary or are required, including air conditioning system, heating plant, pipes, radiators, ducts or plumbing fixtures. Tenant will repair or replace any other damage caused to the demised premises by Tenant negligence, or the negligence of Tenant's servants or employees, or any damage to the premises or the fixtures therein caused by improper use of caused by failing to give them the proper service. Tenant may, at his own expense, either at the commencement of or during the term of this lease, make such alterations in and/or additions to the leased premises including, without prejudice to the generality of the foregoing alterations in the water, gas, and electric wiring systems, as may be necessary to fit the same for Tenant's business, upon first obtaining the written approval of Landlord as to the materials to be used

EXHIBIT

B

and the manner of making such alterations, etc., at Tenant's own expense, install such ..... ters, racks, shelving, fixtures, fittings, mach .... y and equipment upon or within the leased premises as Tenant may deem necessary to the conduct of Tenant's business. Upon the expiration or earlier termination of this lease, Tenant may remove any or all such alterations, additions or installations in such a manner as will not substantially injure the leased premises. At the termination of this lease, Tenant shall restore the premises, to the same condition as existed prior to the making of such alteration, addition or installation, ordinary wear and tear, damage or destruction by fire, flood, storm, civil commotion or other unavoidable cause excepted. All alterations, additions or installations not so removed by Tenant shall become the property of Landlord without liability on Landlord's part to pay for the same.

12. **FIRE and PLATE GLASS INSURANCE.** Tenant will not permit or do anything which would increase the rate of fire insurance upon said premises, and should said rate be increased by reason of Tenant's use of said premises, Tenant will pay as additional rent to Landlord, the difference in the fire insurance premiums over and above those in effect prior to the time Tenant's use caused the rate to be increased when and as the same become due and payable. In the event Tenant's fire insurance policy is cancelled, or in the event Tenant is notified of impending cancellation, due to an act of commission or omission on the part of the Tenant, Tenant shall be given written notice by Landlord, his rental agent or insurance agent, that said fire insurance policy has been cancelled and Tenant will immediately correct or remedy the cause for said cancellation; and in the event of failure of Tenant to correct or remedy said cause within five (5) days, Landlord shall have the right at his option to declare this lease fully cancelled and void. Tenant will, during the full term of this agreement or any renewal or extension thereof, carry in a standard company, full coverage insurance on all plate glass in said premises and cause same to be replaced if chipped, cracked or broken, said insurance policy or certificate from Tenant's insurance company to be deposited with Landlord or his Agent; and such policy shall provide that it shall not be cancelled for any reason unless and until Landlord, or his Agent is given fifteen (15) days' notice in writing by the insurance company.

13. **SIGNS.** Tenant will not erect nor place any signs upon the windows, doors or outside walls of said premises or make any alterations or additions to the demised premises without the prior written consent of the Landlord, which consent will not be unreasonably withheld.

14. **COMPLIANCE WITH GOVERNMENTAL AUTHORITY.** Tenant will, at Tenant's cost, promptly comply with and carry out all orders, requirements, or conditions now or hereafter imposed upon Tenant by the Ordinance, Laws and/or Regulations of the Federal Government, Municipality (incorporated or unincorporated) or County, in which said premises are located, or by any of its various departments whether required of Landlord or otherwise, to be done or performed during the term of this agreement, insofar as they are occasioned by or required in the conduct of the business of Tenant, or in the Tenant's use and occupancy of said premises for the purpose permitted.

15. **EMINENT DOMAIN and CONDEMNATION.** In the event eminent domain proceedings shall be instituted against the leased premises, Tenant will make no claim for compensation in the proceedings, and agrees that Tenant's lease shall terminate when title to the leased premises is taken by the condemning authority, provided the rental is abated from such date.

If the whole or any part of the leased premises shall be taken by any competent public authority under the power of eminent domain, then the term of this lease shall cease as to the part so taken from the date that possession of that part shall be acquired for any public purpose and the rent shall be paid up to that date. If the whole or any such portion of the leased premises is taken so as to reasonably destroy the usefulness of the premises for the purpose for which the same were leased, then the Tenant shall have the right to terminate this lease within ......... on ......... days after possession is taken for such public purpose. In the event, however, that only a portion of the premises is taken and the portion so taken does not reasonably destroy the usefulness of the premises for the purpose for which the same were leased, or if the Tenant shall not elect to terminate this lease if the usefulness of the premises is reasonably destroyed as stated in the preceding sentence, then the rent shall be reduced in proportion to the area of the premises taken in relation to the total area of the premises leased. The taking of a 20% or less of parking spaces shall not be considered as any taking of the "leased premises" referred to in this paragraph. Any dispute resulting from the determination of the fair reduction in rental shall be settled by arbitration under the rules of the American Arbitration Association. All proceeds from any condemnation shall belong to and be the property of the Landlord.

16. **LEASE SUBORDINATION.** This lease is subject and subordinate to the lien of any mortgage, or deed of trust encumbrance or encumbrances now or at any time hereafter placed upon the said premises, and the Tenant does hereby agree to execute, acknowledge and record any and all instruments to effect such subordination which the Landlord may request or require. Tenant irrevocably appoints Landlord, his successors and assigns, as and for his attorney-in-fact to execute any such instruments for and on his behalf.

17. **TENANT OBLIGATIONS.** Should Tenant fail to perform any of the duties hereunder, Landlord may cause the same to be performed and paid for. Payment of such sums, or expenses of prosecuting or defending any matter or action, by reason of Tenant default in any wise, shall be deemed additional rent and due from Tenant to Landlord on the first day of the month following billing for said charges incurred.

18. **LEGAL PROCEEDINGS.** In the event legal proceedings are instituted against Tenant by the Landlord, either for payment of rent or for possession, then Tenant agrees to pay all court costs instant to such proceedings, together with a reasonable attorney's fee and both parties hereby agree to waive the right of trial by jury.

19. **NOTICE TO QUIT.** If Tenant shall fail to pay said rent in advance as aforesaid, although there should have been no legal or formal demand made, or break or violate any of the within covenants, conditions or agreements, then and in any of said events, this lease and all things herein contained shall, at the option of the Landlord cease and determine and shall operate as a Notice to Quit, the thirty (30) days' written Notice to Quit being hereby expressly waived, and Landlord may proceed to recover possession of said premises under and by virtue of the provisions of the Code of Law for the District of Columbia, State of Maryland, State of Virginia, in whichever one of the three immediately preceding named jurisdictions the demised premises may be located, or by such legal process as may at the time be in operation and force in like cases relating to proceedings between Landlords and Tenants. In the event that the Landlord shall resume possession of the premises, Landlord may release the same, at the best rent that can be obtained, for the remainder of the term, for the account of the Tenant, who shall make good any deficiency. Such rent applied first to payment of Landlord's expenses incurred in recovering possession of said premises and reletting same, second to costs and expenses incurred by Landlord in making necessary repairs or incurring any default on the part of the Tenant in any covenant or condition herein, and lastly to any rent due hereunder.

20. **WAIVER OF COVENANT.** IF PROCEEDINGS, shall at any time be instituted and compromise of settlement shall be effected either before or after judgement whereby Tenant be permitted to retain possession of said premises then such proceedings shall not constitute a waiver of any covenant, condition or agreement contained herein or of any subsequent breach of this agreement.

21. **BANKRUPTCY and ASSIGNMENT.** IT IS FURTHER UNDERSTOOD AND AGREED, that in the event Tenant is adjudicated a bankrupt or makes an assignment for the benefit of Tenant's creditors, this agreement shall, at the option of Landlord, cease and determine and said premises shall be surrendered to Landlord, who hereby reserves the right, in either of said events, to forthwith re-enter and repossess said premises.

22. **FIRE AND CASUALTY DAMAGE.** IT IS FURTHER UNDERSTOOD AND AGREED, that if said premises, or any part thereof, shall at any time be destroyed by fire (or other unavoidable casualty) as to be unfit for occupancy or use, then the rents herein reserved, or a fair and just proportion thereof, according to the area of the leased premises which is unusable by Tenant, and the nature and extent of the damage sustained, shall, until the said premises shall have been rebuilt or restored and made fit

not involving the repair or reconstruction of a substantial portion thereof, the Landlord shall promptly restore same to such condition as will permit Tenant to use and occupy said premises for the purpose herein let; and provided however, any obligation of Landlord hereunder shall be limited to the basic building and interior work originally installed by Landlord. Landlord shall commence such repairs or restoration with reasonable diligence after notice thereof and after a reasonable period of time for Landlord to adjust Landlord's insurance claims and shall prosecute same in an expeditious manner.

**23. EXPIRATION OF LEASE.** AND IN THAT EVENT the Tenant shall elect and be suffered to remain in possession of the said premises at the expiration of the term hereby created, said Tenant shall, by virtue of this agreement, become a Tenant by the month, and said monthly tenancy shall be subject to all the conditions and covenants of said lease as though the same had been a monthly instead of a tenancy as provided herein, and shall give to the Landlord at least thirty (30) days' notice of any intention to remove from said premises, and shall be entitled to a like notice from Landlord in the event Landlord desires possession of said premises; provided, however, that said Tenant by the month shall not be entitled to any notice in event the said rent is not paid in advance without demand, the usual thirty (30) days' written notice being hereby expressly waived.

**24. WAIVER OR BREACH OF COVENANT.** IT IS FURTHER UNDERSTOOD AND AGREED, that the covenants, conditions and agreements contained in the within lease to be performed by the respective parties, are binding on , and may be legally enforced by, the said parties, their heirs, executors, administrators, successors and assigns, respectively, and that no waiver of any breach of any covenant hereof shall be construed to be a waiver of the covenant itself or of any subsequent breach thereof, or of this agreement.

**25. BROKER'S COMMISSION.** The Landlord in appointing _____ N/A _____ as rental agent herein, does so for and in consideration of its services in securing the Tenant hereunder and in negotiation of this agreement, and agrees to pay said Agent a commission of ____ % of all rents paid during the full term of this agreement and any renewal or extension hereof even though the premises hereby demised shall be sold during the term of this lease, or any extension or renewal thereof.

~~26. HOLD HARMLESS.~~ *(struck through)*

**27. TAXES.** Tenant shall pay to Landlord, as additional rent, annually, ~~~~ the real estate taxes payable by Landlord ~~~~ 50% of ~~~~ A tax bill shall be sufficient evidence of the amount of taxes so imposed, ~~~~ 60 days ~~~~ Such amount shall be paid within ~~~~ days after it shall have been demanded by Landlord, and it shall be collectible as part of the rental. ~~~~

Rental Schedule

**28. SECURITY DEPOSIT.** The amount of _____ shall be paid by Tenant at time of execution of this lease as a security deposit.

**29. RENEWAL OPTION.** Tenant shall have the right to extend this lease for an additional period of ____ years at the end of the demised term, by giving written notice at least ____ 90 days ____ in advance of the end of the original lease term, of Tenant's intention to so renew, which shall be under the same terms and conditions as set forth in the original lease agreement; provided however; rental hereunder shall be increased in accordance with any increase in ~~~~

**30. LANDLORD'S RIGHT TO CURE TENANT'S DEFAULTS.** Should the Tenant default in performance of any of the terms, covenants or agreements herein provided including but without limitation to payment of real estate taxes, insurance premiums, utilities charges, failure to discharge forthwith a mechanics' lien filed by contractors of Tenant, repairs to the premises or in any other respect whatsoever, or should Landlord incur any charge, expense or attorney's fees as a result of the breach by Tenant of any of the terms of this lease, Landlord shall have the right to cure any such defaults or incur any such expense and shall charge said expenditures made by it as additional rent, and Tenant agrees to forthwith pay such additional rent to Landlord. Should Tenant fail to pay such sums forthwith after demand therefor, Landlord shall be entitled to all of the remedies herein provided with respect to the collection of such charges as in the case of nonpayment of rent.

**31. CAPTIONS.** The captions appearing in this lease are inserted only as a matter of convenience and in no way define, limit, construe or describe the scope or intent of any paragraph or section of this lease nor in any way affect this lease.

**32. FINAL AGREEMENT.** THIS LEASE contains the entire and final agreement by and between the parties hereto, and they shall not be bound by any statements, conditions, representations, inducements, or warranties, oral or written, not herein contained.

**33. PROPERTY DATA and ADDRESS OF PARTIES.** The following are attached hereto and made a part hereof:
____ PLANS AND SPECIFICATIONS ____ SITE PLAN __x__ FLOOR PLAN ____ RECORD PLAT
____ OTHER _____

All notices required to be given shall be in writing and mailed or delivered to the following addresses:

TO LANDLORD:   The May Partnership
                5300 Beech Place
                Temple Hills, MD 20748

TO TENANT:      The Art & Drama Therapy Institute Inc.
                336 Randlph Place NE
                Washington, DC 20002

IN WITNESS WHEREOF the said parties have hereunto signed their names and affixed their seals.

                          The May Partnership
                          Walter M. Prichard
                          Managing General Partner

_Roberta J. Gaglam__
Witness

                          Landlord

_Roberta J. Gaglam__
Witness
                                    VICE - PRES

                          The Art & Drama Therapy Institute
                          Margaret Maria Dickinson, President
                          Sirkku Sky Hiltunen, Vice President
Witness
                          Tenant

ADDENDUM TO LEASE

MAY PARTNERSHIP - ADTI

CPI Increase

Fixed price increase of 3% per year with the provision that if the CPI increase over 3% per year ADTI will pay only 50% of the increase over 3%.

| | | |
|---|---|---|
| 1st year | $6,000 | 12 July 1996  -  11 JULY 1997 |
| 2nd year | 6,180 | 97 |
| 3rd year | 6,365 | 98 |
| 4th year | 6,556 | 99 |
| 5th year | 6,753 | 00-01 |
| 6th year | 6,956 | 03 |
| 7th year | 7,164 | |

May Partnership
21700 Peach Tree Road
Dickerson, Maryland 20842

July 11, 2007

VIA HAND DELIVERY
The Art & Drama Therapy Institute, Inc. and
Beyond Mask, Inc.
336 Randolph Place, N.E.
Washington, D.C. 20002
Attn:   Dr. Sirkku Sky Hiltunen
          Dr. Margaret Maria Dickinson

          Re:    Lease Agreement dated July 12, 1996 by and between May Partnership
                  and Art & Drama Therapy Institute, Inc. (ADTI) for premises located at
                  325 S Street, N.E. and 336 Randolph Place, N.E. Washington, D.C.
                  and space occupied by Beyond Mask, Inc.

Dear Drs. Hiltunen and Dickinson:

          Please be advised that pursuant to the agreements you have entered into for the
space occupied by ADTI and Beyond Mask, Inc. at 336 Randolph Place, N.E. you are
notified of your rent increases as follows:  for the ADTI space comprising of the Phoenix
space, the Pegasus space and the Additional space the new rent due effective August 1,
2007 is $23,817.29.  Your current rent with increases for the Beyond Mask Inc. space
should be $1,660.32.

          Under the terms of the agreements for both spaces, rent was to increase by a
minimum of 3% per year with the provision that if the CPI increase was above 3%, the
rent would increase by 3% per year plus 50% of the CPI over 3%.

          Below are the rent increase calculations for ADTI - what has been paid and what
is owed.  You are in default with respect to all of the space for failure to pay those
increases.

| Year | Monthly Rent | 3% Increase | Total Monthly Rent Due |
|---|---|---|---|
| August 1, 2003 – July 31, 2004 | $20,545.00 | $616.35 | $21,161.35 |
| August 1, 2004 – July 31, 2005 | $21,161.35 | $634.84 | $21,796.19 |
| August 1, 2005 – July 31, 2006 | $21,796.19 | $653.89 | $22,450.08 |



| August 1, 2006 – July 31, 2007 | $22,450.08 | $673.50 | $23,123.58 |
|---|---|---|---|

For the ADTI space, pursuant to the terms of your lease for the period of August 1, 2003 through July 31, 2004, you were to be paying $253,936.20 for a twelve-month period prorated on a monthly basis of $21,161.35. Instead you paid $246,544.68, a shortfall of $7,391.52.

For the period of August 1, 2004 through July 31, 2005, you were to be paying $261,554.28 for a twelve-month period prorated on a monthly basis of $21,796.19. Instead you paid $246,544.68, a shortfall of $15,009.60.

For the period of August 1, 2005 through July 31, 2006, you were to be paying $269,400.96 for a twelve-month period prorated on a monthly basis of $22,450.08. Instead you paid $246,544.68, a shortfall of $22,856.28.

For the period of August 1, 2006 through July 31, 2007, you were to be paying $277,482.96 for a twelve-month period prorated on a monthly basis of $23,123.58. Instead you paid $246,544.68, a shortfall of $30,938.28.

For the ADTI space you are in arrears a total of $76,195.68.

Below are the rent increase calculations for Beyond Mask, Inc. - what has been paid and what is owed. You are in default with respect to the Beyond Mask space for failure to pay those increases.

| Year | Monthly Rent | 3% Increase | Total Monthly Rent Due |
|---|---|---|---|
| January 1, 2001 – December 31, 2001 | $1,350.00 | $40.50 | $1,390.50 |
| January 1, 2002 – December 31, 2002 | $1,390.50 | $41.71 | $1,432.21 |
| January 1, 2003 – December 31, 2003 | $1,432.21 | $42.97 | $1,475.18 |
| January 1, 2004 – December 31, 2004 | $1,475.08 | $44.25 | $1,519.43 |
| January 1, 2005 – December 31, 2005 | $1,519.43 | $45.58 | $1,565.01 |
| January 1, 2006 – December 31, 2006 | $1,565.01 | $46.95 | $1,611.96 |

January 1, 2007 –
July 31, 2007          $1,611.96              $48.36          $1,660.32

For the Beyond Mask, Inc. space, pursuant to the terms of your lease for the period of January 1, 2001 through December 31, 2001, you were to be paying $16,686.00 for a twelve-month period prorated on a monthly basis of $1,390.50. Instead you paid $16,200.00, a shortfall of $486.00.

For the period of January 1, 2002 through December 31, 2002, you were to be paying $17,186.52 for a twelve-month period prorated on a monthly basis of $1,432.21. Instead you paid $16,200.00, a shortfall of $986.52.

For the period of January 1, 2003 through December 31, 2003, you were to be paying $17,702.16 for a twelve-month period prorated on a monthly basis of $1,475.18. Instead you paid $16,200.00, a shortfall of $1,502.16.

For the period of January 1, 2004 through December 31, 2004, you were to be paying $18,233.16 for a twelve-month period prorated on a monthly basis of $1,519.43. Instead you paid $16,200.00, a shortfall of $2,033.16.

For the period of January 1, 2005 through December 31, 2005, you were to be paying $18,780.12 for a twelve-month period prorated on a monthly basis of $1,565.01. Instead you paid $16,200.00, a shortfall of $2,580.12.

For the period of January 1, 2006 through December 31, 2006, you were to be paying $19,343.52 for a twelve-month period prorated on a monthly basis of $1,611.96. Instead you paid $16,200.00, a shortfall of $3,143.52.

For the period of January 1, 2007 through July 31, 2007, you were to be paying $11,622.24 for a seven-month period prorated on a monthly basis of $1,660.32. Instead you paid $9,450.00, a shortfall of $2,172.24.

For the Beyond Mask, Inc. space, you are in arrears a total of $12,903.72.

Unless we receive a certified check in the amount of $76,195.68 for the ADTI space and a certified check in the amount of $12,903.72 for the Beyond Mask space by August 13, 2007, the Landlord reserves the right to terminate both leases. Please make your checks payable to "The May Partnership" and send the certified checks to The May Partnership, 21700 Peach Tree Road, Dickerson, Maryland 20842 for delivery no later than August 13, 2007. You will also be liable for all attorney's fees. In addition, if the sums are not received by August 13, 2007, Landlord may deem this Lease terminated and you shall remain liable as set forth in Paragraphs 19 and 30 of the Lease for all sums due under the lease and all attorney's fees.

Please do not make any improvements that are affixed to the Premises as your purported exercise of an option to renew is not valid.

Thank you.

The May Partnership

Walter M. Prichard
Managing Partner

Cc:     The Art & Drama Therapy Institute, Inc.
        325 S Street, N.E.
        Washington, D.C. 20002
        Attn:   Dr. Sirkku Sky Hiltunen
                Dr. Margaret Maria Dickinson
        Steve Bogorad, Esq.
        Langdon Hample
        Richard Luchs, Esq.

EXHIBIT
D

**Dr. Sirkku Sky Hiltunen,**
*President*
**Dr. M. "Muggy Do" Dickinson,**
*Vice President*

December 6, 1999

*To SMUL* *(handwritten)*

Mr. Walter Prichard, Managing Partner
May Partnership
5300 Beech Place
Temple Hills, MD 20748

Dear Mr. Prichard:

This letter will document our understanding concerning the use of the premises at 336 Randolph Place as discussed in our meeting on November 22, 1999.

1.  We agreed that Beyond Mask, Inc. (BMI) will leave the space it currently occupies on the first floor of the building by December 31, 1999.
2.  We also agreed that BMI would move to the newly renovated space on the second floor by January 1, 2000. We agreed that BMI would pay an annual rent of $16,200. In consideration, BMI gave you a one-month's deposit of $1,350.00, check no. 3599 dated 11/22/99. We agreed that a lease contract from you would be coming soon.
3.  We obtained your permission to use the month of December to install the telephones and the alarm system, computer cables and do other work necessary to prepare the premises for BMI's move in January 2000. You acknowledged also that some furniture have already been moved.

Please sign below if the above information meets your agreement and understanding.

Sincerely,

Dr. Sirkku Sky Hiltunen
President

Walter Prichard, Managing Partner
May Partnership

*Began 1/1/2000 @ 1350.00 per month* *(handwritten)*
*Rent was never increased* *(handwritten)*
*10/17/06* *(handwritten)*