IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE ART & DRAMA THERAPY
INSTITUTE, INC., *et al.*,

       *Plaintiffs*,

v.

THE MAY PARTNERSHIP, *et al.*,

       *Defendants*.

Civil Action No. 07-1456 (PLF)

### CONSENT MOTION OF 336 RANDOLPH LLC TO BE JOINED AS A DEFENDANT AND COUNTERCLAIM PLAINTIFF UNDER RULE 25(C)

Movant, 336 Randolph LLC ("Movant"), by its undersigned counsel, pursuant to Fed. R. Civ. P. 25(c) hereby files the instant consent motion to join as a defendant and a counterclaim plaintiff in the instant case. As grounds for this motion, Movant states as follows:

1. On August 13, 2007, Plaintiffs The Art & Drama Therapy Institute, Inc. ("ADTI") and Beyond Mask, Inc. ("BMI") filed a Complaint against Defendants The May Partnership ("May"), Walter Prichard, David Ehrenfried, Loreto Capoccia, Keith Prichard, Michael Polits, Gregory Prichard, William O'Connell, Joseph J. Natoli, Alexandria Metal Finishers, Inc., and Timsco, Inc. seeking declaratory judgment.

2. The Complaint arose out of leases executed between May and Plaintiffs. In this regard, on June 12, 1996, May executed a lease with ADTI for premises at 325 S Street, N.E. (a/k/a 327 S Street, N.E.) and on that same day executed another lease for premises at 336 Randolph Place, N.E. Although bearing the addresses of two different streets, both ADTI spaces are in the same building. On December 6, 1999, May executed an agreement with BMI for other

space at 336 Randolph Place, N.E. ("BMI Lease").  The rental spaces of all three leases shall hereinafter be referred to collectively as the "Property."

3.     The gravamen of Plaintiffs' Complaint is that May improperly rejected ADTI's attempt to extend its lease terms, made an improper demand on Plaintiffs for back rent under their respective leases, and improperly calculated their current rent charge.

4.     Plaintiffs seek declaratory judgments that:  May is estopped from seeking or has waived its right under the leases to impose back rent; May is estopped or otherwise waived its right to charge current rent of $23,817.29 (16% increase from 2003) in the case of ADTI and $1,660.32 (23%) in the case of BMI, but instead is limited to an increase of 3%; and that Plaintiffs have a renewal option to extend the term of their leaseholds in seven year increments _ad infinitium_.

5.     On September 12, 2007, May filed an Answer to the Complaint and a Counterclaim in which it sought to recover back rent and utilities.

6.     After the date the Complaint and the May Answer and Counterclaim were filed, specifically on September 13, 2007, May sold its interests in the Property to Movant.  See Deed, Exhibit 1.  Furthermore, with one exception not applicable herein, May assigned to Movant all of its rights and interests in the leases and, thus, in all monies owed by Plaintiffs under the leases. See Assignment, Exhibit 2.

7.     On September 28, 2007, Movant filed a motion under Rule 24(a) to intervene as of right as a defendant and a counterclaim plaintiff.  In light of the filing of the instant motion, the previous motion to intervene will be withdrawn.

8.     The granting of this motion is supported by Fed. R. Civ. P. 25(c) under which the Court, upon motion, may join any person to whom the interest at issue has been transferred.

9.     In compliance with LCvR 7(m), prior to filing this motion, the undersigned contacted counsel for Plaintiffs and for Defendants to determine whether the respective parties would consent to the instant motion.  On October 11, 2007, David Charles Masselli, counsel for Defendants, advised that Defendants consent to the motion and Stephen Allan Bogorad, counsel for Plaintiffs, advised that Plaintiffs consent to the motion.  The motion is made without prejudice to any of the parties filing subsequent motions concerning their respective continued participation in the case.

10.     Attached hereto as Exhibit 3 is the proposed Answer and Counterclaim that Movant requests that the Court accept for filing in the event that the instant motion is granted.


WHEREFORE, Movant 336 Randolph LLC hereby respectfully requests that this Court grant its motion and permit Movant to be joined as a defendant and a counterclaim plaintiff, and that it accept for filing Movant's proposed Answer and Counterclaim.


Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.


/S/
Dated:  October 12, 2007          Richard W. Luchs, #243931
                                  William C. Casano, #352492
                                  Joshua M. Greenberg, #489323
                                  1620 L Street, N.W., Suite 900
                                  Washington, DC  20036-5605
                                  Telephone:  (202) 452-1400
                                  E-mail:  rwl@gdllaw.com
                                  E-mail:  wcc@gdllaw.com
                                  E-mail:  jmg@gdllaw.com

                                  *Attorneys for Movant 336 Randolph LLC*

EXHIBIT 1

FILE NO. ICT4266A
PROPERTY TAX ID NO: SQUARE 3571 LOT 0034
TITLE INSURER: FIRST AMERICAN TITLE INSURANCE

# DEED

THIS DEED, made this 13th day of September, 2007, by and between THE MAY PARTNERSHIP, A VIRGINIA GENERAL PARTNERSHIP, party of the first part, and 336 RANDOLPH LLC, party of the second part.

WITNESSETH, that in consideration of the sum of TWO MILLION THREE HUNDRED FIFTY THOUSAND AND 00/100 $2,350,000.00, receipt whereof is hereby acknowledged, the said party of the first part does grant and convey to the said party of the second part, in fee simple, as SOLE OWNER, the following described land and premises, situate in the District of Columbia and known and distinguished as:

Lot numbered Thirty-four (34) in Square numbered Thirty-five Hundred Seventy One (3571) in a subdivision made by Sarah Miller Birney and others, as per plat recorded in the Office of the Surveyor for the District of Columbia in Liber 126 at Folio 80.

Being the same property described in Deed dated 08/19/1985 and recorded 08/20/1995   among the Land Records of District of Colombia in Instrument number 32266 from 336 Randolph Place, Limited Partnership unto the Grantors herein.

Property Address: 336 RANDOLPH PLACE, N.E., WASHINGTON, DC 20002

TOGETHER WITH all and singular the ways, easements, rights, and privileges and appurtenances to the same belonging or in anywise appertaining, and all the estate, right, title, interest, and claim, either at law or in equity or otherwise however, of the said party of the first part, of, in, to, or out of the said land and premises; subject to all easements, covenants and restrictions of record.

AND the party of the first part herein warrants specially the property hereby conveyed; and covenants to execute such further assurances of said land as may be requisite.

WITNESS the hand and seal the day and year first hereinbefore written.

Witness:

_____

_____ (SEAL)
WALTER M. PRICHARD,
MANAGING MEMBER

STATE OF MARYLAND
COUNTY OF MONTGOMERY

I, a Notary Public, in and for the jurisdiction aforesaid, do hereby certify that WALTER M. PRICHARD, MANAGING MEMBER FOR THE MAY PARTNERSHIP, party to a certain DEED bearing date on the 12th day of September, 2007 and hereto annexed personally appeared before me in the said jurisdiction, the said WALTER M. PRICHARD known to me to be the person who executed the said Deed and acknowledged the same to be his act and deed.

Given under my hand and seal this 12th day of September, 2007.



NOTARY PUBLIC

My Commission Expires:_____

ANDREA M. CONTE
Notary Public - Maryland
Montgomery County
My Commission Expires on
August 1, 2008

AFTER RECORDING MAIL TO :

Inter-Continental Title & Escrow
51 Monroe Place
Suite 1401
Rockville MD 20850

# EXHIBIT 2

## ASSIGNMENT

FOR VALUE RECEIVED, The May Partnership ("Assignor") hereby assigns to 336 Randolph LLC, a District of Columbia limited liability company ("Assignee") all right, title and interest to any unpaid rents, interest thereon and attorney's fees that may be recoverable from ADTI and Beyond Mask, Inc. relating to their occupation of the space at 336 Randolph Place, N.E. and 327 S Street, N.E., Washington, D.C. except that all amounts due The May Partnership for real estate taxes and the special New York Street Assessment for the second half of 2007 shall be first paid to The May Partnership out of the first monies collected, for the period prior to the closing date between Assignor and Assignee under that certain Purchase Agreement dated April 6, 2007, as amended.

Assignor and Assignee make no representations as to the collectibility of such unpaid rents and shall not be liable for any sums that are uncollected.

This Assignment may be executed in one or more counterparts, each of which when so executed and delivered shall be deemed an original, all of which taken together shall constitute one and the same original.

In witness whereof, the Assignor and Assignee hereby set their hands and seals this _13th_ day of September 2007.

The May Partnership

By: _____
Its:

Accepted in accordance with its terms by:

336 Randolph LLC

By: _____
        Eric T. May, Managing Member

ASSIGNMENT

FOR VALUE RECEIVED, The May Partnership ("Assignor") hereby assigns to

336 Randolph LLC, a District of Columbia limited liability company ("Assignee") all

right, title and interest to any unpaid rents, interest thereon and attorney's fees that may

be recoverable from ADTI and Beyond Mask, Inc. relating to their occupation of the

space at 336 Randolph Place, N.E. and 327 S Street, N.E., Washington, D.C. except that

all amounts due The May Partnership for real estate taxes and the special New York

Street Assessment for the second half of 2007 shall be first paid to The May Partnership

out of the first monies collected, for the period prior to the closing date between Assignor

and Assignee under that certain Purchase Agreement dated April 6, 2007, as amended.

Assignor and Assignee make no representations as to the collectibility of such

unpaid rents and shall not be liable for any sums that are uncollected.

This Assignment may be executed in one or more counterparts, each of which

when so executed and delivered shall be deemed an original, all of which taken together

shall constitute one and the same original.

In witness whereof, the Assignor and Assignee hereby set their hands and seals

this _22th_ day of September 2007.

The May Partnership

By: _WALTER A. PHICIMRY_

Its: _MANAGING PARTNER_

Accepted in accordance with its terms by:

336 Randolph LLC

By: _____

        Eric T. May, Managing Member

EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE ART & DRAMA THERAPY
INSTITUTE, INC., *et al.*,

       *Plaintiffs*,

v.                                                    Civil Action No. 07-1456 (PLF)

THE MAY PARTNERSHIP, *et al.*,

       *Defendants*.

## ANSWER AND COUNTERCLAIM OF 336 RANDOLPH LLC

COMES NOW, the Defendant and Counterclaim Plaintiff 336 Randolph LLC ("Randolph"), by counsel, and in response to the Complaint files its Answer (the "Answer") and its Counterclaim (the "Counterclaim"). In support of its Answer, Randolph states as follows:

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

### SECOND DEFENSE

Plaintiffs have waived, released or are otherwise estopped from asserting the claims alleged in the Complaint.

### THIRD DEFENSE

Plaintiffs' claims are barred in whole or in part by the doctrine of "unclean hands."

### FOURTH DEFENSE

Plaintiffs' claims are barred by the terms of their respective leases.

### FIFTH DEFENSE

322353v1

The relief sought by Plaintiffs is barred by the statute of frauds.

## SIXTH DEFENSE

The relief sought by Plaintiffs is barred by laches.

## SEVENTH DEFENSE

Plaintiffs would be unjustly enriched should they receive the relief they seek.

## EIGHTH DEFENSE

Randolph denies any and all allegations set forth in the Complaint to the extent that Randolph does not specifically respond to those allegations elsewhere in this Answer.

## NINTH DEFENSE

Responding to the specific allegations of the paragraphs of the Complaint, Defendant states as follows:

1-2.    Defendant is without sufficient information to admit or deny the allegations in paragraphs 1 and 2 of the Complaint, and therefore denies same and demands strict proof thereof.

3.    Defendant admits the first sentence of paragraph 3 of the Complaint, but denies the second sentence of that paragraph.

4-7.    Defendant admits the allegations of paragraphs 4-7 of the Complaint.

8.    Defendant denies the allegations of paragraph 8 of the Complaint.

9.    Defendant admits the allegations of paragraph 9 of the Complaint.

10-11.    Defendant denies the allegations of paragraphs 10-11 of the Complaint.

12-13.    Defendant admits the allegations of paragraphs 12-13 of the Complaint.

14.    Defendant is without sufficient information to admit or deny the allegations in paragraph 14 of the Complaint and it therefore denies same and demands strict proof thereof.

15.    Defendant admits that the property which is the subject of this litigation is located in the District of Columbia.  The remainder of the allegations in paragraph 14 of the Complaint implicate matters of law and no answer is required.

16.    Defendant admits that ADTI maintains facilities at S Street, N.E. and 336 Randolph Place, N.E., however, Defendant is without knowledge whether such are ADTI's sole facilities.  Defendant is without sufficient information to admit or deny the remaining allegations of paragraph 16 of the Complaint and therefore denies same and demands strict proof thereof.

17.    Defendant admits that BMI maintains facilities at 336 Randolph Place, N.E., however, it is without information whether such are BMI's sole facilities.  Defendant is without sufficient information to admit or deny the remaining allegations of paragraph 17 of the Complaint and it denies same and demands strict proof thereof.

18.    Defendant admits to so much of paragraph 18 of the Complaint as alleges that The May Partnership ("May") rented spaces at S Street, N.E. and 336 Randolph Place, N.E. to ADTI for a term of seven years.  Defendant affirmatively avers that the S Street lease was for 325 S Street, which, upon information and belief, has become known as 327 S Street, N.E.  With respect to the second sentence of paragraph 18 of the Complaint, the leases speak for themselves and no answer is required.

19.    With respect to the allegations of paragraph 19, the leases speak for themselves and no answer is required.  Defendant specifically denies that renewal can occur more than once or that Plaintiffs have any more renewals available to them.

20.    Defendant is without sufficient information to admit or deny the allegations of paragraph 20 of the Complaint, and it therefore denies same and demands strict proof thereof.

21.     Defendant admits that there was a written agreement between May and BMI concerning space at 336 Randolph Place, N.E.  With respect to all other allegations of paragraph 21 of the Complaint, the agreement speaks for itself and no answer is required.

22-26.   Defendant is without sufficient information to admit or deny the allegations in paragraphs 22-26 of the Complaint and it therefore denies same and demands strict proof thereof.

27.     Defendant admits the allegations of the first sentence of paragraph 27 of the Complaint.  Defendant further admits that May refused to recognize ADTI's attempt to extend its leases and Defendant denies that ADTI has any right to further renewals.

28.     Defendant admits that Walter Prichard sent a letter on behalf of May to ADTI and BMI.  The letter speaks for itself.  The remainder of paragraph 28 of the Complaint is denied.

29.     Defendant admits so much of the allegation contained in paragraph 29 which alleges certain payments made by Plaintiffs to May.  The remainder of the allegations made in said paragraph are denied.

30.     Defendant restates and incorporates by reference its answers to the allegations set forth in paragraphs 1 through 29 of the Complaint as if set forth herein.

31-33.   Defendant is without sufficient information to admit or deny the allegations in paragraphs 31-33 of the Complaint and it therefore denies same and demands strict proof thereof.

34.     Defendant admits that Walter Prichard sent a letter on behalf of May to ADTI and BMI on or about July 11, 2007.  The letter speaks for itself.

35.     Defendant admits that there is an actual controversy between the parties. Defendant denies that May was seeking or that Defendant is seeking the payment of any rent which Defendant is not owed.

WHEREFORE, Defendant denies that the elements of estoppel exist under the laws of the District of Columbia and prays that Count I of the Complaint be dismissed with prejudice or that a declaratory judgment otherwise be entered in Defendant's favor.

36.    Defendant restates and incorporates by reference its answers to the allegations set forth in paragraphs 1 through 35 of the Complaint as if set forth herein.

37.    Defendant denies the allegations of paragraph 37 of the Complaint.

38.    Defendant admits the allegations of paragraph 38 of the Complaint.

39.    Defendant admits that there is actual controversy between the parties. Defendant denies that May was seeking or that Defendant is seeking the payment of any rent which Defendant is not owed.

WHEREFORE, Defendant denies that the elements of waiver exist under the laws of the District of Columbia and prays that Count II of the Complaint be dismissed with prejudice or that a declaratory judgment otherwise be entered in Defendant's favor.

40.    Defendant restates and incorporates by reference its answers to the allegations set forth in paragraphs 1 through 39 of the Complaint as if set forth herein.

41-42.  Defendant denies the allegations of paragraphs 41-42 of the Complaint.

43.    Defendant admits so much of paragraph 43 which alleges that May sent a letter to Plaintiffs.  The letter speaks for itself.

44.    Defendant admits that May received payments as well as a letter from ADTI and BMI in August 2007.  Defendant denies the remainder of paragraph 44.

45.    Defendant admits that there is actual controversy between the parties. Defendant denies that May sought or that Defendant seeks to retroactively implement rent increases which were waived and Defendant denies that any waiver or estoppel occurred.

WHEREFORE, Defendant denies that the elements of estoppel exist under the laws of the District of Columbia and prays that Count III of the Complaint be dismissed with prejudice and further denies that the actions taken by May or by Defendant constitute retroactive implementation of rent increases.

46.    Defendant restates and incorporates by reference its answers to the allegations set forth in paragraphs 1 through 45 of the Complaint as if set forth herein.

47.    Defendant denies the allegations of paragraph 47 of the Complaint.

48.    Defendant admits that there is an actual controversy between the parties. Defendant denies that May or Defendant sought to retroactively implement rent increases or waive such increases as were due under the Leases.

WHEREFORE, Defendant denies that the elements of waiver exist under the laws of the District of Columbia and prays that Count IV of the Complaint be dismissed with prejudice and further denies that the actions taken by May or Defendant constitute retroactive implementation of rent increases.

49.    Defendant restates and incorporates by reference its answers to the allegations set forth in paragraphs 1 through 48 of the Complaint as if set forth herein.

50.    With respect to the allegations in paragraph 50 of the Complaint, the Lease speaks for itself.  Defendant expressly denies that the provision in the Lease for "an option to renew" creates a perpetually renewable lease.

51.    Defendant is without sufficient information to either admit or deny the allegations contained in paragraph 51 of the Complaint and therefore denies same and demands strict proof thereof.

52.      Defendant admits that ADTI executed the document referenced in the first sentence of paragraph 52 of the Complaint and that May executed the document referenced in the second sentence of paragraph 52.  The documents speak for themselves.  Defendant denies the last sentence in paragraph 52 of the Complaint.

53.      Defendant admits that the letter referred to in paragraph 53 of the Complaint was sent.  Defendant denies that the letter had the legal effect claimed as the Leases had no more renewal rights.

54.      Defendant admits that there is an actual controversy between the parties. Defendant denies that Plaintiffs have any further rights to renew the Leases.

WHEREFORE, Defendant denies that there is any basis for the declaratory relief sought by Plaintiffs and prays that the Court dismiss Count V of the Complaint with prejudice or otherwise enter declaratory judgment in Defendant's behalf.

## COUNTERCLAIM

59.      Defendant and Counterclaim Plaintiff Randolph, by counsel, bring this Counterclaim against Counterclaim Defendants The Art and Drama Therapy Institute, Inc. and Beyond Mask Inc.

## NATURE OF THE ACTION

60.      This is an action for back rent owed by both of the Plaintiffs/Counterclaim Defendants and for utility charges they were obliged to pay under their leases with May, the right to which back rent and utility charges May assigned to Randolph.

## PARTIES

61.      Randolph is a District of Columbia limited liability company.  Randolph is the owner of the property ("the Property") containing the leased premises of ADTI and BMI and

Randolph is also the assignee of all unpaid amounts under the leases executed by ADTI and BMI relating to their occupancy of 336 Randolph Place, N.E. and 325 S Street, N.E. (a/k/a 327 S Street, N.E.), Washington, DC.

62.    On information and belief, Counterclaim Defendant The Art and Drama Therapy Institute, Inc. ("ADTI") is a corporation organized and existing under the laws of Delaware with its principal office in the District of Columbia.

63.    On information and belief, Counterclaim Defendant Beyond Mask, Inc. ("BMI") is a corporation organized and existing under the laws of Delaware with its principal office in the District of Columbia.

## JURISDICTION AND VENUE

64.    The Court has jurisdiction over this claim presented herein pursuant to 28 U.S.C. § 1367 as such claim is part of the same case or controversy.

65.    Venue is appropriate in this judicial district under 28 U.S.C. § 1391(a) because the property which is the subject of this action is situated in the District of Columbia.

## BACKGROUND

66.    Randolph owns the Property containing Plaintiff's leased premises.

67.    May is a partnership formed under the laws of Virginia.

68.    On or about July 12, 1996, Randolph's predecessor in interest, May, entered into a lease (the "S Street Lease") with Counterclaim Defendant ADTI for the premises at 325 S Street, N.E. (a/k/a 327 S Street, N.E.).  A copy of this lease is set forth as Exhibit A hereto.

69.    The S Street Lease provided for an initial monthly rental of Six Thousand Dollars ($6,000.00) per month and further provided that the rent would increase on an annual basis by three percent (3%), plus half of any increase in the Consumer Price Index above three percent.

70.     On or about July 12, 1996, May entered into a lease with Counterclaim Defendant ADTI for the premises at 336 Randolph Place, N.E. (the "Randolph Lease").  A copy of the Randolph Lease is set forth as Exhibit B hereto.

71.     The Randolph Lease provided for an initial monthly rental of Ten Thousand Three Hundred Nineteen Dollars ($10,319.00) per month and further provided that the rent would increase on an annual basis by three percent (3%), plus half of any increase in the Consumer Price Index above three percent.

## COUNT I
## BACK RENT ADTI

72.     Randolph incorporates and realleges the allegations set forth in paragraphs 59 through 71 as if fully set forth herein.

73.     The two leases between May and ADTI provide for annual rent increases of three percent (3%) plus one-half of any increase in the Consumer Price Index above three percent.

74.     Beginning in August 2003, ADTI began tendering monthly rental payments that did not include the 2003 cost increase or any subsequent annual rent increase.

75.     At no time did May, or any agent of May, accept these rent payments as full payment of the rent or waive its right to full payment.

76.     At no time did May, or any agent of May, state that May would forego its rights under the Leases to full payment of the rent, including the annual rent increases.

77.     At no time did May, or any agent of May, waive the right of May to full payment of the rent, including the annual rent increases.

78.     For the 2003 rental year (August 1, 2003 through July 31, 2004), ADTI paid $20,545.00 per month.

79.     The monthly rent due pursuant to the lease during the 2003 rental years was $21,161.35.

80.     The shortfall for the 2003 rental year was approximately $7,391.52.

81.     For the 2004 rental year (August 1, 2004 through July 31, 2005), ADTI paid $20,540.00 per month.

82.     The monthly rent due pursuant to the lease during the 2004 rental year was $21,796.19.

83.     The shortfall for the 2004 rental year was approximately $15,009.60.

84.     For the 2005 rental year (August 1, 2005 through July 31, 2006), ADTI paid $20,540.00 per month.

85.     The monthly rent due for the 2005 rental year was $22,450.08.

86.     The shortfall for the 2005 rental year was approximately $22,856.28.

87.     For the 2006 rental year (August 1, 2006 through July 31, 2007), ADTI paid $20,540.00 per month.

88.     The monthly rent due pursuant to the lease for the 2006 lease year was $23,123.58.

89.     The shortfall for the 2006 rental year was approximately $30,938.28.

90.     The total shortfall of the ADTI leases through July 31, 2007 is approximately $76,195.68, absent interest and fees.  ADTI has breached its leases by failure to pay these shortfalls.

91.     May made demand of this amount by letter dated July 11, 2007.  A copy of the letter is set forth as Exhibit C.

92.    The monthly rent due pursuant to the ADTI leases for the 2007 rental year is $23,817.29, yet ADTI, in breach of its leases, has only been paying $21,161.35.  Accordingly, a monthly rent shortfall of $2,655.94 has occurred and will occur throughout the balance of the 2007 rental year.

93.    May assigned to Randolph its rights to any of ADTI's unpaid rent and interest thereon and attorney fees necessary to collect such by virtue of an Assignment executed on September 13, 2007, a copy of which is attached hereto as Exhibit E.

94.    The leases provide that if the landlord incurs attorneys fees to enforce the leases, ADTI shall pay such fees and expenses.

WHEREFORE, Randolph respectfully requests entry of judgment against ADTI in the amount of $76,195.68, together with all rent shortfalls incurred for the 2007 rental year and that the Court with also award to Randolph all attorney fees incurred by Randolph in this action.

## COUNT II
## UTILITIES ADTI

95.    Randolph incorporates and realleges the allegations set forth in paragraphs 59 through 94 as if set forth herein.

96.    Pursuant to the leases between May and ADTI for the S Street and Randolph Place properties, ADTI was responsible to pay for all utility charges.

97.    ADTI has not paid all utility charges.

98.    The current amount owed on utilities is not yet known to May or Randolph.

WHEREFORE, Randolph respectfully requests entry of judgment against ADTI for unpaid utility charges in an amount to be proved at trial, together with Randolph's costs, including reasonable attorney fees, in this action.

COUNT III
BACK RENT BMI

99.    Randolph incorporates and realleges the allegations set forth in paragraphs 59

through 98 as if set forth herein.

100.    In December 1999, Beyond Mask, Inc. ("BMI") agreed with May to rent certain

newly renovated space on the second floor of the premises at 336 Randolph Place, N.E.

beginning on January 1, 2000.  The parties agreed that the initial monthly rent would be

$1,350.00.  Exhibit D.

101.    The parties did not sign a lease at the time that BMI began occupancy of the

second floor space.

102.    BMI occupied the space without a written lease until May 9, 2007.

103.    During this period, BMI paid $1,350.00 per month.

104.    It was the understanding of May and BMI that the lease would include the same

rent escalator as was contained in the ADTI lease.

105.    Using the rent escalation provision agreed to by the parties, the monthly rental

owed by BMI was approximately as follows:

| | |
|---|---|
| 2001 | $1,390.50 |
| 2002 | $1,432.21 |
| 2003 | $1,475.18 |
| 2004 | $1,519.43 |
| 2005 | $1,565.01 |
| 2006 | $1,611.96 |
| 2007 | $1,660.00 |

106.    BMI did not pay any annual rent increase.

107.    At no time did May, or any agent of May, accept these rent payments as full

payment of the rent owed or waive its right to full payment.

108.    At no time did May, or any agent of May, state that May would forego its rights to full payment of the rent, including the annual rent increases.

109.    At no time did May, or any agent of May, waive the right of May to full payment of the rent, including the annual rent increases.

110.    The rent shortfall during the period January 1, 2000 through July 31, 2007 is approximately as follows:

| | |
|---|---|
| 2001 | $   486.00 |
| 2002 | $   986.92 |
| 2003 | $ 1,502.16 |
| 2004 | $ 2,033.16 |
| 2005 | $ 2,580.12 |
| 2006 | $ 3,143.52 |
| 2007 | $ 2,172.72 |

111.    The total rent shortfall on the BMI space through July 31, 2007, is approximately $12,903.72 absent interest and fees.

112.    May made demand of this amount by letter dated July 11, 2007.  A copy of the letter is set forth as Exhibit C.

113.    BMI has failed to comply with this demand and in so refusing breached its agreement.

114.    The monthly rent due pursuant to the BMI lease for the 2007 rental year is $1,660.32, yet BMI, in breach of its lease has been paying only $1,390.50 thereby creating a monthly rent shortfall of $269.82 which Defendant has suffered and will suffer throughout the remainder of the 2007 rental year.

115.    May assigned to Randolph its rights to any of BMI's unpaid rent and interest thereon and attorney fees necessary to collect such by virtue of an Assignment executed on September 13, 2007, a copy of which is attached hereto as Exhibit E.

116.    The leases provide that if the landlord incurs attorneys fees to enforce the leases, BMI shall pay such fees and expenses.

WHEREFORE, Randolph respectfully requests entry of a judgment against BMI in the amount of $12,903.72 together with all rent shortfalls incurred for the 2007 rental year and that the Court also award to Randolph costs and the reasonable attorney fees incurred by Randolph in this action.

## COUNT IV
## QUANTUM MERUIT BMI

117.    Randolph incorporates and realleges the allegations set forth in paragraphs 59 through 116 as if set forth herein.

118.    During the period from January 1, 2000 through May 9, 2007, BMI occupied and made use of certain property owned by May at 336 Randolph Place, N.E.

119.    During the period from January 1, 2000 through May 9, 2007, BMI acknowledged that it was a tenant of May and made certain payments for its occupancy of its premises.

120.    The payments made by BMI were less than the value of the services, including occupancy.

121.    May has assigned its rights to such rent deficiency to Randolph.

WHEREFORE, Randolph respectfully requests entry of a judgment against BMI for quantum meruit in an amount to be proved at trial.

COUNT V
UTILITIES BMI

122.    Randolph incorporates and realleges the allegations set forth in paragraphs 59 through 121 as if set forth herein.

123.    Pursuant to the leases between May and BMI, BMI was responsible for all utility charges.

124.    BMI has not paid all utility charges.

125.    The current amount owed on utilities is not yet known to May or Randolph.

126.    May has assigned its rights to such charges to Randolph.

WHEREFORE, Randolph respectfully requests entry of judgment against BMI for unpaid utility charges in an amount to be proved at trial, together with costs, including reasonable attorney fees incurred by Randolph in this action.


336 RANDOLPH LLC
By Counsel


_____
/S/
Dated:  September 28, 2007          Richard W. Luchs, #243931
William C. Casano, #352492
Joshua M. Greenberg, #489323
Greenstein DeLorme & Luchs, P.C.
1620 L Street, N.W., Suite 900
Washington, DC  20036-5605
Telephone:  (202) 452-1400
E-mail:  rwl@gdllaw.com
E-mail:  wcc@gdllaw.com
E-mail:  jmg@gdllaw.com

*Attorneys for Defendant and Counterclaim Plaintiff*
*336 Randolph LLC*

# EXHIBIT A

AOTI

# COMMERCIAL LEASE AGREEMENT

THIS AGREEMENT, made and executed this _12_ day of _JULY_, 19_96_, by and between _____ hereinafter called the Landlord, and _Art on the Inside Theatre Inc. (AOTI)_ hereinafter called the Tenant.

WITNESSETH: that Landlord has agreed to, and does hereby, lease unto Tenant the premises known as _325 S. Street NE_ _____ commencing on the _12_ day of _JULY_ and fully ending at Midnight on the _3rd_ day of _____ _2003_ at and for the total rental of _$504,000_ payable in monthly installments of _$6,000.00_, the first installment payable on _12 JUL 1996_ and the remaining installments payable in advance on the _____ day of each ensuing month beginning _AUG 1, 1996_ to _____.

TENANT takes and holds the said premises as Tenant for the term and subject to the conditions as herein provided, at the rent payable as aforesaid, and the said Tenant will, without previous demand, pay the rent specified at the time, place and in the manner herein provided.

**1. POSSESSION.** Tenant will, and does hereby, take and hold said premises as a Tenant for the term above named; but the same is subject to delivery of possession by any occupant, and in the case of newly constructed or repaired premises, is subject to completion of construction or repairs. Should tender of possession of premises be later or earlier than the beginning date named above, then in that event, rent payable hereunder shall be adjusted to the date of occupancy, provided however, that in the event possession is not delivered within sixty (60) days of commencement date as called for herein, then in such event Tenant shall have the right to cancel this agreement by giving Landlord written notice thereof, and this agreement shall be considered null and void.

**2. RENT PAYMENTS.** Tenant will pay said rent in advance, without demand or deduction, on the _1st_ day of each month at _5300 Beech Place, Temple Hills, MD 20748_ or such other place as Landlord may designate in writing. The rent shall, at the end of each lease year, be increased in direct proportion to any increase in the Consumer Price Index (All Items Index), as published by the United States Department of Labor, using the index during the first month of occupancy as the base month as it relates to the first month of each succeeding year of the lease. _See Addendum #1_

**3. UTILITY CHARGES.** Tenant will pay all utility charges including, without limitation, water rent, sewer charges, oil, telephone, gas, and electric bills, if any, and other charges provided for herein as the same become due.

**4. USE OF PREMISES.** Tenant will use said premises actively and continuously for the full term hereof for _Therapeutic_ _training of person with or without disabilities, theater performances, art exhibits and other related activities._ AND FOR NO OTHER purpose whatsoever.

**5. DISORDERLY OR UNLAWFUL USE.** Tenant will not use, nor permit said premises or any part thereof to be used, for any disorderly or unlawful purpose.

**6. TRANSFER, ASSIGN OR SUBLET.** Tenant will not transfer or assign this lease, nor let nor sublet the whole or any part of said premises without the prior written consent of the Landlord, which consent will not be unreasonably withheld.

**7. CARE OF PREMISES AND SURRENDER.** Tenant will keep said premises in good order and condition, and surrender same at the expiration of the term herein in the same order in which premises was received, usual wear and tear, and damage by fire, storm and public enemies only excepted. Upon surrender of the premises, Tenant shall have removed all rubbish, advertisements and signs from interior, exterior and show window thereof, and on failure to do so authorizes Landlord to forthwith remove the same at Tenant's expense.

**8. SIDEWALK MAINTENANCE.** Tenant will keep the sidewalks immediately abutting said premises free from obstructions of all nature, properly swept and snow and ice removed therefrom.

**9. TENANT PERSONAL PROPERTY and LIABILITY INSURANCE.** All Tenant's property in said premises shall be and remain at his sole risk, and the Landlord shall not be liable for any damage to, or loss of such personal property arising from any acts of negligence of any other persons, nor from the leaking of the roof, or from the bursting, leaking or overflowing of water, sewer or steam pipes, or from heating or plumbing fixtures, or from the handling of electric wires or fixtures, or from any other cause whatsoever, nor shall the Landlord be liable for any injury to the person or the Tenant or other persons in or about the premises, the Tenant expressly agreeing to save the Landlord harmless in all such cases and to carry Public Liability Insurance in a company and in an amount not less than the following limits: Bodily injury _$300,000_ Property damage _$100,000_.

**10. REPAIR OF PREMISES and LANDLORD ACCESS.** Tenant will make, at Tenant's own expense, any and all repairs to the premises hereby leased during the term of the lease except Landlord shall, without expense to Tenant, maintain and make all necessary repairs to the foundations, load bearing walls, roof, gutters, downspouts, water mains, gas and sewage lines, sidewalks, private roadways, parking areas and loading docks, if any, on or appurtenant to the leased premises unless the said repairs are the result of negligence of Tenant or his agents. Tenant will allow Landlord or his Agent access to said premises at any and all reasonable time for the purpose of inspection, or in the event of fire or other property damage, or for the purpose of making any repairs Landlord considers necessary or desirable, and will permit Landlord's Agent to place a sign on the premises during the last three (3) months of this lease offering the property for sale or lease.

**11. HEAT, HOT WATER, AIR CONDITIONING AND ALTERATIONS.** Tenant will furnish heat, hot water and air conditioning, if desired, at Tenant's cost and expense during the term of this agreement or any renewals or extensions thereof, make all repairs and improvements to the interior of said premises as the same become necessary or are required, including air conditioning system, heating plant, pipes, radiators, ducts or plumbing fixtures. Tenant will repair or replace any other damage caused to the demised premises by Tenant negligence, or the negligence of Tenant's servants or employees, or any damage to the premises or the fixtures therein caused by improper use or caused by failing to give them the proper service. Tenant may, at his own expense, either at the commencement of or during the term of this lease, make such alterations in and/or additions to the leased premises including, without prejudice to the generality of the foregoing alterations in the water, gas, and electric wiring systems, as may be necessary to fit the same for Tenant's business, upon first obtaining the written approval of Landlord as to the materials to be used

and the manner of making such alteration   s/or additions, which approval will not be un   onably withheld. Tenant may also, at Tenant's own expense, install such counters, racks, shelving, fixtures, fittings, machinery and equipment upon or within the leased premises as Tenant may consider necessary to the conduct of Tenant's business. At any time prior to the expiration or earlier termination of this lease, Tenant may remove any or all such alterations, additions or installations in such a manner as will not substantially injure the leased premises. At the termination of this lease, Tenant shall restore the premises, to the same condition as existed prior to the making of such alteration, addition or installation, ordinary wear and tear, damage or destruction by fire, flood, storm, civil commotion or other unavoidable cause excepted. All alterations, additions or installations not so removed by Tenant shall become the property of Landlord without liability on Landlord's part to pay for the same.

**12. FIRE and PLATE GLASS INSURANCE.** Tenant will not permit or do anything which would increase the rate of fire insurance upon said premises, and should said rate be increased by reason of Tenant's use of said premises, Tenant will pay as additional rent to Landlord, the difference in the fire insurance premiums over and above those in effect prior to the time Tenant's use caused the rate to be increased when and as the same become due and payable. In the event Tenant's fire insurance policy is cancelled, or in the event Tenant is notified of impending cancellation, due to an act of commission or omission on the part of the Tenant, Tenant shall be given written notice by Landlord, his rental agent or insurance agent, that said fire insurance policy has been cancelled and Tenant will immediately correct or remedy the cause for said cancellation; and in the event of failure of Tenant to correct or remedy said cause within five (5) days, Landlord shall have the right at his option to declare this lease fully cancelled and void. Tenant will, during the full term of this agreement or any renewal or extension thereof, carry in a standard company full coverage insurance on all plate glass in said premises and cause same to be replaced if chipped, cracked or broken, said insurance policy or certificate from Tenant's insurance company to be deposited with Landlord or his Agent; and such policy shall provide that it shall not be cancelled for any reason unless and until Landlord or his Agent is given fifteen (15) days' notice in writing by the insurance company.

**13. SIGNS.** Tenant will not erect nor place any signs upon the windows, doors or outside walls of said premises or make any alterations or additions to the demised premises without the prior written consent of the Landlord, which consent will not be unreasonably withheld.

**14. COMPLIANCE WITH GOVERNMENTAL AUTHORITY.** Tenant will, at Tenant's cost, promptly comply with and carry out all orders, requirements, or conditions now or hereafter, imposed upon Tenant by the Ordinance, Laws and/or Regulations of the Federal Government, Municipality (Incorporated or unincorporated) or County, in which said premises are located, or by any of its various departments whether required of Landlord or otherwise, to be done or performed during the term of this agreement, insofar as they are occasioned by or required in the conduct of the business of Tenant, or in the Tenant's use and occupancy of said premises for the purpose permitted.

**15. EMINENT DOMAIN and CONDEMNATION.** In the event eminent domain proceedings shall be instituted against the leased premises, Tenant will make no claim for compensation in the proceedings, and agrees that Tenant's lease shall terminate when title to the leased premises is taken by the condemning authority, provided the rental is abated from such date. If the whole or any part of the leased premises shall be taken by any competent public authority under the power of eminent domain, then the term of this lease shall cease as to the part so taken from the date that possession of that part shall be required for any public purpose and the rent shall be paid up to that date. If the whole or any such portion of the leased premises is taken so as to reasonably destroy the usefulness of the premises for the purpose for which the same were leased, then the Tenant shall have the right to terminate this lease within _____ days after possession is taken for such public purpose. In the event, however, that only a portion of the premises is taken and the portion so taken does not reasonably destroy the usefulness of the premises for the purpose for which the same were leased, or if the Tenant shall not elect to terminate this lease if the usefulness of the premises is reasonably destroyed as stated in the preceding sentence, then the rent shall be reduced in proportion to the area of the premises taken in relation to the total area of the premises leased. The taking of a 20% or less of parking spaces shall not be considered as any taking of the "leased premises" referred to in this paragraph. Any dispute resulting from the determination of the fair reduction in rental shall be settled by arbitration under the rules of the American Arbitration Association. All proceeds from any condemnation shall belong to and be the property of the Landlord.

**16. LEASE SUBORDINATION.** This lease is subject and subordinate to the lien of any mortgage, or deed of trust encumbrance or encumbrances now or at any time hereafter placed upon the said premises, and the Tenant does hereby agree to execute, acknowledge and record any and all instruments to effect such subordination which the Landlord may request or require. Tenant irrevocably appoints Landlord, his successors and assigns, as and for his attorney-in-fact to execute any such instruments for and on its behalf.

**17. TENANT OBLIGATIONS.** Should Tenant fail to perform any of the duties hereunder, Landlord may cause the same to be performed and paid for. Payment of such sums, or expenses of prosecuting or defending any matter or action, by reason of Tenant default in any wise, shall be deemed additional rent and due from Tenant to Landlord on the first day of the month following billing for said charges incurred.

**18. LEGAL PROCEEDINGS.** In the event legal proceedings are instituted against Tenant by the Landlord, either for payment of rent or for possession, then Tenant agrees to pay all court costs instant to such proceedings, together with a reasonable attorney's fee and both parties hereby agree to waive the right of trial by jury.

**19. NOTICE TO QUIT.** If Tenant shall fail to pay said rent in advance as aforesaid, although there should have been no legal or formal demand made, or break or violate any of the within covenants, conditions or agreements, then and in any of said events, his lease and all things herein contained shall, at the option of the Landlord cease and determine and shall operate as a Notice to Quit, the thirty (30) days' written Notice to Quit being hereby expressly waived, and Landlord may proceed to recover possession of said premises under and by virtue of the provisions of the Code of Law for the District of Columbia, State of Maryland, State of Virginia, in whichever one of the three immediately preceding named jurisdictions the demised premises may be located, or by such legal process as may at the time be in operation and force in like cases relating to proceedings between Landlords and Tenants. In the event that the Landlord shall resume possession of the premises, Landlord may release the same at the best rent that can be obtained, for the remainder of the term, for the account of the Tenant, who shall make good any deficiency. Such rent so applied first to payment of Landlord's expenses incurred in recovering possession of said premises and reletting same, second to costs and expenses incurred by Landlord in making necessary repairs or incurring any default on the part of the Tenant in any covenant or condition herein, and lastly to any rent due hereunder.

**20. WAIVER OF COVENANT.** IF PROCEEDINGS, shall at any time be instituted as aforesaid and compromise of settlement shall be effected either before or after judgement whereby Tenant shall be permitted to retain possession of said premises then such proceedings shall not constitute a waiver of any covenant, condition or agreement contained herein or of any subsequent breach of his agreement.

**21. BANKRUPTCY and ASSIGNMENT.** IT IS FURTHER UNDERSTOOD AND AGREED, that in the event Tenant is adjudicated a bankrupt or makes an assignment for the benefit of Tenant's creditors, this agreement shall, at the option of Landlord, cease and determine and said premises shall be surrendered to Landlord, who hereby reserves the right, in either of said events, to forthwith re-enter and repossess said premises.

**22. FIRE AND CASUALTY DAMAGE.** IT IS FURTHER UNDERSTOOD AND AGREED, that if said premises, or any part thereof, shall at any time be destroyed by fire (or other unavoidable casualty) as to be unfit for occupancy or use, then the rents herein reserved, or a full and just proportion thereof, according to the area of the leased premises which is unusable by Tenant, and the nature and extent of the damage sustained, shall, until the said premises shall have been rebuilt or restored and made fit

not involving the repair or recognition of a substantial portion thereof, the Landlord shall promptly restore same to such condition as will permit Tenant to use and occupy said premises for the purpose herein set forth. Provided however, any obligation of Landlord hereunder shall be limited to the basic building and interior work originally installed by Landlord. Landlord shall commence such repairs or restoration with reasonable diligence after notice thereof and after a reasonable period of time for Landlord to adjust Landlord's insurance claims, and shall prosecute same in an expeditious manner.

**23. EXPIRATION OF LEASE.** AND, IN THAT EVENT the Tenant shall elect and be suffered to remain in possession of the said premises at the expiration of the term hereby created, said Tenant shall, by virtue of this agreement, become a Tenant by the month; and said monthly tenancy shall be subject to all the conditions and covenants of said lease as though the same had been a monthly, instead of a tenancy as provided herein, and shall give to the Landlord at least thirty (30) days' notice of any intention to remove from said premises, and shall be entitled to a like notice from Landlord in the event Landlord desires possession of said premises; provided, however, that said Tenant by the month shall not be entitled to any notice in event the said rent is not paid in advance without demand, the usual thirty (30) days' written notice being hereby expressly waived.

**24. WAIVER OR BREACH OF COVENANT.** IT IS FURTHER UNDERSTOOD AND AGREED, that the covenants, conditions and agreements contained in the within lease to be performed by the respective parties, are binding on, and may be legally enforced by, the said parties, their heirs, executors, administrators, successors and assigns, respectively, and that no waiver of any breach of any covenant hereof shall be construed to be a waiver of the covenant itself or of any subsequent breach thereof, or of this agreement.

**25. BROKER'S COMMISSION.** The Landlord in appointing ____ N/A ____ as rental agent herein, does so for and in consideration of its services in securing the Tenant hereunder and in negotiation of this agreement, and agrees to pay said Agent a commission of ____ % of all rents paid during the full term of this agreement and any renewal or extension hereof even though the premises hereby demised shall be sold during the term of this lease, or any extension or renewal thereof.

**26. HOLD AGENT HARMLESS.** It is understood and agreed that said Agent shall have no responsibility for the condition of the demised premises or for the performance of the Lease Agreement or any Agreement by the Landlord and Tenant, and both parties agree to protect and save harmless said agent from any and all claims for injury to person or personal property by reason of any accident or happening in, upon or about the demised premises.

**27. TAXES.** Tenant shall pay to Landlord, as additional rent, ~~SEMI ANNUAL 900 00~~ the real estate taxes payable by Landlord over and above those payable for the tax period ending ____ A tax bill shall be sufficient evidence of the amount of taxes so imposed, and shall include any increases, whether it be an increase in the rate, or a new tax and/or reassessment of the property or for any other reason. Such amount shall be paid within ten (10) days after it shall have been demanded by Landlord, and it shall be collectable as part of the rental. In the event the tax bill includes the adjacent facility, then the tax shall be prorated, with Tenant being responsible for his prorata share of such bill. Landlord shall compute same and forward along to Tenant with a copy of the total tax bill.

**28. SECURITY DEPOSIT.** The sum of _Waived_ ____ shall be paid by Tenant at time of execution of this lease as a security deposit.

**29. RENEWAL OPTION.** Tenant shall have the right to extend this lease for an additional period of ____ years ____ at the end of the demised term, by giving written notice at least ____ 30 days ____ in advance of the end of the original lease term, of Tenant's intention to so renew, which shall be under the same terms and conditions as set forth in the original lease agreement; provided however, rental hereunder shall be increased in accordance with ~~... ...~~

**30. LANDLORD'S RIGHT TO CURE TENANT'S DEFAULTS.** Should the Tenant default in performance of any of the terms, covenants or agreements herein provided including but without limitation to payment of real estate taxes, insurance premiums, utilities charges, failure to discharge forthwith a mechanics' lien filed by contractors of Tenant, repairs to the premises or in any other respect whatsoever, or should Landlord incur any charge, expense or attorney's fees as a result of the breach by Tenant of any of the terms of this lease, Landlord shall have the right to cure any such defaults or incur any such expense and shall charge said expenditures made by it as additional rent, and Tenant agrees to forthwith pay such additional rent to Landlord. Should Tenant fail to pay such sums forthwith after demand therefor, Landlord shall be entitled to all of the remedies herein provided with respect to the collection of such charges as in the case of nonpayment of rent.

**31. CAPTIONS.** The captions appearing in this lease are inserted only as a matter of convenience and in no way define, limit, construe or describe the scope or intent of any paragraph or section of this lease nor in anyway affect this lease.

**32. FINAL AGREEMENT.** THIS LEASE contains the entire and final agreement by and between the parties hereto, and they shall not be bound by any statements, conditions, representations, inducements, or warranties, oral or written, not herein contained.

**33. PROPERTY DATA and ADDRESS OF PARTIES.** The following are attached hereto and made a part hereof:
____ PLANS AND SPECIFICATIONS ____ SITE PLAN ___X___ FLOOR PLAN ____ RECORD PLAT
____ OTHER

All notices required to be given shall be in writing and mailed or delivered to the following addresses:

TO LANDLORD:    The May Partnership
                5300 Peach Place
                Temple Hills, MD 20748

TO TENANT:      ADU
                325 S Street NE
                Washington, DC

IN WITNESS WHEREOF the said parties have hereunto signed their names and affixed their seals.

_____          _____
Witness                            Landlord

_____          _____
Witness                                                    VICE PRES

_____          _____
Witness                            Tenant            VICE PRES



KEY PLAN

1" = 30'-0"



THE MAY PARTNERSHIP
PHOENIX PROGRAM
ADDENDUM TO LEASE THE MAY PARTNERSHIP
THE ART & DRAMA THERAPY INSTITUTE

CPI Increase

Lease: The May Partnership and The Art & Drama Therapy Institute. *See note below:*

| | | |
|---|---|---|
| 1st year | $10,319.00/month | ~ 7/1/96 → 7/11/97 |
| 2nd year | 10,628.00/month | |
| 3rd year | 10,947.00/month | |
| 4th year | 11,275.00/month | |
| 5th year | 11,613.00/month | |
| 6th year | 11,961.00/month | |
| 7th year | 12,320.00/month | etc |

*Fixed price increase of 3% per year with the provision that if the CPI increase over 3% per year, ADTI will pay only 50% of the increase over 3%.*

# EXHIBIT B

## COMMERCIAL LEASE AGREEMENT

**THIS AGREEMENT**, made and executed this _____ day of _____ 19___ by and between _____ hereinafter called the Landlord, and _____ hereinafter called the Tenant.

**WITNESSETH**, that Landlord has leased to, and does hereby, lease unto Tenant the premises known as _____ for the term of _____ (refer to term in addendum) commencing on the _____ day of _____ and fully ending at Midnight on the _____ day of _____ at and for the total rental of $_____ payable in monthly installments of $_____ the first installment payable on the _____ and the remaining installments payable in advance on the _____ day of each ensuing month beginning _____

**TENANT** takes and holds the said premises as Tenant for the term and subject to the conditions as herein provided, at the rent payable as aforesaid, and the said Tenant will, without previous demand, pay the rent specified at the time, place and in the manner herein provided.

**1. POSSESSION.** Tenant will, and does hereby, take and hold said premises as a Tenant for the term above named; but the same is subject to delivery of possession by any occupant, _____. Should tender of possession of premises be later or earlier than the beginning date named above, then in that event, rent payable hereunder shall be adjusted to the date of occupancy, provided however, that in the event possession is not delivered within sixty (60) days of commencement date as called for herein, then in such event Tenant shall have the right to cancel this agreement by giving Landlord written notice thereof, and this agreement shall be considered null and void.

**2. RENT PAYMENTS.** Tenant will pay said rent in advance, without demand or deduction, on the _____ day of each month at _____ or such other place as Landlord may designate in writing. _____ (refer to rent schedule in addendum).

**3. UTILITY CHARGES.** Tenant will pay all utility charges including, without limitation, water, sewer charges, oil, telephone, gas, and electric bills, if any, and other charges provided for herein as the same become due.

**4. USE OF PREMISES.** Tenant will use said premises actively and continuously for the full term hereof for _____, AND FOR NO OTHER purpose whatsoever.

**5. DISORDERLY OR UNLAWFUL USE.** Tenant will not use, nor permit said premises or any part thereof to be used, for any disorderly or unlawful purpose.

**6. TRANSFER, ASSIGN OR SUBLET.** Tenant will not transfer or assign this lease, nor let nor sublet the whole or any part of said premises without the prior written consent of the Landlord, which consent will not be unreasonably withheld.

**7. CARE OF PREMISES AND SURRENDER.** Tenant will keep said premises in good order and condition, and surrender same at the expiration of the term herein in the same order in which premises was received, usual wear and tear and damage by fire, storm and public enemies only excepted. Upon surrender of the premises, Tenant shall have removed all rubbish, advertisements and signs from interior, exterior and show windows thereof, and on failure to do so authorizes Landlord to forthwith remove the same at Tenant's expense.

**8. SIDEWALK MAINTENANCE.** Tenant will keep the sidewalks immediately abutting said premises free from obstructions of all natures, properly swept and snow and ice removed therefrom.

**9. TENANT PERSONAL PROPERTY and LIABILITY INSURANCE.** All Tenant's personal property in said premises shall be and remain at his sole risk, and the Landlord shall not be liable for any damage to, or loss of such personal property arising from any acts of negligence of any other persons, nor from the leaking of the roof, or from the bursting, leaking or overflowing of water, sewer or steam pipes, or from heating or plumbing fixtures, or from the handling of electric wires or fixtures, or from any other cause whatsoever, nor shall the Landlord be liable for any injury to the person or the Tenant or other persons in or about the premises, the Tenant expressly agreeing to save the Landlord harmless in all such cases and to carry Public Liability Insurance in a company and in an amount not less than the following limits: Bodily Injury __ $300,000.00 __ Property damage __ $100,000.00 __

**10. REPAIR OF PREMISES and LANDLORD ACCESS.** Tenant will make, at Tenant's own expense, any and all repairs to the premises hereby leased during the term of the lease except Landlord shall, without expense to Tenant, maintain and make all necessary repairs to the foundations, load bearing walls, roof, gutters, downspouts, water mains, gas and sewage lines, sidewalks, private roadways, parking areas, and loading docks, if any, on or appurtenant to the leased premises unless the said repairs are the results of negligence of Tenant or his agents. Tenant will allow Landlord or his Agent access to said premises at any and all reasonable time for the purpose of inspection, or in the event of fire or other property damage, or for the purpose of making any repairs Landlord considers necessary or desirable, and will permit Landlord's Agent to place a sign on the premises during the last three (3) months of this lease offering the property for sale or lease.

**11. HEAT, HOT WATER, AIR CONDITIONING AND ALTERATIONS.** Tenant will provide heat, hot water and air conditioning, if desired, at Tenant's cost and expense during the term of this agreement or any renewals or extensions thereof, make all repairs and improvements to the interior of said premises as the same become necessary or are required, including air conditioning system, heating plant, pipes, radiators, ducts or plumbing fixtures. Tenant will repair or replace any other damage caused to the demised premises by Tenant negligence, or the negligence of Tenant's servants or employees, or any damage to the premises or the fixtures therein caused by improper use or caused by failing to give them the proper service. Tenant may, at his own expense, either at the commencement of or during the term of this lease, make such alterations in and/or additions to the leased premises including, without prejudice to the generality of the foregoing alterations in the water, gas, and electric wiring systems, as may be necessary to fit the same for Tenant's business, upon first obtaining the written approval of Landlord as to the materials to be used

and the manner of making such alterations and/or additions which approval will not be unreasonably withheld. Tenant may also at Tenant's own expense, install such iters, racks, shelving, fixtures, fittings, mach y and equipment upon or within the leased premises as Tenant may consider necessary to the conduct of Tenant's business. At any time prior to the expiration or earlier termination of this lease, Tenant may remove any or all such alterations, additions or installations in such a manner as will not substantially injure the leased premises. At the termination of this lease, Tenant shall restore the premises, to the same condition as existed prior to the making of such alteration, addition or installation, ordinary wear and tear, damage or destruction by fire, flood, storm, civil commotion or other unavoidable cause excepted. All alterations, additions or installations not so removed by Tenant shall become the property of Landlord without liability on Landlord's part to pay for the same.

12. FIRE and PLATE GLASS INSURANCE. Tenant will not permit or do anything which would increase the rate of fire insurance upon said premises; and should said rate be increased by reason of Tenant's use of said premises, Tenant will pay as additional rent, to Landlord, the difference in the fire insurance premiums over and above those in effect prior to the time Tenant's use caused the rate to be increased, when and as the same become due and payable. In the event Tenant's fire insurance policy is cancelled, or in the event Tenant is notified of impending cancellation, due to an act of commission or omission on the part of the Tenant, Tenant shall be given written notice by Landlord, his rental agent or insurance agent, that said fire insurance policy has been cancelled and Tenant will immediately correct or remedy the cause for said cancellation; and in the event of failure of Tenant to correct or remedy said cause within five (5) days, Landlord shall have the right at his option to declare this lease fully cancelled and void. Tenant will, during the full term of this agreement or any renewal or extension thereof, carry in a standard company, full coverage insurance on all plate glass in said premises and cause same to be replaced if chipped, cracked or broken, said insurance policy or certificate from Tenant's insurance company to be deposited with Landlord or his Agent; and such policy shall provide that it shall not be cancelled for any reason unless and until Landlord or his Agent is given fifteen (15) days' notice in writing by the insurance company.

13. SIGNS. Tenant will not erect nor place any signs upon the windows, doors or outside walls of said premises or make any alterations or additions to the demised premises without the prior written consent of the Landlord, which consent will not be unreasonably withheld.

14. COMPLIANCE WITH GOVERNMENTAL AUTHORITY. Tenant will, at Tenant's cost, promptly comply with and carry out all orders, requirements, or conditions now or hereafter imposed upon Tenant by the Ordinance, Laws and/or Regulations of the Federal Government, Municipality (Incorporated or unincorporated) or County, in which said premises are located, or by any of its various departments whether required of Landlord or otherwise, to be done or performed during the term of this agreement, insofar as they are occasioned by or required in the conduct of the business of Tenant, or in the Tenant's use and occupancy of said premises for the purpose permitted.

15. EMINENT DOMAIN and CONDEMNATION. In the event eminent domain proceedings shall be instituted against the leased premises, Tenant will make no claim for compensation in the proceedings, and agrees that Tenant's lease shall terminate when title to the leased premises is taken by the condemning authority, provided the rental is abated from such date.

If the whole or any part of the leased premises shall be taken by any competent public authority under the power of eminent domain, then the term of this lease shall cease as to the part so taken from the date that possession of that part shall be acquired for any public purpose and the rent shall be paid up to that date. If the whole or any such portion of the leased premises is taken so as to reasonably destroy the usefulness of the premises for the purpose for which the same were leased, then the Tenant shall have the right to terminate this lease within days after possession is taken for such public purpose. In the event, however, that only a portion of the premises is taken and the portion so taken does not reasonably destroy the usefulness of the premises for the purpose for which the same were leased, or if the Tenant shall not elect to terminate this lease if the usefulness of the premises is reasonably destroyed as stated in the preceding sentence, then the rent shall be reduced in proportion to the area of the premises taken in relation to the total area of the premises leased. The taking of a 20% or less of parking spaces shall not be considered as any taking of the "leased premises" referred to in this paragraph. Any dispute resulting from the determination of the fair reduction in rental shall be settled by arbitration under the rules of the American Arbitration Association. All proceeds from any condemnation shall belong to and be the property of the Landlord.

16. LEASE SUBORDINATION. This lease is subject and subordinate to the lien of any mortgage, or deed of trust encumbrance or encumbrances now or at any time hereafter placed upon the said premises, and the Tenant does hereby agree to execute, acknowledge and record any and all instruments to effect such subordination which the Landlord may request or require. Tenant irrevocably appoints Landlord, his successors and assigns, as and for his attorney-in-fact to execute any such instruments for and on his behalf.

17. TENANT OBLIGATIONS. Should Tenant fail to perform any of the duties hereunder, Landlord may cause the same to be performed and paid for. Payment of such sums, or expenses of prosecuting or defending any matter or action, by reason of Tenant default in any wise, shall be deemed additional rent and due from Tenant to Landlord on the first day of the month following billing for said charges incurred.

18. LEGAL PROCEEDINGS. In the event legal proceedings are instituted against Tenant by the Landlord, either for payment of rent or for possession, then Tenant agrees to pay all court costs instant to such proceedings, together with a reasonable attorney's fee and both parties hereby agree to waive the right of trial by jury.

19. NOTICE TO QUIT. If Tenant shall fail to pay said rent in advance as aforesaid, although there should have been no legal or formal demand made, or break or violate any of the within covenants, conditions or agreements, then and in any of said events, this lease and all things herein contained shall, at the option of the Landlord cease and determine and shall operate as a Notice to Quit, the thirty (30) days' written Notice to Quit being hereby expressly waived, and Landlord may proceed to recover possession of said premises under and by virtue of the provisions of the Code of Law for the District of Columbia, State of Maryland, State of Virginia, in whichever one of the three immediately preceding named jurisdictions the demised premises may be located, or by such legal process as may at the time be in operation and force in like cases relating to proceedings between Landlords and Tenants. In the event that the Landlord shall resume possession of the premises, Landlord may release the same, at the best rent that can be obtained, for the remainder of the term, for the account of the Tenant, who shall make good any deficiency. Such rent applied first to payment of Landlord's expenses incurred in recovering possession of said premises and reletting same, second to costs and expenses incurred by Landlord in making necessary repairs or incurring any default on the part of the Tenant in any covenant or condition herein, and lastly to any rent due hereunder.

20. WAIVER OF COVENANT. IF PROCEEDINGS, shall at any time be instituted as aforesaid and compromise of settlement shall be effected either before or after judgement whereby Tenant shall be permitted to retain possession of said premises then such proceedings shall not constitute a waiver of any covenant, condition or agreement contained herein or of any subsequent breach of this agreement.

21. BANKRUPTCY and ASSIGNMENT. IT IS FURTHER UNDERSTOOD AND AGREED, that in the event Tenant is adjudicated a bankrupt or makes an assignment for the benefit of Tenant's creditors, this agreement shall, at the option of Landlord, cease and determine and said premises shall be surrendered to Landlord, who hereby reserves the right, in either of said events, to forthwith re-enter and repossess said premises.

22. FIRE AND CASUALTY DAMAGE. IT IS FURTHER UNDERSTOOD AND AGREED, that if said premises, or any part thereof, shall at any time be destroyed by fire (or other unavoidable casualty) as to be unfit for occupancy or use, then the rents herein reserved, or a fair and just proportion thereof, according to the area of the leased premises which is unusable by Tenant, and the nature and extent of the damage sustained, shall, until the said premises shall have been rebuilt or restored and made fit

not involving the repair or reconstruction of a substantial portion thereof, the Landlord shall promptly restore same to such condition as will permit Tenant to use and occupy said premises for the purpose herein set forth. Provided however, any obligation of Landlord hereunder shall be limited to the basic building and interior work originally installed by Landlord. Landlord shall commence such repairs or restoration with reasonable diligence after notice thereof and after a reasonable period of time for Landlord to adjust Landlord's insurance claim, and shall prosecute same in an expeditious manner.

23. **EXPIRATION OF LEASE.** AND IN THAT EVENT the Tenant shall elect and be suffered to remain in possession of the said premises at the expiration of the term hereby created, said Tenant shall, by virtue of this agreement, become a Tenant by the month, and said monthly tenancy shall be subject to all the conditions and covenants of said lease as though the same had been a monthly; instead of a tenancy as provided herein, and shall give to the Landlord at least thirty (30) days' notice of any intention to remove from said premises, and shall be entitled to a like notice from Landlord in the event Landlord desires possession of said premises; provided, however, that said Tenant by the month shall not be entitled to any notice in event the said rent is not paid in advance without demand, the usual thirty (30) days' written notice being hereby expressly waived.

24. **WAIVER OR BREACH OF COVENANT.** IT IS FURTHER UNDERSTOOD AND AGREED, that the covenants, conditions and agreements contained in the within lease to be performed by the respective parties, are binding on, and may be legally enforced by, the said parties, their heirs, executors, administrators, successors and assigns, respectively, and that no waiver of any breach of any covenant hereof shall be construed to be a waiver of the covenant itself or of any subsequent breach thereof, or of this agreement.

25. **BROKER'S COMMISSION.** The Landlord in appointing _____ N/A _____ as rental agent herein, does so for and in consideration of its services in securing the Tenant hereunder and in negotiation of this agreement, and agrees to pay said Agent a commission of _____ % of all rents paid during the full term of this agreement and any renewal or extension hereof even though the premises hereby demised shall be sold during the term of this lease, or any extension or renewal thereof.

26. [struck through/illegible]

27. **TAXES.** Tenant shall pay to Landlord, as additional rent, annually, [illegible] the real estate taxes payable by Landlord [illegible] ... 60 days ... A tax bill shall be sufficient evidence of the amount of taxes so imposed, [illegible] Such amount shall be paid within [illegible] days after it shall have been demanded by Landlord, and it shall be collectable as part of the rental. [illegible]

28. **SECURITY DEPOSIT.** [illegible] _____ shall be paid by Tenant at time of execution of this lease as a security deposit. [illegible]

29. **RENEWAL OPTION.** Tenant shall have the right to extend this lease for an additional period of _____ years at the end of the demised term, by giving written notice at least _____ days _____ in advance of the end of the original lease term, of Tenant's intention to so renew, which shall be under the same terms and conditions as set forth in the original lease agreement; provided however; rental hereunder shall be increased in accordance with any increase in [illegible]

30. **LANDLORD'S RIGHT TO CURE TENANT'S DEFAULTS.** Should the Tenant default in performance of any of the terms, covenants or agreements herein provided including but without limitation to payment of real estate taxes, insurance premiums, utilities charges, failure to discharge forthwith a mechanics' lien filed by contractors of Tenant, repairs to the premises or in any other respect whatsoever, or should Landlord incur any charge, expense or attorney's fees as a result of the breach by Tenant of any of the terms of this lease, Landlord shall have the right to cure any such defaults or incur any such expense and shall charge said expenditures made by it as additional rent, and Tenant agrees to forthwith pay such additional rent to Landlord. Should Tenant fail to pay such sums forthwith after demand therefor, Landlord shall be entitled to all of the remedies herein provided with respect to the collection of such charges as in the case of nonpayment of rent.

31. **CAPTIONS.** The captions appearing in this lease are inserted only as a matter of convenience and in no way define, limit, construe or describe the scope or intent of any paragraph or section of this lease nor in anyway affect this lease.

32. **FINAL AGREEMENT.** THIS LEASE contains the entire and final agreement by and between the parties hereto, and they shall not be bound by any statements, conditions, representations, inducements, or warranties, oral or written, not herein contained.

33. **PROPERTY DATA and ADDRESS OF PARTIES.** The following are attached hereto and made a part hereof:
_____ PLANS AND SPECIFICATIONS _____ SITE PLAN __x__ FLOOR PLAN __x__ RECORD PLAT
_____ OTHER

All notices required to be given shall be in writing and mailed or delivered to the following addresses:

TO LANDLORD:     The May Partnership
                 5300 Beech Place
                 Temple Hills, MD 20748

TO TENANT:       The Art & Drama Therapy Institute Inc.
                 336 Randolph Place NE
                 Washington, DC 20002

IN WITNESS WHEREOF the said parties have hereunto signed their names and affixed their seals.

The May Partnership
Walter M. Pritchard
Managing General Partner
Landlord

_____
Witness

_____
Witness

                                                VICE - PRES

The Art & Drama Therapy Institute
Margaret Maria Dickinson, President
Sirkku Sky Hiltunen, Vice President
Tenant

ADDENDUM TO LEASE

MAY PARTNERSHIP - ADTI

CPI Increase

Fixed price increase of 3% per year with the provision that if the CPI increase over
3% per year ADTI will pay only 50% of the increase over 3%.

| | | |
|---|---|---|
| 1st year | $6,000 | 12 July 1996 — 11 July 1997 |
| 2nd year | 6,180 | |
| 3rd year | 6,365 | |
| 4th year | 6,556 | |
| 5th year | 6,753 | |
| 6th year | 6,956 | |
| 7th year | 7,164 | |

# EXHIBIT C

May Partnership
21700 Peach Tree Road
Dickerson, Maryland 20842

July 11, 2007

VIA HAND DELIVERY
The Art & Drama Therapy Institute, Inc. and
Beyond Mask, Inc.
336 Randolph Place, N.E.
Washington, D.C. 20002
Attn:  Dr. Sirkku Sky Hiltunen
       Dr. Margaret Maria Dickinson

Re:    Lease Agreement dated July 12, 1996 by and between May Partnership
       and Art & Drama Therapy Institute, Inc. (ADTI) for premises located at
       325 S Street, N.E. and 336 Randolph Place, N.E. Washington, D.C.
       and space occupied by Beyond Mask, Inc.

Dear Drs. Hiltunen and Dickinson:

Please be advised that pursuant to the agreements you have entered into for the
space occupied by ADTI and Beyond Mask, Inc. at 336 Randolph Place, N.E. you are
notified of your rent increases as follows:  for the ADTI space comprising of the Phoenix
space, the Pegasus space and the Additional space the new rent due effective August 1,
2007 is $23,817.29.  Your current rent with increases for the Beyond Mask Inc. space
should be $1,660.32.

Under the terms of the agreements for both spaces, rent was to increase by a
minimum of 3% per year with the provision that if the CPI increase was above 3%, the
rent would increase by 3% per year plus 50% of the CPI over 3%.

Below are the rent increase calculations for ADTI - what has been paid and what
is owed.  You are in default with respect to all of the space for failure to pay those
increases.

| Year | Monthly Rent | 3% Increase | Total Monthly Rent Due |
|------|--------------|-------------|------------------------|
| August 1, 2003 – July 31, 2004 | $20,545.00 | $616.35 | $21,161.35 |
| August 1, 2004 – July 31, 2005 | $21,161.35 | $634.84 | $21,796.19 |
| August 1, 2005 – July 31, 2006 | $21,796.19 | $653.89 | $22,450.08 |

| | | | |
|---|---|---|---|
| August 1, 2006 –<br>July 31, 2007 | $22,450.08 | $673.50 | $23,123.58 |

For the ADTI space, pursuant to the terms of your lease for the period of August 1, 2003 through July 31, 2004, you were to be paying $253,936.20 for a twelve-month period prorated on a monthly basis of $21,161.35. Instead you paid $246,544.68, a shortfall of $7,391.52.

For the period of August 1, 2004 through July 31, 2005, you were to be paying $261,554.28 for a twelve-month period prorated on a monthly basis of $21,796.19. Instead you paid $246,544.68, a shortfall of $15,009.60.

For the period of August 1, 2005 through July 31, 2006, you were to be paying $269,400.96 for a twelve-month period prorated on a monthly basis of $22,450.08. Instead you paid $246,544.68, a shortfall of $22,856.28.

For the period of August 1, 2006 through July 31, 2007, you were to be paying $277,482.96 for a twelve-month period prorated on a monthly basis of $23,123.58. Instead you paid $246,544.68, a shortfall of $30,938.28.

For the ADTI space you are in arrears a total of $76,195.68.

Below are the rent increase calculations for Beyond Mask, Inc. - what has been paid and what is owed. You are in default with respect to the Beyond Mask space for failure to pay those increases.

| Year | Monthly Rent | 3% Increase | Total Monthly<br>Rent Due |
|---|---|---|---|
| January 1, 2001 –<br>December 31, 2001 | $1,350.00 | $40.50 | $1,390.50 |
| January 1, 2002 –<br>December 31, 2002 | $1,390.50 | $41.71 | $1,432.21 |
| January 1, 2003 –<br>December 31, 2003 | $1,432.21 | $42.97 | $1,475.18 |
| January 1, 2004 –<br>December 31, 2004 | $1,475.08 | $44.25 | $1,519.43 |
| January 1, 2005 –<br>December 31, 2005 | $1,519.43 | $45.58 | $1,565.01 |
| January 1, 2006 –<br>December 31, 2006 | $1,565.01 | $46.95 | $1,611.96 |

January 1, 2007 –
July 31, 2007        $1,611.96
                                        $48.36              $1,660.32

For the Beyond Mask, Inc. space, pursuant to the terms of your lease for the period of January 1, 2001 through December 31, 2001, you were to be paying $16,686.00 for a twelve-month period prorated on a monthly basis of $1,390.50. Instead you paid $16,200.00, a shortfall of $486.00.

For the period of January 1, 2002 through December 31, 2002, you were to be paying $17,186.52 for a twelve-month period prorated on a monthly basis of $1,432.21. Instead you paid $16,200.00, a shortfall of $986.52.

For the period of January 1, 2003 through December 31, 2003, you were to be paying $17,702.16 for a twelve-month period prorated on a monthly basis of $1,475.18. Instead you paid $16,200.00, a shortfall of $1,502.16.

For the period of January 1, 2004 through December 31, 2004, you were to be paying $18,233.16 for a twelve-month period prorated on a monthly basis of $1,519.43. Instead you paid $16,200.00, a shortfall of $2,033.16.

For the period of January 1, 2005 through December 31, 2005, you were to be paying $18,780.12 for a twelve-month period prorated on a monthly basis of $1,565.01. Instead you paid $16,200.00, a shortfall of $2,580.12.

For the period of January 1, 2006 through December 31, 2006, you were to be paying $19,343.52 for a twelve-month period prorated on a monthly basis of $1,611.96. Instead you paid $16,200.00, a shortfall of $3,143.52.

For the period of January 1, 2007 through July 31, 2007, you were to be paying $11,622.24 for a seven-month period prorated on a monthly basis of $1,660.32. Instead you paid $9,450.00, a shortfall of $2,172.24.

For the Beyond Mask, Inc. space, you are in arrears a total of $12,903.72.

Unless we receive a certified check in the amount of $76,195.68 for the ADTI space and a certified check in the amount of $12,903.72 for the Beyond Mask space by August 13, 2007, the Landlord reserves the right to terminate both leases. Please make your checks payable to "The May Partnership" and send the certified checks to The May Partnership, 21700 Peach Tree Road, Dickerson, Maryland 20842 for delivery no later than August 13, 2007. You will also be liable for all attorney's fees. In addition, if the sums are not received by August 13, 2007, Landlord may deem this Lease terminated and you shall remain liable as set forth in Paragraphs 19 and 30 of the Lease for all sums due under the lease and all attorney's fees.

Please do not make any improvements that are affixed to the Premises as your purported exercise of an option to renew is not valid.

Thank you.

The May Partnership

Walter M. Prichard
Managing Partner

Cc:    The Art & Drama Therapy Institute, Inc.
325 S Street, N.E.
Washington, D.C. 20002
Attn:    Dr. Sirkku Sky Hiltunen
Dr. Margaret Maria Dickinson
Steve Bogorad, Esq.
Langdon Hample
Richard Luchs, Esq.

# EXHIBIT D



**Dr. Sirkku Sky Hiltunen,**
*President*
**Dr. M. "Muggy Do" Dickinson,**
*Vice President*

December 6, 1999

Mr. Walter Prichard, Managing Partner
May Partnership
5300 Beech Place
Temple Hills, MD 20748

Dear Mr. Prichard:

This letter will document our understanding concerning the use of the premises at 336
Randolph Place as discussed in our meeting on November 22, 1999.

1.  We agreed that Beyond Mask, Inc. (BMI) will leave the space it currently occupies on
    the first floor of the building by December 31, 1999.

2.  We also agreed that BMI would move to the newly renovated space on the second
    floor by January 1, 2000. We agreed that BMI would pay an annual rent of $16,200.
    In consideration, BMI gave you a one-month's deposit of $1,350.00, check no. 3599
    dated 11/22/99. We agreed that a lease contract from you would be coming soon.

3.  We obtained your permission to use the month of December to install the telephones
    and the alarm system, computer cables and do other work necessary to prepare the
    premises for BMI's move in January 2000. You acknowledged also that some
    furniture have already been moved.

Please sign below if the above information meets your agreement and understanding.

Sincerely,

_____                    _____
Dr. Sirkku Sky Hiltunen                     Walter Prichard, Managing Partner
President                                   May Partnership

---

**1715 15th St.,NW, Suite #7 • Washington, DC 20009 • Phone: 202/387-5814 • Fax: 202/387-5823**

# EXHIBIT E

ASSIGNMENT

FOR VALUE RECEIVED, The May Partnership ("Assignor") hereby assigns to 336 Randolph LLC, a District of Columbia limited liability company ("Assignee") all right, title and interest to any unpaid rents, interest thereon and attorney's fees that may be recoverable from ADTI and Beyond Mask, Inc. relating to their occupation of the space at 336 Randolph Place, N.E. and 327 S Street, N.E., Washington, D.C. except that all amounts due The May Partnership for real estate taxes and the special New York Street Assessment for the second half of 2007 shall be first paid to The May Partnership out of the first monies collected, for the period prior to the closing date between Assignor and Assignee under that certain Purchase Agreement dated April 6, 2007, as amended.

Assignor and Assignee make no representations as to the collectibility of such unpaid rents and shall not be liable for any sums that are uncollected.

This Assignment may be executed in one or more counterparts, each of which when so executed and delivered shall be deemed an original, all of which taken together shall constitute one and the same original.

In witness whereof, the Assignor and Assignee hereby set their hands and seals this _13th_ day of September 2007.

The May Partnership

By: _____
Its:

Accepted in accordance with its terms by:

336 Randolph LLC

By: _____
    Eric T. May, Managing Member

ASSIGNMENT

FOR VALUE RECEIVED, The May Partnership ("Assignor") hereby assigns to 336 Randolph LLC, a District of Columbia limited liability company ("Assignee") all right, title and interest to any unpaid rents, interest thereon and attorney's fees that may be recoverable from ADTI and Beyond Mask, Inc. relating to their occupation of the space at 336 Randolph Place, N.E. and 327 S Street, N.E., Washington, D.C. except that all amounts due The May Partnership for real estate taxes and the special New York Street Assessment for the second half of 2007 shall be first paid to The May Partnership out of the first monies collected, for the period prior to the closing date between Assignor and Assignee under that certain Purchase Agreement dated April 6, 2007, as amended.

Assignor and Assignee make no representations as to the collectibility of such unpaid rents and shall not be liable for any sums that are uncollected.

This Assignment may be executed in one or more counterparts, each of which when so executed and delivered shall be deemed an original, all of which taken together shall constitute one and the same original.

In witness whereof, the Assignor and Assignee hereby set their hands and seals this 22th day of September 2007.

The May Partnership

By: WALTER A. PRICHARY
Its: MANAGING PARTNER

Accepted in accordance with its terms by:

336 Randolph LLC

By: _____
       Eric T. May, Managing Member

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE ART & DRAMA THERAPY
INSTITUTE, INC., *et al.*,

      *Plaintiffs*,

v.

THE MAY PARTNERSHIP, *et al.*,

      *Defendants*.

Civil Action No. 07-1456 (PLF)

## ORDER

      Upon consideration of Movant 336 Randolph LLC's Consent Motion to Be Joined As a Defendant and Counterclaim Plaintiff under Fed. R. Civ. P. 25 (c), it is this _____ day of _____, 2007 hereby:

      ORDERED that Movant's motion will be and hereby is GRANTED; and it is further;

      ORDERED that Movant's Answer and Counterclaim attached to the Motion is hereby accepted for filing.

_____
Paul L. Friedman
United States District Judge