IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE ART & DRAMA THERAPY INSTITUTE, INC., *et al.*, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 07-1456 (PLF) |
| THE MAY PARTNERSHIP, *et al.*, | |
| *Defendants*. | |

## MOTION OF DEFENDANT/COUNTERCLAIM-PLAINTIFF 336 RANDOLPH LLC FOR PARTIAL SUMMARY JUDGMENT

Defendant/Counterclaim-Plaintiff 336 Randolph LLC ("Randolph"), by and through its attorneys, and pursuant to Federal Rule of Civil Procedure 56 and LCvR 56.1, hereby moves for partial summary judgment. Specifically, Randolph moves for summary judgment in its favor and against Plaintiffs with respect to Count V of Plaintiffs' Complaint, which count seeks a declaration that: ADTI has "properly renewed" its respective leases for a period beginning in 2010 and ending in July 2017; BMI is entitled to renew its leasehold beyond 2010 for an additional seven year term; and that upon each renewal, each Plaintiff "has a right to exercise an additional renewal option by providing at least ninety (90) days notice" to the landlord.

Randolph is entitled to summary judgment on Count V because there are no material issues in dispute and, as a matter of law, Plaintiffs are not entitled to any further extensions of their lease terms. Accordingly, Randolph is entitled to summary judgment as a matter of law.

Randolph respectfully refers this Court to, and hereby incorporates by reference, the attached Memorandum In Support of Defendant 336 Randolph LLC's Motion for Partial Summary Judgment.

WHEREFORE, Randolph respectfully requests that this Court enter summary judgment in its favor and against Plaintiffs on Count V of Plaintiffs' Complaint.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  October 17, 2007

_____/S/_____

Richard W. Luchs, #243931
William C. Casano, #352492
Joshua M. Greenberg, #489323
1620 L Street, N.W., Suite 900
Washington, DC  20036-5605
Telephone:  (202) 452-1400
E-mail:  rwl@gdllaw.com
E-mail:  wcc@gdllaw.com
E-mail:  jmg@gdllaw.com

*Attorneys for Defendant/Counterclaim-Plaintiff
  336 Randolph LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE ART & DRAMA THERAPY
INSTITUTE, INC., *et al.*,

        *Plaintiffs*,

v.

THE MAY PARTNERSHIP, *et al.*,

        *Defendants*.

Civil Action No. 07-1456 (PLF)

### DEFENDANT/COUNTERCLAIM-PLAINTIFF 336 RANDOLPH LLC'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Defendant/Counterclaim-Plaintiff 336 Randolph LLC, by its through its counsel, pursuant to Federal Rule of Civil Procedure 56 and LCvR 56.1, submits the following statement of material facts as to which there is no dispute.

1.      On or about July 12, 1996, ADTI and The May Partnership ("May"), the predecessor in interest to 336 Randolph LLC ("Randolph"), executed two leases -- one for space at 325 S Street, N.E., Washington, DC, and one for space at 336 Randolph Place, N.E., Washington, DC. See Exhibits A and B; See also Exhibit C, Second Affidavit of Eric T. May at para. 3; Complaint at para. 18. Both rental premises are contained in the same building complex previously owned by May and now owned by Randolph. Exhibit C at para. 3. ADTI's S Street space is also known as 327 S Street, N.E. *Id.* at para. 3.

2.      The ADTI leases were for a period of seven years, and each such lease contained a renewal option which read in pertinent part as follows:

> 29. Renewal Option. Tenant shall have the right to extend
> this lease for an additional period of 7 years at the end of
> the demised term, by giving written notice at least 90 days
> in advance of the end of the original lease term, of Tenant's
> intention to so renew, which shall be under the same terms
> and conditions as set forth in the original lease agreement[.]

Exhibits A and B.

3.      On or about December 6, 1999, May and BMI entered into a letter agreement

(Exhibit D) whereby May leased to BMI second floor space at 336 Randolph Place, N.E.

Exhibit C at para. 4; Complaint at para. 21.  No length of term or renewal option was referenced

in the letter, nor was any formal lease executed at that time.  Exhibit D; Exhibit C at para. 5.

4.      A commercial lease agreement dated August 20, 1998 (but not fully signed until

after the lease term ended) was signed by BMI and May.  Exhibit E; Exhibit C at para. 5.

5.      The BMI lease document, which purported to commence on September 1, 1998,

and last for a period of five years, albeit apparently for first floor space at 336 Randolph Place,

also had a renewal option which read as follows:

> 24. Renewal Option. Tenant shall have the right to extend
> this lease for an additional period of seven (7) years at the
> end of the demised term, by giving written notice at least
> three (3) months in advance of the end of the original lease
> term, of Tenant's intention to so renew.

Exhibit E.

6.      By letter of March 4, 2003, ADTI gave notice of their intention to exercise the

renewal option and ADTI stated that BMI was renewing under the same terms and conditions as

the ADTI lease.  Exhibit F; Exhibit C at para. 6; Complaint at para. 24.  The March 4, 2003 letter

was signed by ADTI and May, but not by BMI.  Exhibit F.

7.      ADTI and BMI continued to occupy their respective premises beyond 2003, and

continue to do so today.  Exhibit C at para. 10.

8.      In 2007, ADTI attempted to further extend the term of its leases.  In this regard, ADTI sent a letter to May dated June 6, 2007 (Exhibit G) in which it sought to extend its lease term to July 2017, "subject to ADTI's right to further renew  the 2010 Lease Agreement pursuant to paragraph 29."  Exhibit G; Exhibit C at para. 7; Complaint at para. 26.

9.      May did not endorse ADTI's June 6, 2007 letter, and May rejected ADTI's attempt to exercise what ADTI characterized as a further renewal option.  Exhibit H, Letter of July 11, 2007 at p. 4; Exhibit C at para. 8; Complaint at para. 27.

10.      To date, neither May nor Randolph has received any notice from BMI of an intent to extend the BMI lease.  Exhibit C at para. 9.


                                    Respectfully submitted,

                                    GREENSTEIN DELORME & LUCHS, P.C.


                                    _____/S/_____
Dated:  October 17, 2007            Richard W. Luchs, #243931
                                    William C. Casano, #352492
                                    Joshua M. Greenberg, #489323
                                    1620 L Street, N.W., Suite 900
                                    Washington, DC  20036-5605
                                    Telephone:  (202) 452-1400
                                    E-mail:  rwl@gdllaw.com
                                    E-mail:  wcc@gdllaw.com
                                    E-mail:  jmg@gdllaw.com
                                    *Attorneys for Defendant/Counterclaim-Plaintiff*
                                      *336 Randolph LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE ART & DRAMA THERAPY
INSTITUTE, INC., *et al.*,

       *Plaintiffs*,

v.

THE MAY PARTNERSHIP, *et al.*,

       *Defendants*.

Civil Action No. 07-1456 (PLF)

## MEMORANDUM IN SUPPORT OF DEFENDANT/COUNTERCLAIM-PLAINTIFF 336 RANDOLPH LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant/Counterclaim Plaintiff 336 Randolph LLC ("Randolph"), by its through its counsel, hereby submits the following memorandum in support of its motion for partial summary judgment. In its motion, Randolph asks this Court to grant it summary judgment on Count V of the Complaint because there are no material issues in dispute and Randolph is entitled to summary judgment on Count V as a matter of law.

## I. FACTS

In Count V, Plaintiffs The Art & Drama Therapy Institute, Inc. ("ADTI") and Beyond Mask, Inc. ("BMI") seek a declaratory judgment that: ADTI has "properly renewed" its respective leases for a period beginning in 2010 and ending in July 2017; BMI is entitled to renew its leasehold beyond 2010 for an additional seven year term; and that upon each renewal each Plaintiff "has a right to exercise an additional Renewal Option by providing at least ninety

(90) days notice" to the landlord.  Complaint at pp. 15-16.  In essence, Plaintiffs seek a

declaration that they have leases which may be renewed in perpetuity.

**A.    ADTI LEASES**

On or about July 12, 1996,  ADTI and The May Partnership ("May"), the predecessor in

interest to Randolph, executed two leases -- one for space at 325 S Street, N.E., Washington, DC,

and one for space at 336 Randolph Place, N.E., Washington, DC.[1]  See Exhibits A and B.  The

ADTI leases were for a period of seven years and each such lease contained a renewal option

which read, in pertinent part, as follows:

> 29.  Renewal Option.  Tenant shall have the right to extend this
> lease for an additional period of 7 years at the end of the demised
> term, by giving written notice at least 90 days in advance of the
> end of the original lease term, of Tenant's intention to so renew,
> which shall be under the same terms and conditions as set forth in
> the original lease agreement[.]

**B.    BMI LEASEHOLD**

On or about December 6, 1999, May and BMI entered into a letter agreement (Exhibit D)

whereby May leased to BMI second floor space at 336 Randolph Place, N.E.  No length of term

or renewal option was referenced in the letter, nor was any formal lease executed at that time.  A

Commercial Lease Agreement dated August 20, 1998 (but not fully signed until after the lease

term ended) was signed by BMI and May.[2]  That document (Exhibit E) purported to commence

---

[1]    Both rental premises are contained in the same building complex previously owned by May and now owned by
Randolph.  Exhibit C, Second Affidavit of Eric T. May at para. 4, n.1.  ADTI's S Street space is also known as 327
S Street, N.E.  See _Id._ at para. 3.

[2]    It is unnecessary, for purposes of this motion, for movant to take a position on the legal effect of Exhibit D
because such does not change the legal analysis.  It must be noted, however, that in its most recent motion, Plaintiffs
maintain that no written lease was ever signed with respect to the BMI premises, and that its tenancy is exclusively
governed by the December 6, 1999 letter.  See Memorandum of Points and Authorities In Support of Plaintiffs'
Partial Motion to Dismiss The Counterclaim of Defendant The May Partnership at pp. 2, 3, 6.  Under that reasoning,
BMI's present occupancy would be strictly on a month-to-month basis since the 1999 letter mentions nothing about
a right to renewal, let alone a right to multiple renewals, thereby further mandating partial summary judgment in
favor of Randolph.

on September 1, 1998, and last for a period of five years, albeit apparently for space on the first

floor of 336 Randolph Place. That document also had a renewal provision which read as

follows:

> 24. Renewal Option. Tenant shall have the right to extend this
> lease for an additional period of seven (7) years at the end of the
> demised term, by giving written notice at least three (3) months in
> advance of the end of the original lease term, of Tenant's intention
> to so renew.

## C.    EXERCISE OF RENEWAL

By letter of March 4, 2003 (Exhibit F), ADTI, and purportedly BMI, gave notice of their

intention to renew. That letter reads in pertinent part as follows:

> References [sic] here by made of the commercial lease
> agreement dated July 12, 1996 by and between The May
> Partnership, hereinafter called landlord, and The Art and Drama
> Therapy Institute, Inc., hereinafter called tenant.
>
> Tenant here by agrees to renew lease in accordance with
> paragraph 29 of before mentioned lease agreement.
>
> Additionally, the space occupied by Beyond Mask, Inc. will
> be renewed under the same terms and conditions as the before
> mentioned lease agreement.

The March 4, 2003 letter was signed by ADTI and May, but not BMI. Exhibit F. In any event,

ADTI and BMI continued to occupy their respective premises beyond 2003 and continue to do

so today. Their tenancies end, at the latest (see n.2), in 2010.

## D.    CLAIM OF AN ADDITIONAL RENEWAL PERIOD

In 2007, ADTI attempted to further extend the term of its leases. In this regard, ADTI

sent to May a letter dated June 6, 2007 (Exhibit G) which provided, in pertinent part, as follows:

> I am writing on behalf of The Art and Drama Therapy
> Institute, Inc. ("ADTI") to advise you that ADTI is exercising its
> right, pursuant to Paragraph 29 of its July 12, 2003 Lease
> (hereinafter defined) with The May Partnership for premises

known as 336 Randolph Place, N.E. and 327 S Street, N.E., to renew the lease for an additional seven (7) years.

As you know, ADTI and The May Partnership were parties to two Commercial Lease Agreements dated July 12, 1996 ("July 12, 1996 Lease Agreements"), the term of which expired in July 2003. Paragraph 29 of the July 12, 1996 Lease Agreements provided ADTI with a right to renew the July 12, 1996 Lease Agreements for an additional seven (7) year term, on the same terms as the July 12, 1996 Lease Agreements, including the "Renewal Option" set forth in Paragraph 29. By letter agreement dated March 4, 2003 ("July 12, 2003 Lease"), ADTI exercised its right to renew the July 12, 1996 Lease Agreements for an additional seven (7) year term on the same terms and conditions as set forth in the July 12, 1996 Lease Agreements, including the "Renewal Option" set forth in Paragraph 29. The term of the July 12, 2003 Lease expires in July 2010, subject to ADTI's right to renew under Paragraph 29.

This letter constitutes ADTI's written notice to The May Partnership, pursuant to Paragraph 29 of the July 12, 2003 Lease , of ADTI's intention to renew the July 12, 2003 Lease on the same terms and conditions as the July 12, 2003 Lease. The renewed lease ("2010 Lease Agreement"), which shall be on the same terms and conditions as the July 12, 2003 Lease, shall commence immediately following the expiration of the July 12, 2003 Lease and end in July 2017, subject to ADTI's right to further renew the 2010 Lease Agreement pursuant to Paragraph 29.

I request that you execute a copy of this letter on behalf of The May Partnership in the space provided below and return the copy of this letter as executed by The May Partnership to me to acknowledge ADTI's exercise of its option to renew the July 12, 2003 Lease.

May did not endorse ADTI's June 6, 2007 letter, and May rejected ADTI's attempt to exercise

what ADTI characterized as a further renewal option. See Exhibit H, Letter of July 11, 2007 at

p. 4. There is no material dispute as to any of those facts.

The ADTI June 6, 2007 letter, taken together with the Complaint, define Plaintiffs'

position on this issue. In short, Plaintiffs contend that if a commercial lease provides a renewal

option "on the same terms and conditions" as the original lease, such therefore creates a lease

with perpetual renewals -- *i.e.*, the renewal option carries forward into the new lease, thus allowing the tenant to renew the lease for seven years terms *ad infinitum*. See Exhibit F, Complaint at paras. 19, 24, 26, 50, 52, and 53. Plaintiffs' position is directly and completely contrary to the long standing law of this jurisdiction. Accordingly, Randolph is entitled to summary judgment as a matter of law on Count V.

## II.   ARGUMENT

### A.   SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *White v. Fraternal Order of Police, 285 U.S. App. D.C. 273, 909 F.2d 512 (D.C. Cir. 1990).* A party opposing summary judgment is required to set forth by affidavit or in similar sworn fashion specific facts showing there is a genuine issue for trial. *Coleman v. Potomac Electric Power Co., 442 F. Supp. 2d 209 (D.D.C. 2006).* Conclusory allegations by themselves are insufficient to establish a genuine issue of material fact to preclude summary judgment. *Id., Pinkney v. Robinson, 913 F. Supp. 25 (D.D.C. 1996).* As applied to the instant case, the grant of summary judgment is mandated.

### B.   AS A MATTER OF LAW THE RENEWAL OPTION PROVISION IN THE LEASES DOES NOT CREATE A PERPETUAL LEASE

Plaintiffs have made it clear that, in their opinion, because the renewal option provision in the ADTI's leases stated that the renewal "shall be under the same terms and conditions as set forth in the original lease agreement," such language creates a perpetual option -- *i.e.*, the renewal term carries with it a further renewal option. Thus, Plaintiffs would have the option to

renew *ad infinitum*.  Plaintiffs' position on this issue is completely contrary to long standing

precedent in this jurisdiction.

Specifically, in the case of *Winslow v. Baltimore and Ohio Railroad Company, 188 U.S.*

*646 (1903)*, the United States Supreme Court considered the appeal of a case which emanated

from the Supreme Court of the District of Columbia and the Court of Appeals of the District of

Columbia.  The case involved construing a commercial lease.  The five year lease contained a

covenant to renew at its expiration with covenants, terms and conditions similar to those

contained in the original lease.  The tenant maintained that upon renewal, the new lease term

carried with it another renewal option since the renewal was to be under the same covenants,

terms and conditions of the original lease.  In rejecting this argument, the Supreme Court stated

as follows:

> It is quite plain that a lease containing a covenant to renew at
> its expiration with similar covenants, terms and conditions
> contained in the original lease is fully carried out by <u>one</u> renewal
> without the insertion of another covenant to renew.  Otherwise a
> perpetuity is provided for.
>
> From the ordinary covenants to renew, a perpetuity will not be
> regarded as created.  There must be some peculiar and plain
> language before it will be assumed that the parties intended to
> create it.

*Id.* at 654.  (Citations omitted) (Emphasis added).  Not surprisingly, this same conclusion of law

has been reached by a multitude of jurisdictions.  *See, e.g., Bancard Services, Inc. v. E*Trade*

*Access, Inc.*, 292 F. Supp. 2d 1235, 1250 (D. Or. 2002) (Perpetual renewal is not created absent

clear and unequivocal language expressly creating a perpetuity); *McLean v. United States, 316 F.*

*Supp. 827 (E.D. Va. 1970)* (Intent to create perpetual lease must appear in clear and unequivocal

language so plain as to leave no doubt it was intention and purpose of the parties to do so, and it

should not be left to inference); *Chessmasters, Inc. v. Chamoun, 948 S. 2d 985, 986 (Fla. App.*

*2007)* (Where renewal option in commercial lease did not contain clear and unambiguous language intending to create a lease in perpetuity, option is satisfied by one renewal); *Carder, Inc. v. Cash*, 97 P.3d 174 (Colo. App. 2003) (Lease renewal provision which referenced "successive periods of 5 years" did not create a perpetual renewal option -- there must be some peculiar and plain language used in lease before court will assume that parties intended to create a perpetuity); *Womack v. Hyche*, 503 S.2d 832, 835 (Ala. 1987) (Rule of construction is well settled that a covenant for renewal or for an additional term should not be held to create a right to repeated grants in perpetuity, unless by plain and unambiguous terms the parties have expressed such intention); *Drink, Inc. v. Martinez*, 89 N.M. 662, 556 P.2d 348, 352 (N.M. 1976) (Even the provision for successive renewals in a lease, without more, does not provide sufficient manifestation of intent to create a perpetuity); *Lonergan v. Connecticut Food Store, Inc.*, 168 Conn. 122, 357 A.2d 910, 913 (Conn. 1975) (A perpetuity will not be regarded as created from an ordinary covenant to renew -- there must be some peculiar and plain language to create the perpetuity); *Rutland Amusement Company, Inc. v. Seward*, 127 Vt. 324, 248 A.2d 731, 734 (Vt. 1968) (Lessor's covenant to renew does not carry forward nor bind him in the renewed term without an explicit direction or a new provision to this effect in the renewal lease itself); *Brower v. Glen Wild Lake Company*, 86 N.J. Super. 341, 206 A.2d 899, 901-02 (N.J. App. 1965) (Contention that words "upon same terms and conditions" imply that the renewal lease will in turn contain a right of renewal *ad infinitum* is contrary to the established rule); *Levy v. Amelias*, 207 Misc. 880, 141 N.Y.S. 2d 101, 104 (N.Y. Sup. Ct. 1955) (Unless the lease could be renewed in perpetuity, the tenant only has right to one renewal); *Lawson v. The West Virginia Newspaper Publishing Co.*, 126 W.Va. 470, 29 S.E. 2d 3, 4-5 (W.Va. 1944) (Covenant to renew "upon the same terms and conditions" of original lease is fully carried out by one renewal); *Hallock v.*

*Kintzler*, 142 Ohio St. 287, 51 N.E. 2d 905, 906 (Ohio 1943) (Perpetual leases are not favored and general covenants as to right of renewal are therefore usually limited to a single renewal unless an intention to create a perpetuity is clearly shown); *Penilla v. Gerstenkorn*, 86 Cal. App. 668, 261, P. 488, 489 (Cal. App. 1927) (A general covenant to extend or renew implies an additional term equal to the first, and upon the same terms, including that of rent, except the covenant to renew; to include that would make the lease perpetual); *Pickrell v. Buckler*, 293 S.W. 667, 668 (Tex. App. 1927) (Covenant to renew upon same terms and conditions is satisfied by one renewal); *Pettit v. Tourison*, 283 Pa. 529, 129 A. 587, 588 (Pa. 1925) (A lease containing a covenant to renew at expiration upon the same terms and conditions is fully carried out by one renewal without the insertion of another covenant to renew); *Drake v. Board of Education of St. Louis*, 208 Mo. 540, 106 S.W. 650, 655 (Mo. 1907) (Court will not infer an agreement for a second renewal from a general provision for a renewal of lease with similar covenants).

As applied to the instant case, there is no question that Randolph is entitled to partial summary judgment. The renewal option provisions contained in the leases did not specifically reference or create multiple options or a renewal option in perpetuity. The general language contained in the option provisions does not, as a matter of law, create a perpetual renewal option. Accordingly, Defendant 336 Randolph LLC is entitled, as a matter of law, to have partial summary judgment entered in its favor with respect to Count V of the Plaintiffs' Complaint.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

_____/S/_____

Dated:  October 17, 2007

Richard W. Luchs, #243931
William C. Casano, #352492
Joshua M. Greenberg, #489323
1620 L Street, N.W., Suite 900
Washington, DC  20036-5605
Telephone:  (202) 452-1400
E-mail:  rwl@gdllaw.com
E-mail:  wcc@gdllaw.com
E-mail:  jmg@gdllaw.com
*Attorneys for Movant 336 Randolph LLC*

# EXHIBIT A

# COMMERCIAL LEASE AGREEMENT

THIS AGREEMENT, made and executed this _12_ day of _JULY_, 19_96_, by and between
The _____ , hereinafter called the Landlord, and
The _____ (The ADT), hereinafter called the Tenant.

WITNESSETH, that Landlord has agreed to, and does hereby, lease unto Tenant the premises known as _325 S. Street NE_
_____ the attached drawing as expanded office space
for the term of _____ years _____ commencing on the _12_ day of _JULY_
and fully ending at Midnight on the ___ day of _JULY 2003_ at and for the total rental of _$504,000_
payable in monthly installments of _$6,000_, the first installment payable on _12 JUN 1996_
and the remaining installments payable in advance on the _15th_ day of each ensuing month beginning _AUG 1, 1996_
to _____.

TENANT takes and holds the said premises as Tenant for the term and subject to the conditions as herein provided, at the rent payable as aforesaid, and the said Tenant will, without previous demand, pay the rent specified at the time, place and in the manner herein provided.

**1. POSSESSION.** Tenant will, and does hereby, take and hold said premises as a Tenant for the term above named; but the same is subject to delivery of possession by any occupant, and in the case of newly constructed or repaired premises, is subject to completion of construction or repairs. Should tender of possession of premises be later or earlier than the beginning date named above, then in that event, rent payable hereunder shall be adjusted to the date of occupancy, provided however, that in the event possession is not delivered within sixty (60) days of commencement date as called for herein, then in such event Tenant shall have the right to cancel this agreement by giving Landlord written notice thereof, and this agreement shall be considered null and void.

**2. RENT PAYMENTS.** Tenant will pay said rent in advance, without demand or deduction, on the _1st_ day of each month at _5300 Beech Place, Temple Hills, MD 20748_ or such other place as Landlord may designate in writing. The rent shall, at the end of each lease year, be increased in direct proportion to any increase in the Consumer Price Index (All Items Index), as published by the United States Department of Labor, using the Index during the first month of occupancy as the base month as it relates to the first month of each succeeding year of the lease. See Addendum #1

**3. UTILITY CHARGES.** Tenant will pay all utility charges including, without limitation, water rent, sewer charges, oil, telephone, gas, and electric bills, if any, and other charges provided for herein as the same become due.

**4. USE OF PREMISES.** Tenant will use said premises actively and continuously for the full term hereof for _Therapeutic training of person with or without disabilities, theater performances, art exhibits and other related activities._
AND FOR NO OTHER purpose whatsoever.

**5. DISORDERLY OR UNLAWFUL USE.** Tenant will not use, nor permit said premises or any part thereof to be used, for any disorderly or unlawful purposes.

**6. TRANSFER, ASSIGN OR SUBLET.** Tenant will not transfer or assign this lease, nor let nor sublet the whole or any part of said premises without the prior written consent of the Landlord, which consent will not be unreasonably withheld.

**7. CARE OF PREMISES AND SURRENDER.** Tenant will keep said premises in good order and condition, and surrender same at the expiration of the term herein in the same order in which premises was received, usual wear and tear and damage by fire, storm and public enemies only excepted. Upon surrender of the premises, Tenant shall have removed all rubbish, advertisements and signs from interior, exterior and show windows thereof, and on failure to do so authorizes Landlord to forthwith remove the same at Tenant's expense.

**8. SIDEWALK MAINTENANCE.** Tenant will keep the sidewalks immediately abutting said premises free from obstructions of all nature, properly swept and snow and ice removed therefrom.

**9. TENANT PERSONAL PROPERTY and LIABILITY INSURANCE.** All Tenant's personal property in said premises shall be and remain at his sole risk, and the Landlord shall not be liable for any damage to, or loss of such personal property arising from any acts of negligence of any other persons, nor from the leaking of the roof, or from the bursting, leaking or overflowing of water, sewer or steam pipes, or from heating or plumbing fixtures, or from the handling of electric wires or fixtures, or from any other cause whatsoever, nor shall the Landlord be liable for any injury to the person or the Tenant or other persons in or about the premises, the Tenant expressly agreeing to save the Landlord harmless in all such cases and to carry Public Liability Insurance in a company and in an amount not less than the following limits: Bodily injury _$300,000_ ,
Property damage _$100,000_.

**10. REPAIR OF PREMISES and LANDLORD ACCESS.** Tenant will make, at Tenant's own expense, any and all repairs to the premises hereby leased during the term of the lease except Landlord shall, without expense to Tenant, maintain and make all necessary repairs to the foundations, load bearing walls, roof, gutters, downspouts, water mains, gas and sewage lines, sidewalks, private roadways, parking areas, and loading docks, if any, on or appurtenant to the leased premises unless the said repairs are the results of negligence of Tenant or his agents. Tenant will allow Landlord or his Agent access to said premises at any and all reasonable time for the purpose of inspection, or in the event of fire or other property damage, or for the purpose of making any repairs Landlord considers necessary or desirable, and will permit Landlord's Agent to place a sign on the premises during the last three (3) months of this lease offering the property for sale or lease.

**11. HEAT, HOT WATER, AIR CONDITIONING AND ALTERATIONS.** Tenant will furnish heat, hot water and air conditioning, if desired, at Tenant's cost and expense during the term of this agreement or any renewals or extensions thereof, make all repairs and improvements to the interior of said premises as the same become necessary or are required, including air conditioning system, heating plant, pipes, radiators, ducts or plumbing fixtures. Tenant will repair or replace any other damage caused to the demised premises by Tenant negligence, or the negligence of Tenant's servants or employees, or any damage to the premises or the fixtures therein caused by improper use or caused by failing to give them the proper service. Tenant may, at his own expense, either at the commencement of or during the term of this lease, make such alterations in and/or additions to the leased premises including, without prejudice to the generality of the foregoing alterations in the water, gas, and electric wiring systems, as may be necessary to fit the same for Tenant's business, upon first obtaining the written approval of Landlord as to the materials to be used

the manner of making such alteration and/or addition, which approval will not be unreasonably withheld. Tenant may also, at Tenant's own expense, install, such counters, racks, shelving, fixtures, fittings, machinery and equipment upon or within the leased premises as Tenant may consider necessary to the conduct of Tenant's business. At any time prior to the expiration or earlier termination of this lease, Tenant may remove any or all such alterations, additions or installations in such a manner as will not substantially injure the leased premises. At the termination of this lease, Tenant shall restore the premises, to the same condition as existed prior to the making of such alteration, addition or installation, ordinary wear and tear, damage or destruction by fire, flood, storm, civil commotion, or other unavoidable cause excepted. All alterations, additions or installations not so removed by Tenant shall become the property of Landlord without liability on Tenant's part to pay for the same.

**12. FIRE and PLATE GLASS INSURANCE.** Tenant will not permit or do anything which would increase the rate of fire insurance upon said premises, and should said rate be increased by reason of Tenant's use of said premises, Tenant will pay as additional rent to Landlord, the difference in the fire insurance premiums over and above those in effect prior to the time Tenant's use caused the rate to be increased, when and as the same become due and payable. In the event Tenant's fire insurance policy is cancelled, or in the event Tenant is notified of impending cancellation, due to an act of commission or omission on the part of the Tenant, Tenant shall be given written notice by Landlord, his rental agent or insurance agent, that said fire insurance policy has been cancelled and Tenant will immediately correct or remedy the cause for said cancellation; and in the event of failure of Tenant to correct or remedy said cause within five (5) days, Landlord shall have the right at his option to declare this lease fully cancelled and void. Tenant will, during the full term of this agreement or any renewal or extension thereof, carry in a standard company, full coverage insurance on all plate glass in said premises and cause same to be replaced if chipped, cracked or broken, said insurance policy or certificate from Tenant's insurance company to be deposited with Landlord or his Agent; and such policy shall provide that it shall not be cancelled for any reason unless and until Landlord or his Agent is given fifteen (15) days' notice in writing by the Insurance company.

**13. SIGNS.** Tenant will not erect nor place any signs upon the windows, doors or outside walls of said premises or make any alterations or additions to the demised premises without the prior written consent of the Landlord, which consent will not be unreasonably withheld.

**14. COMPLIANCE WITH GOVERNMENTAL AUTHORITY.** Tenant will, at Tenant's cost, promptly comply with and carry out all orders, requirements, or conditions now or hereafter imposed upon Tenant by the Ordinance, Laws and/or Regulations of the Federal Government, Municipality (incorporated or unincorporated) or County, in which said premises are located, or by any of its various departments whether required of Landlord or otherwise, to be done or performed during the term of this agreement, insofar as they are occasioned by or required in the conduct of the business of Tenant, or in the Tenant's use and occupancy of said premises for the purpose permitted.

**15. EMINENT DOMAIN and CONDEMNATION.** In the event eminent domain proceedings shall be instituted against the leased premises, Tenant will make no claim for compensation. In the proceedings, and agrees that Tenant's lease shall terminate when title to the leased premises is taken by the condemning authority, provided the rental is abated from such date. If the whole or any part of the leased premises shall be taken by any competent public authority under the power of eminent domain, then the term of this lease shall cease as to the part so taken from the date that possession of that part shall be acquired for any public purpose and the rent shall be paid up to that date. If the whole or any such portion of the leased premises is taken so as to reasonably destroy the usefulness of the premises for the purpose for which the same were leased, then the Tenant shall have the right to terminate this lease within _____ days after possession is taken for such public purpose. In the event, however, that only a portion of the premises is taken and the portion so taken does not reasonably destroy the usefulness of the premises for the purpose for which the same were leased, or if the Tenant shall not elect to terminate its lease if the usefulness of the premises is reasonably destroyed as stated in the preceding sentence, then the rent shall be reduced in proportion to the area of the premises taken in relation to the total area of the premises leased. The taking of a 20% or less of parking spaces shall not be considered as any taking of the "leased premises" referred to in this paragraph. Any dispute resulting from the determination of the fair reduction in rental shall be settled by arbitration under the rules of the American Arbitration Association. All proceeds from any condemnation shall belong to and be the property of the Landlord.

**16. LEASE SUBORDINATION.** This lease is subject and subordinate to the lien of any mortgage, or deed of trust encumbrance or encumbrances now or at any time hereafter placed upon the said premises, and the Tenant does hereby agree to execute, acknowledge and record any and all instruments to effect such subordination which the Landlord may request or require. Tenant irrevocably appoints Landlord, his successors and assigns, as and for his attorney-in-fact to execute any such instruments for and on its behalf.

**17. TENANT OBLIGATIONS.** Should Tenant fail to perform any of the duties hereunder, Landlord may cause the same to be performed and paid for. Payment of such sums, or expenses of prosecuting or defending any matter or action, by reason of Tenant's default in any wise, shall be deemed additional rent and due from Tenant to Landlord on the first day of the month following billing for said charges incurred.

**18. LEGAL PROCEEDINGS.** In the event legal proceedings are instituted against Tenant by the Landlord, either for payment of rent or for possession, then Tenant agrees to pay all court costs instant to such proceedings, together with a reasonable attorney's fee and both parties hereby agree to waive the right of trial by jury.

**19. NOTICE TO QUIT.** If Tenant shall fail to pay said rent in advance as aforesaid, although there should have been no legal or formal demand made, or break or violate any of the within covenants, conditions or agreements, then and in any of said events, his lease and all things herein contained shall, at the option of the Landlord cease and determine and shall operate as a Notice to Quit, the thirty (30) days' written Notice to Quit being hereby expressly waived, and Landlord may proceed to recover possession of said premises under and by virtue of the provisions of the Code of Law for the District of Columbia, State of Maryland, State of Virginia, in whichever one of the three immediately preceding named jurisdictions the demised premises may be located, or by such legal process as may, at the time be in operation and force in like cases relating to proceedings between Landlords and Tenants. In the event that the Landlord shall resume possession of the premises, Landlord may release the same; at the best rent that can be obtained, for the remainder of the term, for the account of the Tenant, who shall make good any deficiency; Such rent applied first to payment of Landlord's expenses incurred, in recovering possession of said premises and reletting same, second to costs and expenses incurred by Landlord in making necessary repairs or incurring any default on the part of the Tenant in any covenant or condition herein, and lastly to any rent due hereunder.

**20. WAIVER OF COVENANT.** IF PROCEEDINGS, shall at any time be instituted as aforesaid and compromise of settlement shall be effected either before or after judgement whereby Tenant shall be permitted to retain possession of said premises then such proceedings shall not constitute a waiver of any covenant, condition or agreement contained herein or of any subsequent breach of his agreement.

**21. BANKRUPTCY and ASSIGNMENT.** IT IS FURTHER UNDERSTOOD AND AGREED, that in the event Tenant is adjudicated a bankrupt or makes an assignment for the benefit of Tenant's creditors, this agreement shall, at the option of Landlord, cease and determine and said premises shall be surrendered to Landlord, who hereby reserves the right, in either of said events, to forthwith re-enter and repossess said premises.

**22. FIRE AND CASUALTY DAMAGE.** IT IS FURTHER UNDERSTOOD AND AGREED, that if said premises, or any part thereof, shall at any time be destroyed by fire (or other unavoidable casualty) as to be unfit for occupancy or use, then the rents herein reserved, or a full and just proportion thereof, according to the area of the leased premises which is unusable by Tenant, and the nature and extent of the damage sustained, shall, until the said premises shall have been rebuilt or restored and made fit

not involving the repair or reconstruction of a substantial portion thereof, the Landlord shall promptly restore same to such condition as will permit Tenant to use and occupy said premises for the purpose herein set forth. Provided however, any obligation of Landlord hereunder shall be limited to the basic building and interior work originally installed by Landlord. Landlord shall commence such repairs or restoration with reasonable diligence after notice thereof and after a reasonable period of time for Landlord to adjust Landlord's insurance claims, and shall prosecute same in an expeditious manner.

**23. EXPIRATION OF LEASE.** AND, IN THAT EVENT the Tenant shall elect and be suffered to remain in possession of the said premises at the expiration of the term hereby created, said Tenant shall, by virtue of this agreement, become a Tenant by the month, and said monthly tenancy shall be subject to all the conditions and covenants of said lease as though the same had been a monthly, instead of a tenancy as provided herein, and shall give to the Landlord at least thirty (30) days' notice of any intention to remove from said premises, and shall be entitled to a like notice from Landlord in the event Landlord desires possession of said premises; provided, however, that said Tenant by the month shall not be entitled to any notice in event the said rent is not paid in advance without demand, the usual thirty (30) days' written notice being hereby expressly waived.

**24. WAIVER OR BREACH OF COVENANT.** IT IS FURTHER UNDERSTOOD AND AGREED, that the covenants, conditions and agreements contained in the within lease to be performed by the respective parties, are binding on, and may be legally enforced by, the said parties, their heirs, executors, administrators, successors and assigns, respectively, and that no waiver of any breach of any covenant hereof shall be construed to be a waiver of the covenant itself or of any subsequent breach thereof, or of this agreement.

**25. BROKER'S COMMISSION.** The Landlord in appointing _____N/A_____ as rental agent herein, does so for and in consideration of its services in securing the Tenant hereunder and in negotiation of this agreement, and agrees to pay said Agent a commission of ____% of all rents paid during the full term of this agreement and any renewal or extension hereof even though the premises hereby demised shall be sold during the term of this lease, or any extension or renewal thereof.

**26. HOLD AGENT HARMLESS.** It is understood and agreed that said Agent shall have no responsibility for the condition of the demised premises or for the performance of the Lease Agreement or any Agreement by the Landlord and Tenant, and both parties agree to protect and save harmless said agent from any and all claims for injury to person or personal property by reason of any accident or happening in, upon or about the demised premises.

**27. TAXES.** Tenant shall pay to Landlord, as additional rent, ~~a proportionate share of~~ the real estate taxes payable by Landlord over and above those payable for the tax period ending _____. A tax bill shall be sufficient evidence of the amount of taxes so imposed, and shall include any increases, whether it be an increase in the rate, or a new tax and/or reassessment of the property or for any other reason. Such amount shall be paid within ten (10) days after it shall have been demanded by Landlord, and it shall be collectable as part of the rental. In the event the tax bill includes the adjacent facility, then the tax shall be prorated, with Tenant being responsible for his prorata share of such bill. Landlord shall compute same and forward along to Tenant with a copy of the total tax bill.

**28. SECURITY DEPOSIT.** The sum of ___Waived___ shall be paid by Tenant at time of execution of this lease as a security deposit.

**29. RENEWAL OPTION.** Tenant shall have the right to extend this lease for an additional period of ___5___ years at the end of the demised term, by giving written notice at least ___90 days___ in advance of the end of the original lease term, of Tenant's intention to so renew, which shall be under the same terms and conditions as set forth in the original lease agreement; provided however, rental hereunder shall be increased in accordance with ~~appropriate prevailing market rates. upon reasonable rates to be established per periodical schedules.~~ At the same rate

**30. LANDLORD'S RIGHT TO CURE TENANT'S DEFAULTS.** Should the Tenant default in performance of any of the terms, covenants or agreements herein provided including but without limitation to payment of real estate taxes, insurance premiums, utilities charges, failure to discharge forthwith a mechanics' lien filed by contractors of Tenant, repairs to the premises or in any other respect whatsoever, or should Landlord incur any charge, expense or attorney's fees as a result of the breach by Tenant of any of the terms of this lease, Landlord shall have the right to cure any such defaults or incur any such expense and shall charge said expenditures made by it as additional rent, and Tenant agrees to forthwith pay such additional rent to Landlord. Should Tenant fail to pay such sums forthwith after demand therefor, Landlord shall be entitled to all of the remedies herein provided with respect to the collection of such charges as in the case of nonpayment of rent.

**31. CAPTIONS.** The captions appearing in this lease are inserted only as a matter of convenience and in no way define, limit, construe or describe the scope or intent of any paragraph or section of this lease nor in anyway affect this lease.

**32. FINAL AGREEMENT.** THIS LEASE contains the entire and final agreement by and between the parties hereto, and they shall not be bound by any statements, conditions, representations, inducements, or warranties, oral or written, not herein contained.

**33. PROPERTY DATA and ADDRESS OF PARTIES.** The following are attached hereto and made a part hereof:
_____ PLANS AND SPECIFICATIONS _____ SITE PLAN ___X___ FLOOR PLAN _____ RECORD PLAT
_____ OTHER

All notices required to be given shall be in writing and mailed or delivered to the following addresses:

TO LANDLORD:    The May Partnership
                5300 Beach Place
                Temple Hills, MD 20748

TO TENANT:      ADII
                325 S Street NE
                Washington, DC

IN WITNESS WHEREOF the said parties have hereunto signed their names and affixed their seals.

_____
Witness

_____
Witness

Landlord _____
                The May Partnership

_____
                                      VICE PRES
Tenant _____  VICE PRES

_____
Witness



KEY PLAN
1" = 30'-0"



THE MAY PARTNERSHIP
PHOENIX PROGRAM
ADDENDUM TO LEASE THE MAY PARTNERSHIP
THE ART & DRAMA THERAPY INSTITUTE

CPI Increase

Lease:  The May Partnership and The Art & Drama Therapy Institute . *See note below :*

| | | |
|---|---|---|
| 1st year | $10,319.00/month | — 7/14/96  →  7/11/97 |
| 2nd year | 10,628.00/month | |
| 3rd year | 10,947.00/month | |
| 4th year | 11,275.00/month | |
| 5th year | 11,613.00/month | |
| 6th year | 11,961.00/month | |
| 7th year | 12,320.00/month | |

*Fixed price increase of 3% per year with the provision that if the CPI increase over 3% per year, ADTI will pay only 50% of the increase over 3%.*

EXHIBIT B

# COMMERCIAL LEASE AGREEMENT

THIS AGREEMENT, made and executed this _____ day of _____ 19__ by and between
_____ hereinafter called the Landlord, and
_____ hereinafter called the Tenant.

WITNESSETH, that Landlord has agreed to, and does hereby, lease unto Tenant the premises known as _____ 336 Randolph Place _____
_____ (the ground and tenth Floor plan) approximately 15,900 square feet _____
for the term of _____ (refer to lease) in a _____ commencing the _____ day of _____
and fully ending at Midnight on the _____ day of _____ at and for the total rental of _____
_____ payable in monthly installments of $10,319.00, the first installment payable on _____
and the remaining installments payable in advance on the _____ day of each ensuing month beginning _____
to _____ December 31, 1997 (see addendum to rent) _____

TENANT takes and holds the said premises as Tenant for the term and subject to the conditions as herein provided, at the rent
payable as aforesaid, and the said Tenant will, without previous demand, pay the rent specified at the time, place and in the manner
herein provided.

**1. POSSESSION.** Tenant will, and does hereby, take and hold said premises as a Tenant for the term above named; but the
same is subject to delivery of possession by any occupant, and to the case hereby contemplated of related premises ... Should tender of possession of premises be later or earlier than the beginning date named
above, then in that event, rent payable hereunder shall be adjusted to the date of occupancy, provided however, that in the event
possession is not delivered within sixty (60) days of commencement date as called for herein, then in such event Tenant shall have
the right to cancel this agreement by giving Landlord written notice thereof, and this agreement shall be considered null and void.

**2. RENT PAYMENTS.** Tenant will pay said rent in advance, without demand or deduction, on the __1st__ day of each month
at _____ 5300 Peach Place, Temple, Hills, MD 20748 _____ or such other place as Landlord may designate in writing.

**3. UTILITY CHARGES.** Tenant will pay all utility charges including, without limitation, water, gas, sewer charges, oil, tele-
phone, gas, and electric bills, if any, and other charges provided for herein as the same become due.

**4. USE OF PREMISES.** Tenant will use said premises actively and continuously for the full term hereof for _____ Therapeutic training of persons with or without disabilities, theater performances, art exhibits and other related activities, _____
AND FOR NO OTHER purpose whatsoever.

**5. DISORDERLY OR UNLAWFUL USE.** Tenant will not use, nor permit said premises or any part thereof to be used, for
any disorderly or unlawful purpose.

**6. TRANSFER, ASSIGN OR SUBLET.** Tenant will not transfer or assign this lease, nor let nor sublet the whole or any part
of said premises without the prior written consent of the Landlord, which consent will not be unreasonably withheld.

**7. CARE OF PREMISES AND SURRENDER.** Tenant will keep said premises in good order and condition, and surrender
same at the expiration of the term herein in the same order in which premises was received, usual wear and tear and damage by fire,
storm and public enemies only excepted. Upon surrender of the premises, Tenant shall have removed all rubbish, advertisements
and signs from interior, exterior and show windows thereof, and on failure to do so authorizes Landlord to forthwith remove the
same at Tenant's expense.

**8. SIDEWALK MAINTENANCE.** Tenant will keep the sidewalks immediately abutting said premises free from obstructions
of all nature, properly swept and snow and ice removed therefrom.

**9. TENANT PERSONAL PROPERTY and LIABILITY INSURANCE.** All Tenant's personal property in said premises
shall be and remain at his sole risk, and the Landlord shall not be liable for any damage to, or loss of such personal property arising
from any acts of negligence of any other persons, nor from the leaking of the roof, or from the bursting, leaking or overflowing of
water, sewer or steam pipes, or from heating or plumbing fixtures, or from the handling of electric wires or fixtures, or from any
other cause whatsoever, nor shall the Landlord be liable for any injury to the person or the Tenant or other persons in or about
the premises, the Tenant expressly agreeing to save the Landlord harmless in all such cases and to carry Public Liability Insurance in
a company and in an amount not less than the following limits: Bodily Injury – $300,000.00 _____
Property damage – $100,000.00.

**10. REPAIR OF PREMISES and LANDLORD ACCESS.** Tenant will make, at Tenant's own expense, any and all repairs to
the premises hereby leased during the term of the lease except, Landlord shall, without expense to Tenant, maintain and make all
necessary repairs to the foundations, load bearing walls, roof, gutters, downspouts, water mains, gas and sewage lines, sidewalks,
private roadways, parking areas, and loading docks, if any, or on appurtenant to the leased premises unless the said repairs are the
results of negligence of Tenant or his agents. Tenant will allow Landlord or his Agent access to said premises at any and all reason-
able time for the purpose of inspection, or in the event of fire or other property damage, or for the purpose of making any repairs
Landlord considers necessary or desirable, and will permit Landlord's Agent to place a sign on the premises during the last three
(3) months of this lease offering the property for sale or lease.

**11. HEAT, HOT WATER, AIR CONDITIONING AND ALTERATIONS.** Tenant will furnish heat, hot water and air con-
ditioning, if desired, at Tenant's cost and expense during the term of this agreement or any renewals or extensions thereof, make
all repairs and improvements to the interior of said premises as the same become necessary or are required, including all air con-
ditioning system, heating plant, pipes, radiators, ducts or plumbing fixtures. Tenant will repair or replace any other damage caused
to the demised premises by Tenant negligence, or the negligence of Tenant's servants or employees, or any damage to the premises
or the fixtures therein caused by improper use or caused by failing to give them the proper service. Tenant may, at his own expense,
either at the commencement of or during the term of this lease, make such alterations in and/or additions to the leased premises
including, without prejudice to the generality of the foregoing alterations in the water, gas, and electric wiring systems, as may be
necessary to fit the same for Tenant's business, upon first obtaining the written approval of Landlord as to the materials to be used

and the manner of making such alterations and/or additions, which approval will not be unreasonably withheld. Tenant may also, at Tenant's own expense, install such counters, racks, shelving, fixtures, fittings, machinery and equipment upon or within the leased premises as Tenant may consider necessary to the conduct of Tenant's business. At any time prior to the expiration or earlier termination of this lease, Tenant may remove any or all such alterations, additions or installations in such a manner as will not substantially injure the leased premises. At the termination of this lease, Tenant shall restore the premises, to the same condition as existed prior to the making of such alterations, addition or installation, ordinary wear and tear, damage or destruction by fire, flood, storm, civil commotion or other unavoidable cause excepted. All alterations, additions or installations not so removed by Tenant shall become the property of Landlord without liability on Landlord's part to pay for the same.

**12. FIRE and PLATE GLASS INSURANCE.** Tenant will not permit or do anything which would increase the rate of fire insurance upon said premises, and should said rate be increased by reason of Tenant's use of said premises, Tenant will pay as additional rent to Landlord the difference in the fire insurance premiums over and above those in effect prior to the time Tenant's use caused the rate to be increased when and as the same become due and payable. In the event Tenant's fire insurance policy is cancelled, or in the event Tenant is notified of impending cancellation, due to an act of commission or omission on the part of the Tenant, Tenant shall be given written notice by Landlord, his rental agent or insurance agent, that said fire insurance policy has been cancelled and Tenant will immediately correct or remedy the cause for said cancellation, and in the event of failure of Tenant to correct or remedy said cause within five (5) days, Landlord shall have the right at his option to declare this lease fully cancelled and void. Tenant will, during the full term of this agreement or any renewal or extension thereof, carry in a standard company, full coverage insurance on all plate glass in said premises and cause same to be replaced if chipped, cracked or broken, said insurance policy or certificate from Tenant's insurance company to be deposited with Landlord or his Agent; and such policy shall provide that it shall not be cancelled for any reason unless and until Landlord or his Agent is given fifteen (15) days' notice in writing by the insurance company.

**13. SIGNS.** Tenant will not erect nor place any signs upon the windows, doors or outside walls of said premises or make any alterations or additions to the demised premises without the prior written consent of the Landlord, which consent will not be unreasonably withheld.

**14. COMPLIANCE WITH GOVERNMENTAL AUTHORITY.** Tenant will, at Tenant's cost, promptly comply with and carry out all orders, requirements, or conditions now or hereafter imposed upon Tenant by the Ordinance, Laws and/or Regulations of the Federal Government, Municipality (incorporated or unincorporated) or County, in which said premises are located, or by any of its various departments whether required of Landlord or otherwise, to be done or performed during the term of this agreement, insofar as they are occasioned by or required in the conduct of the business of Tenant, or in the Tenant's use and occupancy of said premises for the purpose permitted.

**15. EMINENT DOMAIN and CONDEMNATION.** In the event eminent domain proceedings shall be instituted against the leased premises, Tenant will make no claim for compensation in the proceedings, and agrees that Tenant's lease shall terminate when title to the leased premises is taken by the condemning authority, provided the rental is abated from such date.

If the whole or any part of the leased premises shall be taken by any competent public authority under the power of eminent domain, then the term of this lease shall cease as to the part so taken from the date that possession of that part shall be acquired for any public purpose and the rent shall be paid up to that date. If the whole or any such portion of the leased premises is taken so as to reasonably destroy the usefulness of the premises for the purpose for which the same were leased, then the Tenant shall have the right to terminate this lease within _____ days after possession is taken for such public purpose. In the event, however, that only a portion of the premises is taken and the portion so taken does not reasonably destroy the usefulness of the premises for the purpose for which the same were leased, or if the Tenant shall not elect to terminate this lease if the usefulness of the premises is reasonably destroyed as stated in the preceding sentence, then the rent shall be reduced in proportion to the area of the premises taken in relation to the total area of the premises leased. The taking of a 20% or less of parking spaces shall not be considered as any taking of the "leased premises" referred to in this paragraph. Any dispute resulting from the determination of the fair reduction in rental shall be settled by arbitration under the rules of the American Arbitration Association. All proceeds from any condemnation shall belong to and be the property of the Landlord.

**16. LEASE SUBORDINATION.** This lease is subject and subordinate to the lien of any mortgage, or deed of trust encumbrance or encumbrances now or at any time hereafter placed upon the said premises, and the Tenant does hereby agree to execute, acknowledge and record any and all instruments to effect such subordination which the Landlord may request or require. Tenant irrevocably appoints Landlord, his successors and assigns, as and for his attorney-in-fact to execute any such instruments for and on his behalf.

**17. TENANT OBLIGATIONS.** Should Tenant fail to perform any of the duties hereunder, Landlord may cause the same to be performed and paid for. Payment of such sums, or expenses of prosecuting or defending any matter or action, by reason of Tenant default in any wise, shall be deemed additional rent and due from Tenant to Landlord on the first day of the month following billing for said charges incurred.

**18. LEGAL PROCEEDINGS.** In the event legal proceedings are instituted against Tenant by the Landlord, either for payment of rent or for possession, then Tenant agrees to pay all court costs instant to such proceedings, together with a reasonable attorney's fee and both parties hereby agree to waive the right of trial by jury.

**19. NOTICE TO QUIT.** If Tenant shall fail to pay said rent in advance as aforesaid, although there should have been no legal or formal demand made, or break or violate any of the within covenants, conditions or agreements, then and in any of said events, this lease and all things herein contained shall, at the option of the Landlord cease and determine and shall operate as a Notice to Quit, the thirty (30) days' written Notice to Quit being hereby expressly waived, and Landlord may proceed to recover possession of said premises under and by virtue of the provisions of the Code of Law for the District of Columbia, State of Maryland, State of Virginia, in whichever one of the three immediately preceding named jurisdictions the demised premises may be located, or by such legal process as may at the time be in operation and force in like cases relating to proceedings between Landlords and Tenants. In the event that the Landlord shall resume possession of the premises, Landlord may release the same, at the best rent that can be obtained, for the remainder of the term, for the account of the Tenant, who shall make good any deficiency. Such rent applied first to payment of Landlord's expenses incurred in recovering possession of said premises and reletting same, second to costs and expenses incurred by Landlord in making necessary repairs or incurring any default on the part of the Tenant in any covenant or condition herein, and lastly to any rent due hereunder.

**20. WAIVER OF COVENANT.** IF PROCEEDINGS, shall at any time be instituted as aforesaid and compromise of settlement shall be effected either before or after judgement whereby Tenant shall be permitted to retain possession of said premises then such proceedings shall not constitute a waiver of any covenant, condition or agreement contained herein or of any subsequent breach of this agreement.

**21. BANKRUPTCY and ASSIGNMENT.** IT IS FURTHER UNDERSTOOD AND AGREED, that in the event Tenant is adjudicated a bankrupt or makes an assignment for the benefit of Tenant's creditors, this agreement shall, at the option of Landlord cease and determine and said premises shall be surrendered to Landlord, who hereby reserves the right, in either of said events, to forthwith re-enter and repossess said premises.

**22. FIRE AND CASUALTY DAMAGE.** IT IS FURTHER UNDERSTOOD AND AGREED, that if said premises, or any part thereof, shall at any time be destroyed by fire (or other unavoidable casualty) as to be unfit for occupancy or use, then the rents herein reserved, or a fair and just proportion thereof, according to the area of the leased premises which is unusable by Tenant, and the nature and extent of the damage sustained, shall, until the said premises shall have been rebuilt or restored and made fit

Case 8:16-cv-01432-PX Document 14-6 Filed 10/17/2017 Page 17 of 25

dition as will permit Tenant to use or occupy said premises for the purpose herein set forth; Provided however, any obligation of Landlord hereunder shall be limited to the basic building and interior work originally installed by Landlord. Landlord shall commence such repairs or restoration with reasonable diligence after notice thereof and after a reasonable period of time for Landlord to adjust Landlord's insurance claims and shall prosecute same in an expeditious manner.

23. **EXPIRATION OF LEASE**. AND IN THAT EVENT the Tenant shall elect and be suffered to remain in possession of the said premises at the expiration of the term hereby created, said Tenant shall, by virtue of this agreement, become a Tenant by the month, and said monthly tenancy shall be subject to all the conditions and covenants of said lease as though the same had been a monthly; instead of a tenancy as provided herein, and shall give to the Landlord at least thirty (30) days' notice of his intention to remove from said premises, and shall be entitled to a like notice from Landlord in the event Landlord desires possession of said premises; provided, however, that said Tenant by the month shall not be entitled to any notice in event the said rent is not paid in advance without demand, the usual thirty (30) days' written notice being hereby expressly waived.

24. **WAIVER OR BREACH OF COVENANT**. IT IS FURTHER UNDERSTOOD AND AGREED, that the covenants, conditions and agreements contained in the within lease to be performed by the respective parties, are binding on , and may be legally enforced by, the said parties, their heirs, executors, administrators, successors and assigns, respectively, and that no waiver of any breach of any covenant hereof shall be construed to be a waiver of the covenant itself or of any subsequent breach thereof, or of this agreement.

25. **BROKER'S COMMISSION**. The Landlord in appointing ___N/A___ as rental agent herein, does so for and in consideration of its services in securing the Tenant hereunder and in negotiation of this agreement, and agrees to pay said Agent a commission of ___% of all rents paid during the full term of this agreement and any renewal or extension hereof even though the premises hereby demised shall be sold during the term of this lease, or any extension or renewal thereof.

26. ~~[illegible struck-through text]~~

27. **TAXES**. Tenant shall pay to Landlord, as additional rent, annually, ~~[illegible]~~ the real estate taxes payable by Landlord ~~[illegible]~~ 60 days ~~[illegible]~~ A tax bill shall be sufficient evidence of the amount of taxes so imposed, and ~~[illegible]~~ Such amount shall be paid within ~~[illegible]~~ days after it shall have been demanded by Landlord, and it shall be collectable as part of the rental. ~~[illegible]~~

28. ~~[illegible]~~ shall be paid by Tenant at time of execution of this lease as a security deposit.

29. **RENEWAL OPTION**. Tenant shall have the right to extend this lease for an additional period of ~~[illegible]~~ years at the end of the demised term, by giving written notice at least ___90 days___ in advance of the end of the original lease term, of Tenant's intention to so renew, which shall be under the same terms and conditions as set forth in the original lease agreement; provided however, rental hereunder shall be increased in accordance with any increase in ~~[illegible]~~

30. **LANDLORD'S RIGHT TO CURE TENANT'S DEFAULTS**. Should the Tenant default in performance of any of the terms, covenants or agreements herein provided including but without limitation to payment of real estate taxes, insurance premiums, utilities charges, failure to discharge forthwith a mechanics' lien filed by contractors of Tenant, repairs to the premises or in any other respect whatsoever, or should Landlord incur any charge, expense or attorney's fees as a result of the breach by Tenant of any of the terms of this lease, Landlord shall have the right to cure any such defaults or incur any such expense and shall charge said expenditures made by it as additional rent, and Tenant agrees to forthwith pay such additional rent to Landlord. Should Tenant fail to pay such sums forthwith after demand therefor, Landlord shall be entitled to all of the remedies herein provided with respect to the collection of such charges as in the case of nonpayment of rent.

31. **CAPTIONS**. The captions appearing in this lease are inserted only as a matter of convenience and in no way define, limit, construe or describe the scope or intent of any paragraph or section of this lease nor in anyway affect this lease.

32. **FINAL AGREEMENT**. THIS LEASE contains the entire and final agreement by and between the parties hereto, and they shall not be bound by any statements, conditions, representations, inducements, or warranties, oral or written, not herein contained.

33. **PROPERTY DATA and ADDRESS OF PARTIES**. The following are attached hereto and made a part hereof: ___ PLANS AND SPECIFICATIONS ___ SITE PLAN ___x___ FLOOR PLAN ___ RECORD PLAT ___ OTHER

All notices required to be given shall be in writing and mailed or delivered to the following addresses:

TO LANDLORD:    The May Partnership
5300 Beech Place
Temple Hills, MD 20748

TO TENANT:    The Art & Drama Therapy Institute Inc.
336 Randolph Place NE
Washington, DC 20002

IN WITNESS WHEREOF the said parties have hereunto signed their names and affixed their seals.

The May Partnership
Walter M. Prichard
Managing General Partner
Landlord

Witness

VICE - PRES

The Art & Drama Therapy Institute
Margaret Maria Dickinson, President
Sinku Sky Biltmore, Vice President
Tenant

Witness

ADDENDUM TO LEASE

MAY PARTNERSHIP - ADTI

CPI Increase

Fixed price increase of 3% per year with the provision that if the CPI increase over 3% per year ADTI will pay only 50% of the increase over 3%.

| | | |
|---|---|---|
| 1st year | $6,000 | 12 July 1996 — 11 July 1997 |
| 2nd year | 6,180 | |
| 3rd year | 6,365 | |
| 4th year | 6,556 | |
| 5th year | 6,753 | |
| 6th year | 6,956 | |
| 7th year | 7,164 | |

EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE ART & DRAMA THERAPY
INSTITUTE, INC., _et al._,

        *Plaintiffs,*

v.

THE MAY PARTNERSHIP, _et al._,

        *Defendants.*

Civil Action No. 07-1456 (PLF)

## SECOND AFFIDAVIT OF ERIC T. MAY

I, Eric T. May, under penalty of perjury, state as follows:

1.      I am over twenty one (21) years of age and make this Affidavit based on matters within my personal knowledge.

2.      I am the Managing Member for 336 Randolph LLC ("Randolph") with an office address of 1640 Rhode Island Avenue, N. W., Suite 825, Washington, DC 20036, and am authorized to make this Affidavit on behalf of Randolph. Randolph owns the building containing the leased premises of both Plaintiffs, namely The Art & Drama Therapy Instutite, Inc. ("ADTI") and Beyond Mask, Inc. ("BMI").

3.      The May Partnership ("May"), Randolph's predecessor in interest, executed a lease dated July 12, 1996 with the ADTI for the premises at 325 S Street, N.E. (a/k/a 327 S Street, N.E.) and another lease, also dated July 12, 1996, for premises at 336 Randolph Place, N.E. True and accurate copies of these leases are attached to Randolph's Motion for Partial Summary Judgment (the "Motion") as Exhibits A and B. Although bearing the addresses of two different streets, both premises leased by ADTI are in the same building (the "Property").

4.      On or about December 6, 1999, May and BMI entered into a letter agreement whereby May leased to BMI second floor space at 336 Randolph Place, N.E. A true and correct copy of that letter agreement is attached as Exhibit D to the Motion.

5.      A Commercial Lease Agreement dated August 20, 1998, but not fully signed until long after the lease term ended, was signed by BMI and May. A true and accurate copy of the Commercial Lease Agreement is attached to the Motion as Exhibit E.

6.      By letter of March 4, 2003, ADTI, and purportedly BMI, gave notice of their intention to renew their leases. A true and correct copy of the March 4, 2003 letter is attached as Exhibit F to the Motion.

7.      ADTI improperly attempted to further extend the term of the lease by letter of June 6, 2007. A true and correct copy of the June 6, 2007 letter is attached as Exhibit G to the Motoion.

8.      By letter of July 11, 2007, May rejected ADTI's attempt to further extend ADTI's tenancy. A true and correct copy of the July 11, 2007 May letter is attached as Exhibit H to the Motion.

9.      To date, BMI has not attempted to further extend the term of its tenancy.

10.     Currently, both Plaintiffs continue to occupy their respective premises.

Eric T. May

323123v1

EXHIBIT D



**Dr. Sirkku Sky Hiltunen,**
*President*
**Dr. M. "Muggy Do" Dickinson,**
*Vice President*

December 6, 1999

Mr. Walter Prichard, Managing Partner
May Partnership
5300 Beech Place
Temple Hills, MD 20748

Dear Mr. Prichard:

This letter will document our understanding concerning the use of the premises at 336 Randolph Place as discussed in our meeting on November 22, 1999.

1. We agreed that Beyond Mask, Inc. (BMI) will leave the space it currently occupies on the first floor of the building by December 31, 1999.

2. We also agreed that BMI would move to the newly renovated space on the second floor by January 1, 2000. We agreed that BMI would pay an annual rent of $16,200. In consideration, BMI gave you a one-month's deposit of $1,350.00, check no. 3599 dated 11/22/99. We agreed that a lease contract from you would be coming soon.

3. We obtained your permission to use the month of December to install the telephones and the alarm system, computer cables and do other work necessary to prepare the premises for BMI's move in January 2000. You acknowledged also that some furniture have already been moved.

Please sign below if the above information meets your agreement and understanding.

Sincerely,

_____                    _____
Dr. Sirkku Sky Hiltunen                      Walter Prichard, Managing Partner
President                                    May Partnership

EXHIBIT E

## COMMERCIAL LEASE AGREEMENT

**THIS AGREEMENT,** made and executed this ___*20th*___ day of ___*August*___, 19*98*, by and between The May Partnership, hereinafter called the Landlord, and Beyond Mask, Inc., hereinafter called the Tenant.

**WITNESSETH,** that Landlord has agreed to, and does hereby, lease unto Tenant the premises at 336 Randolph Place, N.E., Washington, D.C., 20002 (approximately 1700 sq. ft.)for the term of five (5) years commencing on the 1st day of September 1998 and fully ending at Midnight on the 31st day of August 2003 at and for the total rental of Forty eight thousand dollars ($48,000.00) payable in monthly installments of $800.00 per month during the entire term of this lease.

**TENANT** takes and holds the said premises as Tenant for the term and subject to the conditions as herein provided at the rent payable as aforesaid, and the said Tenant will, without previous demand, pay the rent specified at the time, place and in the manner herein provided.

1. **POSSESSION.** Tenant will, and does hereby, take and hold said premises as a Tenant for the term above named. Landlord acknowledges that tenant is already in possession of said premises and Landlord further acknowledges that any rents due for the period not covered by this lease have been paid and/or resolved to the Landlords satisfaction.

2. **RENT PAYMENTS.** Tenant will pay said rent in advance, without demand or deduction, on the 1st day of each month to Timsco, Inc. at 5300 Beech Place, Marlow Heights MD., 20748 or such other place as Landlord may designate for the term above named.

3. **UTILITY CHARGES.** Tenant will pay all utility charges including, without limitation, water, sewer, telephone, gas, and electric bills, if any, and other charges provided for herein as the same become due.

4. **USE OF PREMISES.** Tenant will use said premises actively and continuously for the full term hereof for the day to day conduct of Tenant's business **AND FOR NO OTHER** purpose whatsoever.

5. **DISORDERLY OR UNLAWFUL USE.** Tenant will not use, nor permit said premises or any part thereof to be used, for and disorderly or unlawful purpose.

6. **TRANSFER, ASSIGN OR SUBLET.** Tenant will not transfer or assign this lease, nor let nor sublet the whole or any part of said premises without the prior written consent of the Landlord, which consent will not be unreasonably withheld.

7. **CARE OF PREMISES AND SURRENDER.** Tenant will keep said premises in good order and condition, and surrender same at the expiration of the term herein in the same order in which premises were received including improvements thereto, usual wear and tear and damage by fire, storm and public enemies only excepted. Upon surrender of the premises, Tenant shall have removed all rubbish and signs from exterior, and failure to do so authorizes Landlord to forthwith remove the same at Tenant's expense.

1

**8. SIDEWALK MAINTENANCE.** Tenant will keep the sidewalks immediately abutting said premises free from obstructions of all nature, properly swept and snow and ice removed therefrom.

**9. TENANT PERSONAL PROPERTY and LIABILITY INSURANCE.** All Tenant's personal property in said premises shall be and remain at his sole risk, and the Landlord shall not be liable for any damage to, or loss of such personal property arising from any acts of negligence of any other persons, nor from the leaking of the roof, or from the bursting, leaking or overflowing of water, sewer or steam pipes, or from heating or plumbing fixtures, or from the handling of electric wires or fixtures, or from any other cause whatsoever, nor shall the Landlord be liable for any injury to the person of the Tenant or other persons in or about the premises, the Tenant expressly agreeing to save the Landlord harmless in all such cases except for damages resulting from Landlord's or his Agent's negligence.

**10. REPAIR OF PREMISES AND LANDLORD ACCESS.** Tenant will make, at Tenant's own expense, any and all repairs to the premises hereby leased during the term of the lease except Landlord shall, without expense to Tenant, maintain and make all necessary repairs to the foundations, load bearing walls, roof, gutters, downspouts, water mains, gas and sewage lines, sidewalks, private roadways, parking areas, and loading docks, if any, on or appurtenant to the leased premises unless the said repairs are the result of negligence of Tenant or his agents. Tenant will allow Landlord or his Agent access to said premises at any and all reasonable time for the purpose of inspection, or in the event of fire or other property damage, or for the purpose of making any repairs Landlord considers necessary or desirable, and will permit Landlord's Agent to place a sign on the premises during the last three (3) months of this lease offering the property for sale or lease.

**11. ALTERATIONS.** Landlord acknowledges that Tenant has, at his own expense, made alterations and/or additions to the leased premises and may continue to make such alterations as it sees fit during the term of this agreement or any renewals or extensions thereof.. At anytime prior to the expiration or earlier termination of this lease, Tenant may remove any or all such alterations, additions or installations in such a manner as will not substantially injure the leased premises. At the termination of this lease, Tenant at his option, shall restore the premises, to the same condition as existed prior to the making of such alteration, addition or installation, ordinary wear and tear, damage or destruction by fire, flood, storm, civil commotion or other unavoidable cause excepted. All alterations, additions or installations not so removed by Tenant shall become the property of Landlord without liability on Landlord's part for the same.

**12. FIRE INSURANCE.** Tenant will not permit or do anything, which would increase the rate of fire insurance upon said premises. In the event Tenant's fire insurance policy is canceled, or in the event Tenant is notified of impending cancellation, Tenant shall give written notice to Landlord that said fire insurance policy has been canceled and Tenant will immediately correct or remedy the cause for said cancellation; and in the event of failure of Tenant to correct or remedy said cause within thirty (30) days, Landlord shall have the right at his option to declare this lease fully canceled and void.

**13. COMPLIANCE WITH GOVERNMENTAL AUTHORITY.** Tenant will, at Tenant's cost, promptly comply with and carry out all orders, requirements, or conditions now or hereafter imposed upon Tenant by the Ordinance, Laws and/or regulations of the Federal Government, Municipality (incorporated or unincorporated) or County, in which said premises are located, or

by any of its various departments whether required of Landlord or otherwise, to be done or performed during the term of this agreement, insofar as they are occasioned by or required in the conduct of the business of Tenant, or in the Tenant's use and occupancy of said premises for the purpose permitted.

**14. EMINENT DOMAIN AND CONDEMNATION.** In the event eminent domain proceedings shall be instituted against the leased premises, Tenant's lease shall terminate when title to the leased premises is taken by the condemning authority, provided the rental is abated from such date. If the whole or any part of the leased premises shall be taken by any competent public authority under the power of eminent domain, then the term of this lease shall also cease. All proceeds from any condemnation shall belong to and be the property of the Landlord absent any claims due to the Tenant.

**15. LEASE SUBORDINATION.** This lease is subject and subordinate to the lien of a mortgage, or deed of trust encumbrance or encumbrances now or at anytime hereafter placed upon the said premises, and the Tenant does hereby agree to execute, acknowledge and record any and all instruments to effect such subordination which the Landlord may request or require. Tenant irrevocably appoints Landlord, his successors and assigns, as and for his attorney-in-fact to execute any such instruments for and on his behalf.

**16. TENANT OBLIGATIONS.** Should tenant fail to perform any of the duties hereunder, Landlord may cause the same to be performed and paid for. Payment of such sums, or expenses of prosecuting or defending any matter or action, by reason of Tenant default in any wise, shall be deemed additional rent and due from Tenant to Landlord on the first day of the month following billing for said charges incurred.

**17. LEGAL PROCEEDINGS.** In the event legal proceedings are instituted against Tenant by the Landlord, either for payment of rent or for possession, then Tenant agrees to pay all court costs, together with a reasonable attorney's fee and both parties hereby agree to waive the right of trial by jury.

**18. NOTICE TO QUIT.** If Tenant shall fail to pay said rent in advance for three (3) consecutive months, this lease and all things herein contained shall, at the option of the Landlord cease and shall operate as a Notice to Quit, the thirty (30) days' written Notice to Quit being hereby expressly waived, and Landlord may proceed to recover possession of said premises under and by virtue of the provisions of the Code of Law for the District of Columbia.

**19. WAIVER OF COVENANT.** IF PROCEEDINGS shall at any time be instituted as aforesaid and compromise of settlement shall be effected either before or after judgment whereby Tenant shall be permitted to retain possession of said premises then such proceedings shall not constitute a waiver of any covenant, condition or agreement contained herein or of any subsequent breach of this agreement.

**20. BANKRUPTCY and ASSIGNMENT.** IT IS FURTHER UNDERSTOOD AND AGREED, that in the event Tenant is adjudicated a bankrupt or makes an assignment for the benefit of Tenant's creditors, this agreement shall, at the option of Landlord, cease and said premises shall be surrendered to Landlord, who hereby reserves the right , in either of said events, to forthwith re-enter and repossess said premises.

3

**21.** **FIRE AND CASUALTY DAMAGE. IT IS FURTHER UNDERSTOOD AND AGREED,** that if said premises, or any part thereof, shall at any time be destroyed by fire (or other unavoidable casualty) as to be unfit for occupancy or use, then the rents herein reserved, shall, until the said premises shall have been rebuilt or restored and made fit for occupancy or use be suspended and cease to be payable.

**22.** **EXPIRATION OF LEASE**. In the event the Tenant elects to remain in possession of the said premises at the expiration of the term, Tenant shall, by virtue of this agreement, become a Tenant by the month, and said monthly tenancy shall be subject to all the conditions and covenants of said lease as though the same had been a monthly, instead of a tenancy as provided herein, and shall give to the Landlord at least thirty (30) days' notice of any intention to move from said premises, and shall be entitled to a like notice from Landlord in the event Landlord desires possession of said premises, provided, however, that said Tenant by the month shall not be entitled to any notice in the event the said rent is not paid in advance without demand, the usual thirty (30) days' written notice is hereby expressly waived.

**22.** **WAIVER OR BREACH OF COVENANT. IT IS FURTHER UNDERSTOOD AND AGREED** that the covenants, conditions and agreements contained in the within lease to be performed by the respective parties, are binding on, and may be legally enforced by, the said parties, their heirs executors, administrators, successors and assigns, respectively, and that no waiver of any breach of any covenant hereof shall be constituted to be a waiver of the covenant itself or of any subsequent breach thereof, or of this agreement.

**23.** **SECURITY DEPOST**. The sum of _____ shall be paid by Tenant at time of execution of this lease as a security deposit.

**24.** **RENEWAL OPTION**. Tenant shall have the right to extend this lease for an additional period of seven (7) years at the end of the demised term, by giving written notice at least three (3) months in advance of the end of the original lease term, of Tenant's intention to so renew.

**25.** **LANDLORD'S RIGHT TO CURE TENANT'S DEFAULTS**. Should the Tenant default in performance of any of the terms, covenants or agreements herein provided, Landlord shall have the right to cure any such defaults or incur any such expense and shall charge said expenditures made by it as additional rent, and Tenant agrees to forthwith pay such additional rent to Landlord. Should Tenant fail to pay such sums forthwith after demand therefor, Landlord shall be entitled to all of the remedies herein provided with respect to the collection of such charges as in the case of nonpayment of rent.

**26.** **CAPTIONS**. The captions appearing in this lease are inserted only as a matter of convenience and in no way define, limit, construe or describe the scope or intent of any paragraph or section of this lease nor in anyway affect this lease.

**27.** **FINAL AGREEMENT. THIS LEASE** contains the entire and final agreement by and between the parties hereto, and they shall not be bound by any statements, conditions, representations, inducements, or warranties, oral or written, not herein contained.

**28.** **PROPERTY DATA and ADDRESS OF PARTIES**. A floor plan is attached hereto and made a part hereof.

**All notices required to be given shall be in writing and mailed or delivered to** the following addresses:

TO LANDLORD: Walter M. Prichard, Managing General Partner
The May Partnership
C/O Timsco, Inc.
5300 Beech Place
Marlow Heights Md. 20748

TO TENANT: Sirkku Sky Hiltunen, President
Beyond Mask, Inc.,
336 Randolph Place N.E
Washington, D.C., 20002

IN WITNESS WHEREOF the said parties have hereunto signed their names and affixed their seals.

Witness  5/9/07

The May Partnership, (LANDLORD)

by: Walter M. Prichard,
Managing General Partner

Witness

Beyond Mask, Inc. (TENANT)

by: Sirkku Sky Hiltunen, President

# EXHIBIT F



# The Art and Drama Therapy Institute, Inc

Dr. M. "Muggy Do" Dickinson,
President
Dr. Sirkku Sky Hiltunen,
Executive Vice President

*Treatment
Through
The Arts*

March 4, 2003

References here by made of the commercial lease agreement dated July 12, 1986 by and between The May Partnership, hereinafter called landlord, and The Art and Drama Therapy Institute, Inc., hereinafter called tenant.

Tenant here by agrees to renew lease in accordance with paragraph 29 of before mentioned lease agreement.

Additionally, the space occupied by Beyond Mask Inc. will be renewed under the same terms and conditions as the before mentioned lease agreement.

Landlord _____
3/04/03

Tenant _____ 3-04-03

7 years – thru 7/10/10

327 S Street, NE • Washington, DC • 20002 • Telephone. (202) 635-1576 • Fax (202) 832-2474

# EXHIBIT G



# The Art and Drama Therapy Institute, Inc

*Treatment Through The Arts*

Dr. M. "Muggy Do" Dickinson,
President
Dr. Sirkku Sky Hiltunen,
Executive Vice President

VIA FIRST CLASS MAIL AND FEDERAL EXPRESS

June 6, 2007

The May Partnership
Walter Prichard, General Partner
21710 Peach Tree Road
Dickerson, MD 20842

The May Partnership
Walter Prichard, General Partner
5300 Beech Place
Temple Hills, MD 20748

Re:    Renewal of Commercial Lease Agreement for premises known as 336 Randolph Place, N.E., Washington D.C. and 327 S Street, N.E., Washington, D.C.

Dear Mr. Pritchard:

I am writing on behalf of The Art and Drama Therapy Institute, Inc. ("ADTI") to advise you that ADTI is exercising its right, pursuant to Paragraph 29 of its July 12, 2003 Lease (hereinafter defined) with The May Partnership for premises known as 336 Randolph Place, N.E. and 327 S Street, N.E., to renew the lease for an additional seven (7) years.

As you know, ADTI and The May Partnership were parties to two Commercial Lease Agreements dated July 12, 1996 ("July 12, 1996 Lease Agreements"), the term of which expired in July 2003. Paragraph 29 of the July 12, 1996 Lease Agreements provided ADTI with a right to renew the July 12, 1996 Lease Agreements for an additional seven (7) year term, on the same terms and as the July 12, 1996 Lease Agreements, including the "Renewal Option" set forth in Paragraph 29. By letter agreement dated March 4, 2003 ("July 12, 2003 Lease"), ADTI exercised its right to renew the July 12, 1996 Lease Agreements for an additional seven (7) year term on the same terms and conditions as set forth in the July 12, 1996 Lease Agreements, including the

327 S Street, NE • Washington, DC • 20002 • Telephone. (202) 635-1576 • Fax (202) 832-2474

Page 2

"Renewal Option" set forth in Paragraph 29. The term of the July 12, 2003 Lease expires in July 2010, subject to ADTI's right to renew under Paragraph 29.

This letter constitutes ADTI's written notice to The May Partnership, pursuant to Paragraph 29 of the July 12, 2003 Lease, of ADTI's intention to renew the July 12, 2003 Lease on the same terms and conditions as the July 12, 2003 Lease. The renewed lease ("2010 Lease Agreement"), which shall be on the same terms and conditions as the July 12, 2003 Lease, shall commence immediately following the expiration of the July 12, 2003 Lease and end in July 2017, subject to ADTI's right to further renew the 2010 Lease Agreement pursuant to Paragraph 29.

I request that you execute a copy of this letter on behalf of The May Partnership in the space provided below and return the copy of this letter as executed by The May Partnership to me to acknowledge ADTI's exercise of its option to renew the July 12, 2003 Lease.

Sincerely,

*Margaret M. Dickinson*

Margaret M. Dickinson, PhD
CEO/President, ADTI

cc: Stephen Bogorad

SEEN AND ACKNOWLEDGED:

THE MAY PARTNERSHIP

By: _____

Walter M. Prichard, General Partner

# 45K5430_v1

# EXHIBIT H

May Partnership
21700 Peach Tree Road
Dickerson, Maryland 20842

July 11, 2007

VIA HAND DELIVERY
The Art & Drama Therapy Institute, Inc. and
Beyond Mask, Inc.
336 Randolph Place, N.E.
Washington, D.C. 20002
Attn:   Dr. Sirkku Sky Hiltunen
        Dr. Margaret Maria Dickinson

> Re:    Lease Agreement dated July 12, 1996 by and between May Partnership
>        and Art & Drama Therapy Institute, Inc. (ADTI) for premises located at
>        325 S Street, N.E. and 336 Randolph Place, N.E. Washington, D.C.
>        and space occupied by Beyond Mask, Inc.

Dear Drs. Hiltunen and Dickinson:

Please be advised that pursuant to the agreements you have entered into for the
space occupied by ADTI and Beyond Mask, Inc. at 336 Randolph Place, N.E. you are
notified of your rent increases as follows:  for the ADTI space comprising of the Phoenix
space, the Pegasus space and the Additional space the new rent due effective August 1,
2007 is $23,817.29.  Your current rent with increases for the Beyond Mask Inc. space
should be $1,660.32.

Under the terms of the agreements for both spaces, rent was to increase by a
minimum of 3% per year with the provision that if the CPI increase was above 3%, the
rent would increase by 3% per year plus 50% of the CPI over 3%.

Below are the rent increase calculations for ADTI - what has been paid and what
is owed.  You are in default with respect to all of the space for failure to pay those
increases.

| Year | Monthly Rent | 3% Increase | Total Monthly Rent Due |
|------|--------------|-------------|------------------------|
| August 1, 2003 – July 31, 2004 | $20,545.00 | $616.35 | $21,161.35 |
| August 1, 2004 – July 31, 2005 | $21,161.35 | $634.84 | $21,796.19 |
| August 1, 2005 – July 31, 2006 | $21,796.19 | $653.89 | $22,450.08 |

| August 1, 2006 – July 31, 2007 | $22,450.08 | $673.50 | $23,123.58 |

For the ADTI space, pursuant to the terms of your lease for the period of August 1, 2003 through July 31, 2004, you were to be paying $253,936.20 for a twelve-month period prorated on a monthly basis of $21,161.35. Instead you paid $246,544.68, a shortfall of $7,391.52.

For the period of August 1, 2004 through July 31, 2005, you were to be paying $261,554.28 for a twelve-month period prorated on a monthly basis of $21,796.19. Instead you paid $246,544.68, a shortfall of $15,009.60.

For the period of August 1, 2005 through July 31, 2006, you were to be paying $269,400.96 for a twelve-month period prorated on a monthly basis of $22,450.08. Instead you paid $246,544.68, a shortfall of $22,856.28.

For the period of August 1, 2006 through July 31, 2007, you were to be paying $277,482.96 for a twelve-month period prorated on a monthly basis of $23,123.58. Instead you paid $246,544.68, a shortfall of $30,938.28.

For the ADTI space you are in arrears a total of $76,195.68.

Below are the rent increase calculations for Beyond Mask, Inc. - what has been paid and what is owed. You are in default with respect to the Beyond Mask space for failure to pay those increases.

| Year | Monthly Rent | 3% Increase | Total Monthly Rent Due |
|------|-------------|-------------|------------------------|
| January 1, 2001 – December 31, 2001 | $1,350.00 | $40.50 | $1,390.50 |
| January 1, 2002 – December 31, 2002 | $1,390.50 | $41.71 | $1,432.21 |
| January 1, 2003 – December 31, 2003 | $1,432.21 | $42.97 | $1,475.18 |
| January 1, 2004 – December 31, 2004 | $1,475.08 | $44.25 | $1,519.43 |
| January 1, 2005 – December 31, 2005 | $1,519.43 | $45.58 | $1,565.01 |
| January 1, 2006 – December 31, 2006 | $1,565.01 | $46.95 | $1,611.96 |

January 1, 2007 –
July 31, 2007          $1,611.96
                                            $48.36
                                                        $1,660.32

For the Beyond Mask, Inc. space, pursuant to the terms of your lease for the period of January 1, 2001 through December 31, 2001, you were to be paying $16,686.00 for a twelve-month period prorated on a monthly basis of $1,390.50. Instead you paid $16,200.00, a shortfall of $486.00.

For the period of January 1, 2002 through December 31, 2002, you were to be paying $17,186.52 for a twelve-month period prorated on a monthly basis of $1,432.21. Instead you paid $16,200.00, a shortfall of $986.52.

For the period of January 1, 2003 through December 31, 2003, you were to be paying $17,702.16 for a twelve-month period prorated on a monthly basis of $1,475.18. Instead you paid $16,200.00, a shortfall of $1,502.16.

For the period of January 1, 2004 through December 31, 2004, you were to be paying $18,233.16 for a twelve-month period prorated on a monthly basis of $1,519.43. Instead you paid $16,200.00, a shortfall of $2,033.16.

For the period of January 1, 2005 through December 31, 2005, you were to be paying $18,780.12 for a twelve-month period prorated on a monthly basis of $1,565.01. Instead you paid $16,200.00, a shortfall of $2,580.12.

For the period of January 1, 2006 through December 31, 2006, you were to be paying $19,343.52 for a twelve-month period prorated on a monthly basis of $1,611.96. Instead you paid $16,200.00, a shortfall of $3,143.52.

For the period of January 1, 2007 through July 31, 2007, you were to be paying $11,622.24 for a seven-month period prorated on a monthly basis of $1,660.32. Instead you paid $9,450.00, a shortfall of $2,172.24.

For the Beyond Mask, Inc. space, you are in arrears a total of $12,903.72.

Unless we receive a certified check in the amount of $76,195.68 for the ADTI space and a certified check in the amount of $12,903.72 for the Beyond Mask space by August 13, 2007, the Landlord reserves the right to terminate both leases. Please make your checks payable to "The May Partnership" and send the certified checks to The May Partnership, 21700 Peach Tree Road, Dickerson, Maryland 20842 for delivery no later than August 13, 2007. You will also be liable for all attorney's fees. In addition, if the sums are not received by August 13, 2007, Landlord may deem this Lease terminated and you shall remain liable as set forth in Paragraphs 19 and 30 of the Lease for all sums due under the lease and all attorney's fees.

Please do not make any improvements that are affixed to the Premises as your purported exercise of an option to renew is not valid.

Thank you.

The May Partnership

Walter M. Prichard
Managing Partner

Cc:   The Art & Drama Therapy Institute, Inc.
      325 S Street, N.E.
      Washington, D.C. 20002
      Attn:  Dr. Sirkku Sky Hiltunen
             Dr. Margaret Maria Dickinson
      Steve Bogorad, Esq.
      Langdon Hample
      Richard Luchs, Esq.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE ART & DRAMA THERAPY
INSTITUTE, INC., *et al.*,

        *Plaintiffs*,

v.

THE MAY PARTNERSHIP, *et al.*,

        *Defendants*.

Civil Action No. 07-1456 (PLF)

## **O**RDER

      Upon consideration of Defendant/Counterclaim Plaintiff 336 Randolph LLC's Motion for Partial Summary Judgment, it is this _____ day of _____, 2007 hereby:

      ORDERED that Defendant's motion will be and hereby is GRANTED; and it is further hereby:

      ORDERED that judgment is entered in favor of Defendant 336 Randolph LLC and against Plaintiffs The Arts & Drama Therapy Institute, Inc. and Beyond Mask, Inc. as to Count V of Plaintiffs' Complaint.


_____
Paul L. Friedman
United States District Judge


322938v1