UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

The ART & DRAMA THERAPY          )
INSTITUTE,  INC et al.           )
                                 )
            Plaintiffs.          )        Case 1:07cv01456 (PLF)
                                 )
v.                               )
                                 )
THE MAY PARTNERSHIP              )
et al.                           )
                                 )
            Defendants.          )


MOTION OF DEFENDANT/ COUNTERCLAIMAINT THE MAY PARTNERSHIP
AND DEFENDANTS WALTER PRICHARD, DAVID EHRENFRIED, LORETO
CAPOCCIA, KEITH PRICHARD, MICHAEL POLITS, GREGORY PRICHARD,
WILLIAM O'CONNELL,  ALEXANDRIA METAL FINISHERS, INC., AND
TIMSCO, INC. FOR SUMMARY JUDGMENT


        Defendant /Counterclaimant The May Partnership ("May") and Defendants

Walter Prichard, David Ehrenfried, Loreto Capoccia, Keith Prichard, Michael Polits,

Gregory Prichard, William O'Connell, Alexandria Metal Finishers, Inc., and Timsco, Inc

(hereinafter jointly "The May Parties") by and through their counsel, pursuant to Federal

Rule of Civil Procedure 56 and LCvR 56.1, hereby move for summary judgment.

        The May Parties seek summary judgment as to the Complaint because they are no

longer parties in interest and have no legal interest in the subject of this action. They

neither have any rights in the Property which is the subject of this action or any rights in

past claims which might have existed as to back rent and utilities.

        This action was commenced by Plaintiffs The Art & Drama Therapy Institute, Inc.

("ADTI") and Beyond Mask, Inc. ("BMI") seeking a declaratory judgment as to their

rights under certain leases with The May Partnership in property at 325 S Street, N.E. (a/k/a 327 S Street, N.E.) and 336 Randolph Place, N.E. (Although bearing the addresses of two different streets, both ADTI spaces are in the same building.) The May Parties have each answered the Complaint and The May Partnership filed a Counterclaim for back rent and utilities.

After the answer and counterclaim filed by the May Partnership, the Property which was leased by The May Partnership to Plaintiffs was sold to 336 Randolph LLC. In addition, The May Partnership assigned all of its rights to back rent and utilities to 336 Randolph LLC.

As a result of the sale and assignment, The May Parties no longer have any interest in the Property, the leases, or any claims for back rent or utilities. Any judgment against them regarding the Plaintiff's declaratory action, should one be rendered, would be nugatory, as The May Partnership no longer has ownership or any legal control over the Property. 336 Randolph LLC, the real party in interest, has been joined as a party in this action. The May Parties do not, in this motion, seek judgment on the substantive claims raised in the Complaint or the Answer and Counterclaim.

Wherefore, The May Parties respectfully request that the Court grant their motion for summary judgment and dismiss them as parties to this action.

Respectfully Submitted  The May Partnership,
Walter Prichard, David Ehrenfried, Loreto
Capoccia, Keith Prichard, Michael Polits, Gregory
Prichard, William O'Connell, Alexandria Metal
Finishers, Inc., and Timsco, Inc.
By Counsel

Dated: October 22, 2007          /s/ David Charles Masselli
                                 David Charles Masselli
                                 D.C. Bar No. 198276
                                 David Charles Masselli PC
                                 4113 Lee Highway
                                 Arlington, VA 22207-3156
                                 (703) 741-0402
                                 Fax: (703) 741-0979
                                 dm@mllaw.com

## **CERTIFICATE OF SERVICE**

I certify that a true copy of the foregoing documents were served by means of the ECF

system on all counsel of record in the above case this 22nd day of October, 2007 on the

following:

Stephen A. Bogorad
HOLLAND & KNIGHT LLP
2099 Pennsylvania Avenue, N.W.
Washington, D.C. 20006


Richard W. Luchs
Williams C. Casano
Joshua M. Greenberg
Greenstein Delorme & Luchs, P.C.
1620 L. Street, NW, Suite 900
Washington, DC 20036


/s/ David Charles Masselli
David Charles Masselli

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| The ART & DRAMA THERAPY INSTITUTE,  INC et al. | ) ) ) | |
| Plaintiffs. | ) ) | Case 1:07cv01456 (PLF) |
| v. | ) ) | |
| THE MAY PARTNERSHIP et al. | ) ) ) | |
| Defendants. | ) | |

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE BY DEFENDANT/
COUNTERCLAIMAINT THE MAY PARTNERSHIP AND DEFENDANTS WALTER
PRICHARD, DAVID EHRENFRIED, LORETO CAPOCCIA, KEITH PRICHARD,
MICHAEL POLITS, GREGORY PRICHARD, WILLIAM O'CONNELL,
ALEXANDRIA METAL FINISHERS, INC., AND TIMSCO, INC,

Defendant /Counterclaimant The May Partnership ("May") and Defendants

Walter Prichard, David Ehrenfried, Loreto Capoccia, Keith Prichard, Michael Polits,

Gregory Prichard, William O'Connell, Alexandria Metal Finishers, Inc., and Timsco, Inc

by and through their counsel, pursuant to Federal Rule of Civil Procedure 56 and LCvR

56.1, submit the following statement of material facts as to which there is no dispute:

1.       On August 13, 2007, Plaintiffs The Art & Drama Therapy Institute, Inc.

("ADTI") and Beyond Mask, Inc. ("BMI") filed a Complaint against Defendants The

May Partnership ("May"), Walter Prichard, David Ehrenfried, Loreto Capoccia, Keith

Prichard, Michael Polits, Gregory Prichard, William O'Connell, Joseph J. Natoli,

Alexandria Metal Finishers, Inc., and Timsco, Inc. seeking declaratory judgment.

2.       The Complaint arose out of leases between May and Plaintiffs. In this

regard, on June 12, 1996, May executed a lease with ADTI for premises at 325 S Street, N.E. (a/k/a 327 S Street, N.E.) and on that same day executed another lease for premises at 336 Randolph Place, N.E. Although bearing the addresses of two different streets, both ADTI spaces are in the same building. May also executed an agreement with BMI for other space at 336 Randolph Place, N.E. ("BMI Lease"). The rental spaces of all three leases shall hereinafter be referred to collectively as the "Property."

3.        The gravamen of Plaintiffs' Complaint is that May improperly rejected their attempt to extend their respective lease terms, made an improper demand for back rent under their respective leases, and improperly calculated their current rent charge.

4.        Plaintiffs seek declaratory judgments that: May is estopped from seeking or has waived its right under the leases to impose back rent; May is estopped or otherwise waived its right to charge current rent of $23,817.29 (16% increase from 2003) in the case of ADTI and $1,660.32 (23%) in the case of BMI, but instead is limited to an increase of 3%; and that Plaintiffs have a renewal option to extend the term of their leaseholds in seven year increments *ad infinitium.*

5.        On September 12, 2007, May filed an Answer to the Complaint and a Counterclaim in which it sought to recover back rent and utilities.

6.        After the date the Complaint and the May Answer and Counterclaim were filed, specifically on September 13, 2007, May sold its interests in the Property to 336 Randolph LLC ("Randolph"). <u>Affidavit of Walter M. Prichard</u>, ¶5, Attachment B.

7.        On that same date, with one exception not applicable herein, May assigned to Randolph all of its rights and interests in the leases and, thus, in all monies owed by Plaintiffs under the leases. <u>Affidavit of Walter M. Prichard</u>, ¶6, Attachment C.

8.     May no longer has any interest in the Property or the leases which are the subject of the Complaint. Affidavit of Walter M. Prichard, ¶7

9.     May no longer has any interest in the rents and utilities payments which are the subject of May's Counterclaim. Affidavit of Walter M. Prichard, ¶7.

Respectfully Submitted  The May Partnership, Walter Prichard, David Ehrenfried, Loreto Capoccia, Keith Prichard, Michael Polits, Gregory Prichard, William O'Connell, Alexandria Metal Finishers, Inc., and Timsco, Inc.
By Counsel

Dated: October 22, 2007          /s/ David Charles Masselli
                                 David Charles Masselli
                                 D.C. Bar No. 198276
                                 David Charles Masselli PC
                                 4113 Lee Highway
                                 Arlington, VA 22207-3156
                                 (703) 741-0402
                                 Fax: (703) 741-0979
                                 dm@mllaw.com

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

The ART & DRAMA THERAPY          )
INSTITUTE,  INC et al.           )
                                 )
            Plaintiffs.          )         Case 1:07cv01456 (PLF)
                                 )
v.                               )
                                 )
THE MAY PARTNERSHIP              )
et al.                           )
                                 )
            Defendants.          )


MEMORANDUM OF  POINTS AND AUTHORITIES OF DEFENDANT/
COUNTERCLAIMAINT THE MAY PARTNERSHIP AND DEFENDANTS WALTER
PRICHARD, DAVID EHRENFRIED, LORETO CAPOCCIA, KEITH PRICHARD,
MICHAEL POLITS, GREGORY PRICHARD, WILLIAM O'CONNELL,
ALEXANDRIA METAL FINISHERS, INC., AND TIMSCO, INC.
 IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Defendant /Counterclaimant The May Partnership ("May") and Defendants

Walter Prichard, David Ehrenfried, Loreto Capoccia, Keith Prichard, Michael Polits,

Gregory Prichard, William O'Connell, Alexandria Metal Finishers, Inc., and Timsco, Inc

(hereinafter jointly "The May Parties") submit the following memorandum in support of

their motion for summary judgment. Because of the timing of various real estate

transactions, the May Parties no longer have any interest in the real property which is the

subject of this lawsuit or the rights which parties might have had in the past concerning

rentals and other charges.  There is no dispute over the facts with respect to either

ownership or sale of the real property which is the subject of this action.

        The May Parties seek a dismissal of this action against them because, as they are

no longer have any interest in the property which is the subject of this litigation or the

claims for back rent and utilities arising out of leases for the property, there is no basis for

a declaratory judgment action, there being no actual controversy between the Plaintiffs

and The May Parties. The May Parties do not, in this motion, seek judgment on the

substantive claims raised in the Complaint or the Answer and Counterclaim.

## I.    **FACTS**

This action was commenced by plaintiffs by Plaintiffs The Art & Drama Therapy

Institute, Inc. ("ADTI") and Beyond Mask, Inc. ("BMI") on August 13, 2007. The

plaintiffs were seeking a declaratory judgment as to their rights under certain leases with

The May Partnership in property at 325 S Street, N.E. (a/k/a 327 S Street, N.E.) and 336

Randolph Place, N.E hereinafter called "the Property." (Although bearing the addresses

of two different streets, both ADTI spaces are in the same building.)

At the time that the Complaint was filed, The May Partnership was the owner of

the Property. Both the Plaintiffs and The May Partnership were aware of the fact that The

May Partnership was in the process of selling the Property. The Plaintiffs joined as

parties to the suit the individuals they believed to be members of The May Partnership.[1]

Although it is not material to this motion, two of the individuals named, William B.

O'Connell and Michael Polits are not partners. They have filed answers so stating. A

third defendant, Joseph Natoli, died approximately a decade ago.[2]

There was extreme uncertainty as to when and whether the sale of the Property

would close. During that period, the answers of various defendants were due pursuant to

---

[1]    Although it was for many years a requirement in the District of Columbia that all members of a partnership be joined in any action by or against the partnership, the 1997 amendments to the Uniform Partnership Act eliminated that requirement. D.C. Code Ann § 33-103.07(a) provides that "a partnership may sue and be sued in the name of the partnership."

[2]    As Mr. Natoli was not served, no answer was filed on his behalf and the undersigned does not represent him or his heirs and successors.

Rule 12(a) (1) (A) of the Federal Rules of Civil Procedure. The individual defendants have each answered the Complaint. The May Partnership filed an Answer and Counterclaim for back rent and utilities on September 12, 2007.

As it happens, the sale of the Property closed on September 13, 2007. The property was sold on that date to 336 Randolph LLC.  Affidavit of Walter M. Prichard, ¶5, Attachment B. As part of the transaction, The May Partnership assigned all of its rights to back rent and utilities to 336 Randolph LLC. Affidavit of Walter M. Prichard, ¶6, Attachment C.

As a result of the sale and assignment, The May Parties no longer have any interest in the Property, or the leases. Affidavit of Walter M. Prichard, ¶7. The May Parties also have no interest in any claims for back rent or utilities. Affidavit of Walter M. Prichard, ¶8.

On October 15, 2007, the Court granted a consent order to admit 336 Randolph LLC as a party pursuant to Rule 25(c) of the Federal Rules of Civil Procedure. 336 Randolph LLC participated in the Rule 26(f) conference of parties and has subsequently filed a motion for partial summary judgment on October 17, 2007. Dkt. # 34. It is fully engaged in representing the claims previously defended or advanced by the May Parties.

## II. ARGUMENT

### A.    SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *White v. Fraternal Order of Police, 285*

*U.S. App. D. C. 273, 909 F. 2d 512 (D. C. Cir. 1990)*. A party opposing summary

judgment is required to set forth by affidavit or in similar sworn fashion specific facts

showing there is a genuine issue for trial. *Coleman v. Potomac Electric Power Co., 442 F.*

*Supp. 2d 209 (D.D.C. 2006)*.  Conclusory allegations by themselves are insufficient to

establish a genuine issue of material fact to preclude summary judgment. *Id., Pinkney v.*

*Robinson, 913 F. Supp. 25 (D. D. C. 1996)*. As applied to the instant case, the grant of

summary judgment is mandated.


B.      **CHANGES WHICH HAVE OCCURRED SINCE THE COMPLAINT WAS**
**FILED.**

Because of the timing of the sale of the Property,  the are a number of allegations

in the Complaint which were true at the time of filing and which were admitted in the

answers of some of The May Parties[3], which are no longer true.

In particular, Paragraph Three of the Complaint, asserting that the May Partnership

owns property in the District of Columbia is no longer true. Although not explicitly stated,

each of the five Counts in the Complaint seeking declaratory relief against The May

Partnership based on the partnership's ownership of the property and its rights under the

Leases. The allegations of an actual controversy based on either The May Partnership's

ownership of the Property or its claims for back rent are found in Complaint  ¶¶ 35, 39,

45, 48 and 58.

None of these allegations are currently true.

---

[3]      Defendant Keith Prichard (Dkt. # 28) and TIMCO, Inc. (Dkt. #29) both filed answers after the
sale. They denied the allegation of ownership in Complaint ¶3 and also denied the existence of an actual
controversy in their answers to Complaint ¶¶ 35, 39, 45, 48 and 58. This is essentially the position taken by
all of The May Parties in this motion.

C.    **<u>BECAUSE THE MAY PARTIES NO LONGER OWN THE PROPERTY
THERE IS NO ACTUAL CONTROVERSY BETWEEN THEM AND THE
PLAINTIFFS WITH RESPECT TO THE FUTURE TERM OF THE LEASES.</u>**

The lawsuit seeks a declaratory judgment concerning both past and future rights of

the Plaintiffs arising out of their leases. Count V of the lawsuit seeks a declaration that the

Plaintiffs have a right -- apparently a perpetual right -- to renew their leases. Complaint

¶54. The pleading states that there is an actual controversy between the parties:

> There is an actual controversy because the parties disagree regarding ADTI's and
> BMI's right to exercise the Renewal Option for subsequent terms once the term
> ending 2010 expires. Despite ADTI's attempt to exercise its renewal rights and
> extend the term beyond 2010, the May Partnership has refused to recognize
> ADTI's right to further exercise the Renewal Option.

While this statement may have been true at the time that the lawsuit was filed, it is no longer

true. There is no longer any controversy at to the rights between these parties. Any

controversy is now between the Plaintiffs and 336 Randolph LLC which owns the property

and which has succeeded to all rights and obligations as the Landlord under the leases.

A declaratory action can only be maintained "when there is an actual controversy

between the parties." *Citizen Electronics Company, Ltd. v. Osram*, 377 F.Supp.2d 149,

152 (D.D.C.2005) ( citing *EMC Corp. v. Norand Corp*., 89 F.3d 807, 810

(Fed.Cir.1996)). A plaintiff must demonstrate that "there is a substantial controversy,

between parties having adverse legal interests, of sufficient immediacy and reality to

warrant the issuance of a declaratory judgment." *Atlas Air, Inc. v. Air Line Pilots Ass'n,

Int'l*, 69 F.Supp.2d 155, 162 (D.D.C.1999) ( citing *Maryland Casualty Co. v. Pacific

Coal & Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)).

The unusual fact pattern in this case has lead to a situation in which the

Plaintiffs certainly have a right to maintain a declaratory judgment action, but not

against The May Parties. Between the Plaintiffs and The May Parties there is no longer

any actual controversy and the Court would not be able to issue any ruling against The

May Parties which could provide relief for the Plaintiffs with respect to the claim made

by the Plaintiffs in Count V.

For these reasons, Count V should be dismissed as to The May Parties. Plaintiffs

should be allowed to pursue their claim against 336 Randolph LLC which is the owner

of the property and successor landlord under the Leases.

D.  **BECAUSE THE MAY PARTIES HAVE ASSIGNED ALL OF THEIR
RIGHTS UNDER THE LEASES TO 336 RANDOLPH LLC, THERE IS NO
CONTROVERSY BETWEEN THEM AND PLAINTIFFS CONCERNING ANY
PAST DUE RENT UNDER THE LEASES**

In Counts I – IV of the Complaint, the Plaintiffs sought declaratory relief against

several possible claims that it asserted had been made by the May Partnership concerning

back rent and the base rent going forward. The Counts, as written, set forth defenses which

the Plaintiffs assert they would successfully be able to maintain against claims that might

be made The May Partnership for back rent or the amount of rent going forward.[4] Thus

Count I asserts a defense of estoppel against claims for back rent, Count II asserts a

defense of waiver against claims for back rent, Count III asserts a defense of estoppel to

what it deems to be an attempt by the May Partnership to retroactively implement annual

rent increases and Count IV asserts a defense of waiver to the asserted attempt to

retroactively implement annual rent increases.  The Answer and Counterclaim filed by

---

[4]    In a letter dated July 11, 2007, The May Partnership asserted that the Plaintiffs owed back rent for
a period from 2003 until July. This is the back rent claim. The May Partnership also asserted a right to
collect rent beginning in August 2007 based on the annual rent increases contained in the Lease which the
Plaintiffs had renewed in 2003.  The Plaintiffs assert that any annual escalation was waived during the
period between 2003 and July 2007 and that the annual rent increases must begin with three percent
increase over the 2003 rent.

The May Partnership on September 12, 2007 (Dkt. #19) in fact contains counterclaims based on the claims for back rent and utilities. The Plaintiffs have filed a Motion to Dismiss certain portions of the counterclaims as barred by the statute of limitations. (Dkt. #27)

The transaction with 336 Randolph LLC included an assignment of any and all rights which The May Partnership had against Plaintiffs for rent. The Counterclaim by The May Partnership to enforce such claims would clearly be vulnerable to challenge under Rule 17(a) because The May Partnership is no longer the real party in interest.

For these reasons, the claims contained in Counts I-IV should also be dismissed as to The May Parties. Pursuant to Rule 17(a), 336 Randolph LLC should be substituted as the party in interest with respect to these claims.

### III.  CONCLUSION

Federal courts are given extensive discretion with respect to declaratory judgment actions. The sale of the Property mandates a realignment of the parties. There is no longer any basis for either The May Partnership or any of the partners to stay in the case as parties. The dismissal of The May Parties will not affect any substantive right of the Plaintiffs and will allow the real party in interest, 336 Randolph LLC, to conduct the litigation as it sees fit.

Wherefore, The May Parties respectfully request that the Court grant their motion for summary judgment and dismiss them as parties to this action.

> Respectfully Submitted  The May Partnership, Walter Prichard, David Ehrenfried, Loreto Capoccia, Keith Prichard, Michael Polits, Gregory Prichard, William O'Connell, Alexandria Metal

Finishers, Inc., and Timsco, Inc.
By Counsel

Dated: October 22, 2007          /s/ David Charles Masselli
                                  David Charles Masselli
                                  D.C. Bar No. 198276
                                  David Charles Masselli PC
                                  4113 Lee Highway
                                  Arlington, VA 22207-3156
                                  (703) 741-0402
                                  Fax: (703) 741-0979
                                  dm@mllaw.com

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

The ART & DRAMA THERAPY )
INSTITUTE, INC et al. )
 )
   Plaintiffs. ) Case 1:07cv-01456
 ) Assigned to: Friedman, Paul L.
v. ) Assign Date 8/13/2007
 ) Description: Civil General
THE MAY PARTNERSHIP )
et al. )
 )
   Defendants. )

AFFIDAVIT OF WALTER M. PRICHARD

 I, Walter M. Prichard, under penalty of perjury, state as follows:

1. I am over twenty one (21) years of age and make this Affidavit based on matters within my personal knowledge and in support of The May Partnership's Motion for Summary Judgment.

2. I am the Managing Partner of The May Partnership, a Virginia general partnership. I am authorized to make this Affidavit on behalf of The May Partnership.

3. The May Partnership was the owner of a property in the District of Columbia with addresses of 325 S Street, N.E. and 336 Randolph Place N.E. which is the subject of this lawsuit.[1]

4. The May Partnership executed a lease dated July 12, 1996 with the Art and Drama Therapy Institute ("ADTI")for the premises at 325 S Street, N.E. and another lease also dated July 12, 1996, for premises at 336 Randolph Place, N.E.. The May

---

[1] Although bearing the addresses of two different streets, both premises which are the subject of this lawsuit are in the same building (the "Property")

Partnership also leased other space at 336 Randolph Place, N.E. to Beyond Mask, Inc. ("BMI") Attached as Attachment A are true and correct copies of the Leases.

5.        On September 13, 2007, after the date on which the Complaint in this case was filed and the Answer and Counterclaim filed, The May Partnership sold its interests in the Property to 336 Randolph LLC. Attached as Attachment B is a true and correct copy of the Deed to the Property.

6.        At the same time, The May Partnership also assigned to 336 Randolph LLC all of its rights and interest in and to any past due rent, including utility charges, owed by ADTI and BMI. Attached as Attachment C is a true and correct copy of the Assignment.

7.         The May Partnership no longer has any interest in the Leases or the rents and utility payments which are the subject of the Complaint and The May Partnership's counterclaim. 336 Randolph LLC is now the real party in interest with respect to the claims asserted by Plaintiffs in the Complaint or by The May Partnership in the Counterclaim.

8.        As The May Partnership can not legally provide the relief sought by the Plaintiffs, nor is it the beneficiary of the claims asserted in the Counterclaim, it is no longer an appropriate party to this action.


REMAINDER OF PAGE INTENTIONALLY LEFT BLANK. SIGNATURES ON THE FOLLOWING PAGE.

_____
Walter M. Prichard

COMMONWEALTH OF VIRGINIA
AT LARGE

    Walter M. Prichard, being duly sworn according to law, deposed and stated that he has read the foregoing Affidavit and that the statements made therein are true and accurate to the best of his knowledge.

Subscribed and sworn before me this 18th day of October, 2007 by Walter M. Prichard, a person known to me, at Fairfax, Virginia.

_____
Notary Public

3

# EXHIBIT A

# COMMERCIAL LEASE AGREEMENT

THIS AGREEMENT, made and executed this ___ day of _JULY_ 19__, by and between
_____ hereinafter called the Landlord, and
_____ hereinafter called the Tenant.

WITNESSETH, that Landlord has agreed to, and does hereby, lease unto Tenant the premises known as ___ E. Street NE
for the term of _____ commencing on the ___ day of _JULY_
and fully ending at Midnight on the ___ day of _____ 20__ at and for the total rental of $504,000
payable in monthly installments of $6,000.00, the first installment payable on 12 JULY 1996
and the remaining installments payable in advance on the ___ day of each ensuing month beginning AUG 1 1996
to _____

TENANT takes and holds the said premises as Tenant for the term and subject to the conditions as herein provided, at the rent payable as aforesaid, and the said Tenant will, without previous demand, pay the rent specified at the time, place and in the manner herein provided.

**1. POSSESSION.** Tenant will, and does hereby, take and hold said premises as a Tenant for the term above named; but the same is subject to delivery of possession by any occupant, and in the case of newly constructed or repaired premises, is subject to completion of construction or repairs. Should tender of possession of premises be later or earlier than the beginning date named above, then in that event, rent payable hereunder shall be adjusted to the date of occupancy, provided however, that in the event possession is not delivered within sixty (60) days of commencement date as called for herein, then in such event Tenant shall have the right to cancel this agreement by giving Landlord written notice thereof, and this agreement shall be considered null and void.

**2. RENT PAYMENTS.** Tenant will pay said rent in advance, without demand or deduction, on the 1st day of each month at 5300 Beech Place, Temple Hills, MD 20748 or such other place as Landlord may designate in writing. The rent shall, at the end of each lease year, be increased in direct proportion to any increase in the Consumer Price Index (All Items Index), as published by the United States Department of Labor, using the index during the first month of occupancy as the base month as it relates to the first month of each succeeding year of the lease. See Addenda ___

**3. UTILITY CHARGES.** Tenant will pay all utility charges including, without limitation, water, rent, sewer charges, oil, telephone, gas, and electric bills, if any, and other charges provided for herein as the same become due.

**4. USE OF PREMISES.** Tenant will use said premises actively and continuously for the full term hereof for ____Therapeutic training of person with or without disabilities, theater performance, art exhibits and other related activities, AND FOR NO OTHER purpose whatsoever.

**5. DISORDERLY OR UNLAWFUL USE.** Tenant will not use, nor permit said premises or any part thereof to be used, for any disorderly or unlawful purpose.

**6. TRANSFER, ASSIGN, OR SUBLET.** Tenant will not transfer or assign this lease, nor let nor sublet the whole or any part of said premises without the prior written consent of the Landlord, which consent will not be unreasonably withheld.

**7. CARE OF PREMISES AND SURRENDER.** Tenant will keep said premises in good order and condition, and surrender same at the expiration of the term herein in the same order in which premises was received, usual wear and tear and damage by fire, storm and public enemies only excepted. Upon surrender of the premises, Tenant shall have removed all rubbish, advertisements and signs from interior, exterior and show windows thereof, and on failure to do so authorizes Landlord to forthwith remove the same at Tenant's expense.

**8. SIDEWALK MAINTENANCE.** Tenant will keep the sidewalks immediately abutting said premises free from obstructions of all nature, properly swept and snow and ice removed therefrom.

**9. TENANT PERSONAL PROPERTY AND LIABILITY INSURANCE.** All Tenant's personal property in said premises shall be and remain at his sole risk, and the Landlord shall not be liable for any damage to, or loss of such personal property arising from any acts of negligence of any other persons, nor from the leaking of the roof, or from the bursting, leaking or overflowing of water, sewer or steam pipes, or from heating or plumbing fixtures, or from the handling of electric wires or fixtures, or from any other cause whatsoever, nor shall the Landlord be liable for any injury to the person or the Tenant or other persons in or about this premises, the Tenant expressly agreeing to save the Landlord harmless in all such cases and to carry Public Liability Insurance in a company and in an amount not less than the following limits: Bodily injury $300,000 _____
Property damage $100,000 _____

**10. REPAIR OF PREMISES AND LANDLORD ACCESS.** Tenant will make, at Tenant's own expense, any and all repairs to the premises hereby leased during the term of the lease except Landlord shall, without expense to Tenant, maintain and make all necessary repairs to the foundations, load bearing walls, roof, gutters, downspouts, water mains, gas and sewage lines, sidewalks, private roadways, parking areas, and loading docks, if any, on or appurtenant to the leased premises unless the said repairs are the results of negligence of Tenant or his agents. Tenant will allow Landlord or his Agent access to said premises at any and all reasonable times for the purpose of inspection, or in the event of fire or other property damage, or for the purpose of making any repairs Landlord considers necessary or desirable, and will permit Landlord's Agent to place a sign on the premises during the last three (3) months of this lease offering the property for sale or lease.

**11. HEAT, HOT WATER, AIR CONDITIONING AND ALTERATIONS.** Tenant will furnish heat, hot water and air conditioning, if desired, at Tenant's cost and expense during the term of this agreement and any renewals or extensions thereof, make all repairs and improvements to the interior of said premises as the same become necessary or are required, including air conditioning system, heating plant, pipes, radiators, ducts or plumbing fixtures. Tenant will repair or replace any other damage caused to the demised premises by Tenant negligence, or the negligence of Tenant's servants or employees, or any damage to the premises or the fixtures therein caused by improper use or caused by failing to give them the proper service. Tenant may, at his own expense, either at the commencement of or during the term of this lease, make such alterations in and/or additions to the leased premises including, without prejudice to the generality of the foregoing alterations in the water, gas, and electric wiring systems, as may be necessary to fit the same for Tenant's business, upon first obtaining the written approval of Landlord as to the materials to be used

EXHIBIT
tabbies

and the manner of making such alteration and/or additions, which approval will not be unreasonably withheld. Tenant may also, at Tenant's own expense, install such counters, racks, shelving, fixtures, fittings, machinery and equipment, upon or within the leased premises as Tenant may consider necessary in the conduct of Tenant's business. At any time prior to the expiration or earlier termination of this lease, Tenant may remove any or all such alterations, additions or installations in such a manner as will not substantially injure the leased premises. At the termination of this lease, Tenant shall restore the premises to the same condition as existed prior to the making of such alterations, addition or installation, ordinary wear and tear, damage or destruction by fire, flood, storm or the condition or other unavoidable cause excepted. All alterations, additions or installations not so removed by Tenant shall become the property of Landlord without liability on Landlord's part to pay for the same.

**12. FIRE and PLATE GLASS INSURANCE.** Tenant will not permit or do anything which would increase the rate of fire insurance upon said premises, and should said rate be increased by reason of Tenant's use of said premises, Tenant will pay as additional rent to Landlord the difference in the fire insurance premiums over and above that in effect prior to the time Tenant's use caused the rate to be increased, when and as the same become due and payable. In the event Tenant's fire insurance policy is cancelled, or, in the event, Tenant is notified of impending cancellation, due to an act of commission or omission on the part of the Tenant, Tenant shall be given written notice by Landlord, its rental agent or insurance agent, that said fire insurance policy has been cancelled and Tenant will, immediately correct or remedy the cause for said cancellation; and in the event of failure of Tenant, to correct or remedy said cause within five (5) days, Landlord shall have the right a) his option to declare this lease fully cancelled and void. Tenant will, during the full term of this agreement or any renewal or extension thereof, carry, in a standard company's full coverage insurance on all plate glass in said premises and cause same to be replaced if chipped, cracked or broken, said insurance policy or certificate from Tenant's insurance company to be deposited with Landlord or his Agent and such policy shall provide that it shall not be cancelled for any reason unless and until Landlord or his Agent is given fifteen (15) days' notice in writing by the insurance company.

**13. SIGNS.** Tenant will not erect nor place any signs upon the windows, doors or outside walls of said premises or make any alterations or additions to the demised premises without the prior written consent of the Landlord, which consent will not be unreasonably withheld.

**14. COMPLIANCE WITH GOVERNMENTAL AUTHORITY.** Tenant will, at Tenant's cost, promptly comply with and carry out all orders, requirements, or conditions now or hereafter imposed upon Tenant by the Ordinance, Laws and/or Regulations of the Federal Government, Municipality (incorporated or unincorporated) or County, in which said premises are located, or by any of its various departments whether required of Landlord or otherwise, to be done or performed during the term of this agreement, insofar as they are occasioned by or required in the conduct of the business of Tenant, or in the Tenant's use and occupancy of said premises for the purpose permitted.

**15. EMINENT DOMAIN and CONDEMNATION.** In the event eminent domain proceedings shall be instituted against the leased premises, Tenant will make no claim for compensation in the proceedings, and agrees that Tenant's lease shall terminate when title to the leased premises is taken by the condemning authority, provided the rental is abated from such date. If the whole or any part of the leased premises shall be taken by any competent public authority under the power of eminent domain, then the term of this lease shall cease as to the part so taken from the date that possession of that part shall be required for any public purpose and the rent shall be paid up to that date. If the whole or any such portion of the leased premises is taken so as to reasonably destroy the usefulness of the premises for the purpose for which the same were leased, then the Tenant shall have the right to terminate this lease within _____ days after possession is taken for such public purpose. In the event, however, that only a portion of the premises is taken and the portion so taken does not reasonably destroy the usefulness of the premises for the purpose for which the same were leased, or if the Tenant shall not elect to terminate this lease if the usefulness of the premises is reasonably destroyed as stated, in the preceding sentence, then the rent shall be reduced in proportion to the area of the premises taken in relation to the total area of the premises leased. The taking of a 20% or less of parking spaces shall not be considered as any taking of the "leased premises" referred to in this paragraph. Any dispute resulting from the determination of the fair reduction in rental shall be settled by arbitration under the rules of the American Arbitration Association. All proceeds from any condemnation shall belong to and be the property of the Landlord.

**16. LEASE SUBORDINATION.** This lease is subject and subordinate to the lien of any mortgage, or deed of trust encumbrance or encumbrances now or at any time hereafter placed upon the said premises, and the Tenant does hereby agree to execute, acknowledge and record any and all instruments to effect such subordination which the Landlord may request or require. Tenant irrevocably appoints Landlord, his successors and assigns, as and for his attorney-in-fact to execute any such instruments for and on its behalf.

**17. TENANT OBLIGATIONS.** Should Tenant fail to perform any of the duties hereunder, Landlord may cause the same to be performed and paid for. Payment of such sums, or expenses of protecting or defending any matter or action, by reason of Tenant default in any, wise, shall be deemed additional rent and due from Tenant to Landlord on the first day of the month following billing for said charges incurred.

**18. LEGAL PROCEEDINGS.** In the event legal proceedings are instituted against Tenant by the Landlord, either for payment of rent or for possession, then Tenant agrees to pay all court costs incident to such proceedings, together with a reasonable attorney's fee and both parties hereby agree to waive the right of trial by jury.

**19. NOTICE TO QUIT.** If Tenant shall fail to pay said rent in advance as aforesaid, although there should have been no legal or formal demand made, or breach or violate any of the within covenants, conditions or agreements, then and in any of said events, his lease and all things herein contained shall, at the option of his Landlord cease and determine and shall operate as a Notice to Quit, the thirty (30) days' written Notice to Quit being hereby expressly waived, and Landlord may proceed to recover possession of said premises under and by virtue of the provisions of the Code of Law for the District of Columbia, State of Maryland, State of Virginia, in whichever one of the three immediately preceding named jurisdictions the demised premises may be located, or by such legal process as may at the time be in operation and force in like cases relating to proceedings between Landlords and Tenants, in the event that the Landlord shall resume possession of the premises, Landlord may release the same at the best rent that can be obtained, for the remainder of the term, for the account of the Tenant, who shall make good any deficiency. Such rent applied first to payment of Landlord's expenses incurred in recovering possession of said premises and reletting same; second to costs and expenses incurred by Landlord in making necessary repairs or incurring any default on the part of the Tenant in any covenant condition herein, and lastly to any rent due hereunder.

**20. WAIVER OF COVENANT, IF PROCEEDINGS**, shall at any time be instituted as aforesaid and compromise of settlement shall be effected either before or after judgement whereby Tenant shall be permitted to retain possession of said premises then such proceedings shall not constitute a waiver of any covenant, condition or agreement contained herein or of any subsequent breach of his agreement.

**21. BANKRUPTCY and ASSIGNMENT. IT IS FURTHER UNDERSTOOD AND AGREED**, that in the event Tenant is adjudicated a bankrupt or makes an assignment for the benefit of Tenant's creditors, this agreement shall, at the option of Landlord, cease and determine and said premises shall be surrendered to Landlord, who hereby reserves the right, in either of said events, to forthwith re-enter and repossess said premises.

**22. FIRE AND CASUALTY DAMAGE. IT IS FURTHER UNDERSTOOD AND AGREED**, that if said premises, or any part thereof, shall at any time be destroyed by fire (or other unavoidable casualty) as to be unfit for occupancy or use, then the rents herein reserved, or a fair and just proportion thereof, according to the area of the leased premises which is unusable by Tenant, and the nature and extent of the damage sustained, shall, until the said premises shall have been rebuilt or restored and made fit

 and involving the repair or reconstruction of a substantial portion thereof, the Lands shall promptly restore same to such condition as will permit Tenant to use and occupy said premises for the purpose herein set forth. Provided however, any obligation of Landlord hereunder shall be limited to the basic building and interior work originally installed by Landlord. Landlord shall commence such repairs or restoration with reasonable diligence after notice thereof and after a reasonable period of time for Landlord to adjust Landlord's insurance claims, and shall prosecute same in an expeditious manner.

23. EXPIRATION OF LEASE AND IN THAT EVENT the Tenant shall elect and be suffered to remain in possession of the said premises at the expiration of the term hereby created, said Tenant shall, by virtue of this agreement, become a Tenant by the month; and said monthly tenancy shall be subject to all the conditions and covenants of said lease as though the same had been a monthly, instead of a tenancy as provided herein, and shall give to the Landlord at least sixty (30) days' notice of any intention to remove from said premises, and shall be entitled to a like notice from Landlord in the event Landlord desires possession of said premises; provided, however, that said Tenant by the month shall not be entitled to any notice in event the said rent is not paid in advance without demand, the usual thirty (30) days' written notice being hereby expressly waived.

24. WAIVER OR BREACH OF COVENANT. IT IS FURTHER UNDERSTOOD AND AGREED, that the covenants, conditions and agreements contained in the within lease to be performed by the respective parties, are binding on and may be legally enforced by, the said parties, their heirs, executors, administrators, successors and assigns, respectively, and that no waiver of any breach of any covenant hereof shall be construed to be a waiver of the covenant itself or of any subsequent breach thereof, or of this agreement.

25. BROKER'S COMMISSION. The Landlord in appointing _____ N/A _____ as rental agent herein, does so for and in consideration of its services in securing the Tenant hereunder and in negotiation of this agreement, and agrees to pay said Agent a commission of ____ % of all rents paid during the full term of this agreement and any renewal or extension hereof even though the premises hereby demised shall be sold during the term of this lease, or any extension or renewal thereof.

26. HOLD AGENT HARMLESS. It is understood and agreed that said Agent shall have no responsibility for the condition of the demised premises or for the performance of the Lease Agreement or any Agreement by the Landlord and Tenant, and both parties agree to protect and save harmless said agent from any and all claims for injury to person or personal property by reason of any accident or happening in, upon or about the demised premises.

27. TAXES. Tenant shall pay to Landlord, as additional rent, _____ the real estate taxes payable by Landlord over and above those payable for the tax period ending _____. A tax bill shall be sufficient evidence of the amount of taxes so imposed, and shall include any increases, whether it be an increase in the rate, or a new tax and/or reassessment of the property or for any other reason. Such amount shall be paid within ten (10) days after it shall have been demanded by Landlord, and it shall be collectable as part of the rental. In the event the tax bill includes the adjacent facility, then the tax shall be prorated, with Tenant being responsible for his prorata share of such bill. Landlord shall compute same and forward along to Tenant with a copy of the total tax bill.

28. SECURITY DEPOSIT. The sum of _____ shall be paid by Tenant at time of execution of this lease as a security deposit.

29. RENEWAL OPTION. Tenant shall have the right to extend this lease for an additional period of _____ at the end of the demised term, by giving written notice at least ____ 50 days ____ in advance of the end of the original lease term of Tenant's intention to so renew, which shall be under the same terms and conditions as set forth in the original lease agreement, provided however, rental hereunder shall be increased in accordance with _____

30. LANDLORD'S RIGHT TO CURE TENANT'S DEFAULTS. Should the Tenant default in performance of any of the terms, covenants or agreements herein provided including but without limitation to payment of real estate taxes, insurance premiums, utilities charges, failure to discharge forthwith a mechanics' lien filed by contractors of Tenant, repairs to the premises or in any other respect whatsoever, or should Landlord incur any charge, expense or attorney's fees as a result of the breach by Tenant of any of the terms of this lease, Landlord shall have the right to cure any such default or incur any such expense and shall charge Tenant fail to pay such sums forthwith after demand therefor, Landlord shall be entitled to all of the remedies herein provided with respect to the collection of such charges as in the case of nonpayment of rent.

31. CAPTIONS. The captions appearing in this lease are inserted only as a matter of convenience and in no way define, limit, continue or describe the scope or intent of any paragraph or section of this lease nor in anyway affect this lease.

32. FINAL AGREEMENT. THIS LEASE contains the entire and final agreement by and between the parties hereto, and they shall not be bound by any statements, conditions, representations, inducements, or warranties, oral or written, not herein contained.

33. PROPERTY DATA and ADDRESS OF PARTIES. The following are attached hereto and made a part hereof:
___ PLANS AND SPECIFICATIONS   ___ SITE PLAN   _X_ FLOOR PLAN   ___ RECORD PLAT
___ OTHER

All notices required to be given shall be in writing and mailed or delivered to the following addresses:

TO LANDLORD:   The May Partnership
5300 Beach Place
Temple Hills, MD 20748

TO TENANT:   ATU
325 B Street NE
Washington, DC

IN WITNESS WHEREOF the said parties have hereunto signed their names and affixed their seals.

_____   Landlord _____
Witness

_____
Witness

_____   Tenant _____
Witness





THE MAY PARTNERSHIP
PHOENIX PROGRAM
ADDENDUM TO LEASE THE MAY PARTNERSHIP
THE ART & DRAMA THERAPY INSTITUTE

<u>CPI Increase</u>

Lease;  The May Partnership and The Art & Drama Therapy Institute.  *See note below:*

| | |
|---|---|
| 1st year | $10,319.00/month |
| 2nd year | 10,628.00/month |
| 3rd year | 10,947.00/month |
| 4th year | 11,275.00/month |
| 5th year | 11,613.00/month |
| 6th year | 11,961.00/month |
| 7th year | 12,320.00/month |

*Fixed price increase of 3% per year with the provision that if the CPI increases over 3% per year, ADTI will pay only 50% of the increase over 3%.*

# COMMERCIAL LEASE AGREEMENT

THIS AGREEMENT, made and entered into _____ day of _____, 19___ by and between _____ hereinafter called the Landlord, and _____ hereinafter called the Tenant.

WITNESSETH: that Landlord has agreed for and does hereby, lease unto Tenant the premises known as _____ Floor _____ for the term of _____ and fully ending at Midnight on the _____ day of _____ at and for the total rental of $_____ payable in monthly installments of $_____, the first installment payable on _____ and the remaining installments payable in advance on the _____ day of each ensuing month beginning _____

And TENANT taken and holds the said premises as Tenant for the term and subject to the conditions as herein provided, at the rent payable as aforesaid, and the said Tenant will without previous demand, pay the rent specified at the time, place and in the manner herein provided.

**1. POSSESSION.** Tenant will, and does hereby, take and hold said premises as a Tenant for the term above named; but the same is subject to delivery of possession by any occupant, and in the event possession of premises be later or earlier than the beginning date named above, then in that event, rent payable hereunder shall be adjusted to the date of occupancy; provided however, that in the event possession is not delivered within sixty (60) days of commencement date as called for herein, then in such event Tenant shall have the right to cancel this agreement by giving Landlord written notice thereof, and this agreement shall be considered null and void.

**2. RENT PAYMENTS.** Tenant will pay said rent in advance, without demand or deduction, on the _____ day of each month at _____ or at such other place as Landlord may designate in writing.

**3. UTILITY CHARGES.** Tenant will pay all utility charges including, without limitation, water, sewer charges, oil, telephone, gas, and electric bills, if any, and other charges provided for herein as the same become due.

**4. USE OF PREMISES.** Tenant will use the said premises actively and continuously for the full term hereof for _____ and for no other purpose whatsoever.

**5. DISORDERLY OR UNLAWFUL USE.** Tenant will not use, nor permit said premises or any part thereof to be used, for any disorderly or unlawful purpose.

**6. TRANSFER, ASSIGN, OR SUBLET.** Tenant will not transfer or assign this lease nor let nor sublet the whole or any part of said premises without the prior written consent of the Landlord, which consent will not be unreasonably withheld.

**7. CARE OF PREMISES AND SURRENDER.** Tenant will keep said premises in good order and condition, and surrender same at the expiration of the term herein in the same order in which premises was received, usual wear and tear and damage by fire, storm and public enemies only excepted. Upon surrender of the premises, Tenant shall have removed all rubbish, advertisements and signs from interior, exterior and show windows thereof, and on failure to do so authorizes Landlord to forthwith remove the same at Tenant's expense.

**8. SIDEWALK MAINTENANCE.** Tenant will keep the sidewalks immediately abutting said premises free from obstructions of all nature, properly swept and snow and ice removed therefrom.

**9. TENANT PERSONAL PROPERTY and LIABILITY INSURANCE.** All Tenant's personal property in said premises shall be and remain at his sole risk, and the Landlord shall not be liable for any damage to, or loss of such personal property arising from any acts of negligence of any other persons, nor from the leaking of the roof, or from the bursting, leaking or overflowing of water, sewer or steam pipes, or from heating or plumbing fixtures, or from the handling of electric wires or fixtures, or from any other cause whatsoever, nor shall the Landlord be liable for any injury to the person or the Tenant or other persons in or about the premises, the Tenant expressly agreeing to save the Landlord harmless in all such case and to carry Public Liability Insurance in a company and in an amount not less than the following limits: Bodily Injury $_____ Property damage $100,000.00.

**10. REPAIR OF PREMISES and LANDLORD ACCESS.** Tenant will make, at Tenant's own expense, any and all repairs to the premises hereby leased during the term of the lease except Landlord shall, without expense to Tenant, maintain and make all necessary repairs to the foundations, load bearing walls, roof, gutters, downspouts, water mains, gas and sewage lines, sidewalks, private roadways, parking areas, and loading docks, if any, on or appurtenant to the leased premises unless the said repairs are the result of negligence of Tenant or his agents. Tenant will allow Landlord or his Agent access to said premises at any and all reasonable time for the purpose of inspection or in the event of fire or other property damage, or for the purpose of making any repairs Landlord considers necessary or desirable, and will permit Landlord's Agent to place a sign on the premises during the last three (3) months of this lease offering the property for sale or lease.

**11. HEAT, HOT WATER, AIR CONDITIONING AND ALTERATIONS.** Tenant will furnish heat, hot water and air conditioning, if desired, at Tenant's cost and expense during the term of this agreement or any renewals or extensions thereof, make all repairs and improvements to the interior of said premises as that same become necessary or are required, including air conditioning system, heating plant, pipes, radiators, ducts or plumbing fixtures. Tenant will repair or replace any other damage caused to the demised premises by Tenant negligence, or the negligence of Tenant's servants or employees, or any damage to the premises or the fixtures therein caused by improper use or caused by failing to give them the proper service. Tenant may, at his own expense, either at the commencement of or during the term of this lease, make such alterations in and/or additions to the leased premises including, without prejudice to the generality of the foregoing alterations in the water, gas, and electric wiring systems, as may be necessary to fit the same for Tenant's business, upon first obtaining the written approval of Landlord as to the materials to be used.

EXHIBIT
B

at Tenant's own expense, install such                                    tiers, racks, shelving, fixtures, fittings, machinery and equipment upon or within the
leased premises at Tenant may consider necessary to the conduct of Tenant's business. At any time prior to the expiration or
earlier termination of this lease, Tenant may remove any or all such alterations, additions or installations in such a manner as will
not substantially injure the leased premises. At the termination of this lease, Tenant shall restore the premises, to the same condi-
tion as existed prior to the making of such alteration, addition or installation, ordinary wear and tear, damage or destruction by
fire, flood, storm, civil commotion or other unavoidable cause excepted. All alterations, additions or installations not so removed
by Tenant shall become the property of Landlord without liability on Landlord's part to pay for the same.

**12. FIRE AND PLATE GLASS INSURANCE.** Tenant will not permit or do anything which would increase the rate of fire in-
surance upon said premises, and should said rate be increased by reason of Tenant's use of said premises, Tenant will pay as addi-
tional rent to Landlord the difference in the fire insurance premiums over and above those in effect prior to the time Tenant's
use caused the rate to be increased when and as the same become due and payable. In the event Tenant's fire insurance policy is
cancelled for in the event Tenant is notified of impending cancellation, due to an act of commission or omission on the part of
the Tenant, Tenant shall be given written notice by Landlord, his rental agent or insurance agent, that said fire insurance policy
has been cancelled and Tenant will immediately correct or remedy the cause for said cancellation, and in the event of failure of
Tenant to correct or remedy said cause within five (5) days, Landlord shall have the right at his option to declare this lease fully
cancelled and void. Tenant will, during the full term of this agreement of any renewal or extension thereof, carry in a standard
company, full coverage insurance on all plate glass in said premises and cause same to be replaced if chipped, cracked or broken,
said insurance policy or certificate from Tenant's insurance company to be deposited with Landlord or his Agent; and such policy
shall provide that it shall not be cancelled for any reason unless and until Landlord or his Agent is given fifteen (15) days' notice
in writing by the insurance company.

**13. SIGNS.** Tenant will not erect nor place any signs upon the windows, doors or outside walls of said premises or make any
alterations or additions to the demised premises without the prior written consent of the Landlord which consent will not be
unreasonably withheld.

**14. COMPLIANCE WITH GOVERNMENTAL AUTHORITY.** Tenant will, at Tenant's cost, promptly comply with and carry
out all orders, requirements, or conditions now or hereafter imposed upon Tenant by the Ordinance, Laws and/or Regulations
of the Federal Government, Municipality (incorporated or unincorporated) or County, in which said premises are located, or by
any of its various departments whether required of Landlord or otherwise, to be done or performed during the term of this agree-
ment, insofar as they are occasioned by or required to the conduct of the business of Tenant, or in the Tenant's use and occupancy
of said premises for the purpose permitted.

**15. EMINENT DOMAIN and CONDEMNATION.** In the event eminent domain proceedings shall be instituted against the leased
premises, Tenant will make no claim for compensation in the proceedings, and agrees that Tenant's lease shall terminate when
title to the leased premises is taken by the condemning authority, provided the rental is abated from such date.
If the whole or any part of the leased premises shall be taken by any competent public authority under the power of eminent
domain, then the term of this lease shall cease as to the part so taken from the date that possession of that part shall be acquired
for any public purpose and the rent shall be paid up to that date. If the whole or any such portion of the leased premises is taken
so as to reasonably destroy the usefulness of the premises for the purpose for which the same were leased, then the Tenant shall
have the right to terminate this lease within _____ days after possession is taken for such public purpose. In the event,
however, that only a portion of the premises is taken and the portion so taken does not reasonably destroy the usefulness of the
premises for the purpose for which the same were leased, or if the Tenant shall not elect to terminate this lease if the usefulness of
the premises is reasonably destroyed as stated in the preceding sentence, then the rent shall be reduced in proportion to the area
of the premises taken in relation to the total area of the premises leased. The taking of a 20% or less of parking spaces shall not be
considered as any taking of the "leased premises" referred to in this paragraph. Any dispute arising from the determination of
the fair reduction in rental shall be settled by arbitration under the rules of the American Arbitration Association. All proceeds
from any condemnation shall belong to and be the property of the Landlord.

**16. LEASE SUBORDINATION.** This lease is subject and subordinate to the lien of any mortgage, or deed of trust encumbrance
or encumbrances now or at any time hereafter placed upon the said premises, and the Tenant does hereby agree to execute, ack-
nowledge and record any and all instruments to effect such subordination which the Landlord may request or require. Tenant
irrevocably appoints Landlord, his successors and assigns, as and for his attorney-in-fact to execute any such instruments for and on
his behalf.

**17. TENANT OBLIGATIONS.** Should Tenant fail to perform any of the duties hereunder, Landlord may cause the same to be
performed and paid for. Payment of such sums, or expense of prosecuting or defending any matter or action, by reason of Tenant
default in any wise, shall be deemed additional rent and due from Tenant to Landlord on the first day of the month following
billing for said charges incurred.

**18. LEGAL PROCEEDINGS.** In the event legal proceedings are instituted against Tenant by the Landlord, either for payment
of rent or for possession, then Tenant agrees to pay all court costs instant to such proceedings, together with a reasonable attor-
ney's fee and both parties hereby agree to waive the right of trial by jury.

**19. NOTICE TO QUIT.** If Tenant shall fail to pay said rent in advance as aforesaid, although there should have been no legal
or formal demand made, or break or violate any of the within covenants, conditions or agreements, then and in any of said events,
this lease and all things herein contained shall, at the option of the Landlord cease and determine and shall operate as a Notice to
Quit, the thirty (30) days' written Notice to Quit being hereby expressly waived, and Landlord may proceed to recover possession
of said premises under and by virtue of the provisions of the Code of Law for the District of Columbia, State of Maryland, State of
Virginia, in whichever one of the three immediately preceding named jurisdictions the demised premises may be located, or by such
legal process as may at the time be in operation and force in like cases relating to proceedings between Landlords and Tenants.
In the event that the Landlord shall resume possession of the premises, Landlord may relate the same, at the best rent that can be
obtained, for the remainder of the term, for the account of the Tenant, who shall make good any deficiency. Such rent applied
first to payment of Landlord's expenses incurred in recovering possession of said premises and reletting same, second to costs
and expenses incurred by Landlord in making necessary repairs or incurring any default on the part of the Tenant in any covenant
or condition herein, and lastly to any rent due hereunder.

**20. WAIVER OF COVENANT.** If PROCEEDINGS, shall at any time be instituted as aforesaid and compromise of settlement
shall be effected either before or after judgement whereby Tenant shall be permitted to retain possession of said premises then such
proceedings shall not constitute a waiver of any covenant, condition or agreement contained herein or of any subsequent breach of
this agreement.

**21. BANKRUPTCY and ASSIGNMENT.** IT IS FURTHER UNDERSTOOD AND AGREED, that in the event Tenant is
adjudicated a bankrupt or makes an assignment for the benefit of Tenant's creditors, this agreement shall, at the option of Landlord,
cease and determine and said premises shall be surrendered to Landlord, who hereby reserves the right, in either of said events, to
forthwith re-enter and repossess said premises.

**22. FIRE AND CASUALTY DAMAGE.** IT IS FURTHER UNDERSTOOD AND AGREED, that if said premises, or any
part thereof, shall at any time be destroyed by fire (or other unavoidable casualty) as to be unfit for occupancy or use, then the
rents herein reserved, or a fair and just proportion thereof, according to the area of the leased premises which is unusable by Tenant,
and the nature and extent of the damage sustained, shall, until the said premises shall have been rebuilt or restored and made fit

... the term of reconstruction ... of a reasonable exhibit hereof, the Landlord ... premises ... dition as will permit Tenant to use an ... copy said premises for the purpose herein s ... nth. Provided however, any obligation of Landlord hereunder shall be limited to the bare building and interior work originally installed by Landlord. Landlord shall commence such repairs or restoration with reasonable diligence after notice thereof and after a reasonable period of time for Landlord to adjust Landlord's insurance claim, and shall prosecute said restoration ...

**23. EXPIRATION OF LEASE - HOLD IN.** THAT EVENT the Tenant shall elect and be suffered to remain in possession of the said premises at the expiration of the term hereby created, said Tenant shall, by virtue of this agreement, become a Tenant by the month, and said monthly tenancy shall be subject to all the conditions and covenants of said lease as though the same had been a monthly instead of a tenancy as provided herein, and shall give to the Landlord at least thirty (30) days' notice of any intention to remove from said premises, and shall be entitled to a like notice from Landlord in the event Landlord desires possession of said premises; provided, however, that said Tenant by the month shall not be entitled to any notice in event the said rent is not paid in advance without demand, the usual thirty (30) days' written notice being hereby expressly waived.

**24. WAIVER OR BREACH OF COVENANT.** IT IS FURTHER UNDERSTOOD AND AGREED, that the covenants, conditions and agreements contained in the within lease to be performed by the respective parties, are binding on, and may be legally enforced by, the said parties, their heirs, executors, administrators, successors and assigns, respectively, and that no waiver of any breach of any covenant hereof shall be construed to be a waiver of the covenant itself or of any subsequent breach thereof, or of this agreement.

**25. BROKER'S COMMISSION.** The Landlord in appointing _____ N/A _____ as rental agent herein, does so for and in consideration of its services in securing the Tenant hereunder and in negotiation of this agreement, and agrees to pay said Agent a commission of ___ % of all rents paid during the full term of this lease, and any renewal or extension hereof even though the premises hereby demised shall be sold during the term of this lease, or any extension or renewal thereof.

26. ~~[struck through]~~

**27. TAXES.** Tenant shall pay to Landlord, as additional rent, annually, ... the real estate taxes payable by Landlord ... the amount of taxes so imposed, ... Such amount shall be paid within ... days after it shall have been demanded by Landlord, and it shall be collectible as part of the rental ...

28. ~~[illegible]~~ ... shall be paid by Tenant at time of execution of this lease as a security deposit.

**29. RENEWAL OPTION.** Tenant shall have the right to extend this lease for an additional period of _____ at the end of the demised term, by giving written notice at least _____ in advance of the end of the original lease term, of Tenant's intention to so renew, which shall be under the same terms and conditions as set forth in the original lease agreement; provided however, rental hereunder shall be increased in accordance with any increase in ...

**30. LANDLORD'S RIGHT TO CURE TENANT'S DEFAULTS.** Should the Tenant default in performance of any of the terms, covenants or agreements herein provided including but without limitation to payment of real estate taxes, insurance premiums, utilities charges, failure to discharge forthwith a mechanics' lien filed by contractors of Tenant, repairs to the premises or in any other respect whatsoever, or should Landlord incur any charge, expense or attorney's fees as a result of the breach by Tenant of any of the terms of this lease, Landlord shall have the right to cure any such defaults or incur any such expense and shall charge said expenditures made by it as additional rent, and Tenant agrees to forthwith pay such additional rent to Landlord. Should Tenant fail to pay such sums forthwith after demand therefor, Landlord shall be entitled to all of the remedies herein provided with respect to the collection of such charges as in the case of nonpayment of rent.

**31. CAPTIONS.** The captions appearing in this lease are inserted only as a matter of convenience and in no way define, limit, construe or describe the scope or intent of any paragraph or section of this lease nor in any way affect this lease.

**32. FINAL AGREEMENT.** THIS LEASE contains the entire and final agreement between the parties hereto, and they shall not be bound by any statements, conditions, representations, inducements, or warranties, oral or written, not herein contained.

**33. PROPERTY DATA and ADDRESS OF PARTIES.** The following are attached hereto and made a part hereof:
PLANS AND SPECIFICATIONS _____ SITE PLAN __X__ FLOOR PLAN __X__ RECORD PLAT _____
OTHER _____

All notices required to be given shall be in writing and mailed or delivered to the following addresses:

TO LANDLORD:  The May Partnership
5300 Beech Place
Temple Hills, MD 20748

TO TENANT:  The Art & Drama Therapy Institute Inc.
335 Randolph Place NE
Washington, DC 2002

IN WITNESS WHEREOF the said parties have hereunto signed their names and affixed their seals.

The May Partnership
Walter M. Prichard
Managing General Partner
Landlord

_____   VICE PRES
Witness

The Art & Drama Therapy Institute
Margaret Maria Dickinson, President
Shirley Sky Hiltmann, Vice President
Tenant

Witness

## ADDENDUM TO LEASE

## MAY PARTNERSHIP - ADTI

### CPI Increase

Fixed price increase of 3% per year with the provision that if the CPI increase over
3% per year ADTI will pay only 50% of the increase over 3%.

| | | |
|---|---|---|
| 1st year | $6,000 | 12 July 1996 — 11 July 1997 |
| 2nd year | 6,180 | |
| 3rd year | 6,365 | |
| 4th year | 6,556 | |
| 5th year | 6,753 | |
| 6th year | 6,956 | |
| 7th year | 7,164 | |

# EXHIBIT B

FILE NO. ICT4266A
PROPERTY TAX ID NO: SQUARE 3571 LOT 0034
TITLE INSURER: FIRST AMERICAN TITLE INSURANCE

# DEED

THIS DEED, made this 13th day of September, 2007, by and between THE MAY PARTNERSHIP, A VIRGINIA GENERAL PARTNERSHIP, party of the first part, and 336 RANDOLPH LLC, party of the second part.

WITNESSETH, that in consideration of the sum of TWO MILLION THREE HUNDRED FIFTY THOUSAND AND 00/100 $2,350,000.00, receipt whereof is hereby acknowledged, the said party of the first part does grant and convey to the said party of the second part, in fee simple, as SOLE OWNER, the following described land and premises, situate in the District of Columbia and known and distinguished as:

Lot numbered Thirty-four (34) in Square numbered Thirty-five Hundred Seventy One (3571) in a subdivision made by Sarah Miller Birney and others, as per plat recorded in the Office of the Surveyor for the District of Columbia in Liber 126 at Folio 80.

Being the same property described in Deed dated 08/19/1985 and recorded 08/20/1995    among the Land Records of District of Colombia in Instrument number 32266 from 336 Randolph Place, Limited Partnership unto the Grantors herein.

Property Address: 336 RANDOLPH PLACE, N.E., WASHINGTON, DC 20002

TOGETHER WITH all and singular the ways, easements, rights, and privileges and appurtenances to the same belonging or in anywise appertaining, and all the estate, right, title, interest, and claim, either at law or in equity or otherwise however, of the said party of the first part, of, in, to, or out of the said land and premises; subject to all easements, covenants and restrictions of record.

AND the party of the first part herein warrants specially the property hereby conveyed; and covenants to execute such further assurances of said land as may be requisite.

WITNESS the hand and seal the day and year first hereinbefore written.

Witness:

_____

_____(SEAL)
WALTER M. PRICHARD,
MANAGING MEMBER

STATE OF MARYLAND
COUNTY OF MONTGOMERY

I, a Notary Public, in and for the jurisdiction aforesaid, do hereby certify that WALTER M. PRICHARD, MANAGING MEMBER FOR THE MAY PARTNERSHIP, party to a certain DEED bearing date on the 12th day of September, 2007 and hereto annexed personally appeared before me in the said jurisdiction, the said WALTER M. PRICHARD known to me to be the person who executed the said Deed and acknowledged the same to be his act and deed.

Given under my hand and seal this 12th day of September, 2007.



NOTARY PUBLIC

My Commission Expires:_____

ANDREA M. CONYE
Notary Public · Maryland
Montgomery County
My Commission Expires on
August 1, 2008

AFTER RECORDING MAIL TO :

Inter-Continental Title & Escrow
51 Monroe Place
Suite 1401
Rockville MD 20850

8

# EXHIBIT C

## ASSIGNMENT

FOR VALUE RECEIVED, The May Partnership ("Assignor") hereby assigns to 336 Randolph LLC, a District of Columbia limited liability company ("Assignee") all right, title and interest to any unpaid rents, interest thereon and attorney's fees that may be recoverable from ADTI and Beyond Mask, Inc. relating to their occupation of the space at 336 Randolph Place, N.E. and 327 S Street, N.E., Washington, D.C. except that all amounts due The May Partnership for real estate taxes and the special New York Street Assessment for the second half of 2007 shall be first paid to The May Partnership out of the first monies collected, for the period prior to the closing date between Assignor and Assignee under that certain Purchase Agreement dated April 6, 2007, as amended.

Assignor and Assignee make no representations as to the collectibility of such unpaid rents and shall not be liable for any sums that are uncollected.

This Assignment may be executed in one or more counterparts, each of which when so executed and delivered shall be deemed an original, all of which taken together shall constitute one and the same original.

In witness whereof, the Assignor and Assignee hereby set their hands and seals this _13th_ day of September 2007.

The May Partnership

By: _____
Its:

Accepted in accordance with its terms by:

336 Randolph LLC

By: _____
Eric T. May, Managing Member

ASSIGNMENT

FOR VALUE RECEIVED, The May Partnership ("Assignor") hereby assigns to 336 Randolph LLC, a District of Columbia limited liability company ("Assignee") all right, title and interest to any unpaid rents, interest thereon and attorney's fees that may be recoverable from ADTI and Beyond Mask, Inc. relating to their occupation of the space at 336 Randolph Place, N.E. and 327 S Street, N.E., Washington, D.C. except that all amounts due The May Partnership for real estate taxes and the special New York Street Assessment for the second half of 2007 shall be first paid to The May Partnership out of the first monies collected, for the period prior to the closing date between Assignor and Assignee under that certain Purchase Agreement dated April 6, 2007, as amended.

Assignor and Assignee make no representations as to the collectibility of such unpaid rents and shall not be liable for any sums that are uncollected.

This Assignment may be executed in one or more counterparts, each of which when so executed and delivered shall be deemed an original, all of which taken together shall constitute one and the same original.

In witness whereof, the Assignor and Assignee hereby set their hands and seals this _22nd_ day of September 2007.

The May Partnership

By: _WALTER A. PRICHARY_
Its: _MANAGING PARTNER_

Accepted in accordance with its terms by:

336 Randolph LLC

By: _____
        Eric T. May, Managing Member

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| The ART & DRAMA THERAPY INSTITUTE,  INC et al. | ) ) ) |
| Plaintiffs. | ) )     Case 1:07cv01456 (PLF) |
| v. | ) ) |
| THE MAY PARTNERSHIP et al. | ) ) ) |
| Defendants. | ) ) |

## **ORDER**

Upon consideration of the motion for summary judgment filed by Defendant /Counterclaimant The May Partnership and Defendants Walter Prichard, David Ehrenfried, Loreto Capoccia, Keith Prichard, Michael Polits, Gregory Prichard, William O'Connell, Alexandria Metal Finishers, Inc., and Timsco, Inc. (hereinafter jointly "The May Parties"), it is this _____day  of _____, 2007 hereby:

ORDERED, that the motion of The May Parties is hereby GRANTED and it is further hereby:

ORDERED, that this action shall be dismissed as to The May Parties, and it is further hereby:

ORDERED, that pursuant to Rule 17(a) of the Federal Rules of Civil Procedure defendant 336 Randolph LLC is hereby substituted as the real party in interest with respect to the Counterclaims previously filed by The May Partnership.

_____
Paul L. Friedman
United States District Judge